# EXHIBIT 1



May 19, 2014

**VIA E-MAIL**
Jeffrey R. Bragalone
Justin B. Kimble
BRAGALONE CONROY PC
2200 Ross Avenue, Suite 4500W
Dallas, Texas 75201

      Re:   *Texas Advanced Optoelectronic Solutions, Inc. v. Intersil Corporation*
              Civil Action No. 4:08-cv-451

Dear Justin:

      For months now, TAOS has attempted to resolve this discovery dispute concerning Intersil's repeated requests for irrelevant information. To that end, we have agreed to produce hundreds of pages of documents that are irrelevant to any claim or defense in this lawsuit. We have agreed to make witnesses available for deposition to discuss the acquisition of TAOS by ams. In response, however, Intersil has taken unreasonable positions that have been reigned in, if not rejected entirely, by the Court. Now, with its proposed motion to compel, Intersil continues to waste the parties' time and money by threatening to file a discovery motion that seeks information that has already been produced, doesn't exist, or cannot be relevant to TAOS' claims for damages. This was confirmed by Judge Bush during the April 24 telephonic hearing.

      For all of these reasons, if Intersil proceeds with filing the proposed motion to compel we will seek sanctions from the Court and request the recovery of our attorney's fees expended in responding to it. For example, Intersil states on page 3 of its proposed motion that "[o]n the eve of this filing, TAOS finally produced the valuation to which Laney referred to in his email." This is incorrect. We informed you on April 23 that TAOS was willing to produce this document subject to certain confidentiality restrictions. The following day, Judge Bush sided with TAOS that the parties needed to agree to "some sort of protective order." It was not until last week that Intersil agreed to treat the document as "HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY," and TAOS therefore produced it before Mr. Laney's deposition. Further, Intersil contends in its proposed motion that TAOS' expert "relied upon the fact that AMS acquired TAOS for $320 million." This is a gross exaggeration. In fact, Mr. Ugone included one sentence in the background section of his report entitled "Relevant Parties" stating that "[i]n 2011, TAOS was acquired by Austriamicrosystems." The purchase price is cited in a footnote and is not mentioned anywhere else in the report. Intersil also states on page 11 of the proposed motion that Mr. Laney testified that he discussed the value of this lawsuit with Mr. Heugle. What is noticeably missing from this summary is that Mr. Laney also testified that the only valuation discussed between Mr. Laney and Mr. Heugle came from Intersil's 10-K and that there was no independent valuation for the lawsuit as part of the purchase price. These are only a few of the examples cited in Intersil's proposed motion that evidence Intersil's exaggerated

Jeffrey R. Bragalone
Justin B. Kimble
May 19, 2014
Page 2

claims of relevance related to the documents it seeks. These, and other examples, will form one of the bases for our request for sanctions. We once again request that you cease this unnecessarily contentious and wasteful approach to litigation.

Concerning the specific information requested in your proposed motion, it must be noted that you completely ignore the documents already produced by TAOS and the deposition testimony of Kirk Laney taken on May 16, 2014. With respect to ams documents, Mr. Laney testified that he did not have access to pre-acquisition documents because of conflicts of interest (*see* Rough Dep. Tr. of Kirk Laney at 13) and that certain documents would require supervisory board approval. *Id.* at 13. In other words, even though Mr. Laney is CEO of ams AG, he does not have unilateral power or authority to access or obtain pre-acquisition *ams* documents. In this regard, Mr. Laney testified that he "cannot legitimately request that the [financial analysis presented by PwC Transaction Services Wirtschaftsprufung GmbH, Vienna, Austria"] to come to me" because it is a pre-acquisition document that would be a conflict of interest relating to the acquisition." *Id.* at 100. In any event, Judge Bush ordered TAOS only to produce valuations that relate to the damages being sought by TAOS. As we have previously explained, that would not include this document particularly in light of the fact that it is a fairness opinion to establish that "the transaction exchange ratio was fair to the Shareholders of [ams]" and thus has nothing to do with TAOS' damages.

In your proposed motion you claim that ams' valuations relating to TAOS' assets are highly relevant "to whether Intersil's own valuations of TAOS were so unreasonably low as to somehow constitute bad faith." Intersil's valuations are from *2004* which obviously is well removed from 2011. But your claim is nonetheless interesting because throughout discovery TAOS repeatedly asked for the valuations behind the June 29, 2004 draft "Preliminary Term Sheet" but Intersil produced *virtually nothing* in support of that valuation and repeatedly objected that it was not relevant. Your proposed motion demands "the valuations of intangible assets prepared pursuant to IFRS 3." This has already been produced by TAOS and was even discussed during Mr. Laney's deposition. These IFRS 3 valuations, referenced on TAOS0022333 (part of the July 15, 2011 listing memorandum), shows that "Provisional fair value adjustment intangible assets" of €57.4 Million was allocated from the purchase price. This allocation of the intangible assets (contractual customer relationships of €36,140,000 and technology of €18,553,000) is confirmed on page 80 of ams' 2011 annual report, which Intersil marked as an exhibit to Mr. Laney's deposition and about which Intersil asked questions.

Intersil once again demands valuations of TAOS' intellectual property, but Mr. Laney confirmed during his deposition no such valuations were discussed. *See* Rough Dep. Tr. of Kirk Laney at 69-70. With respect to "any discussion or commentary by TAOS or AMS related to the value and/or merits of this lawsuit," Mr. Laney testified that "[t]here just was not a lot of discussion [between] Kirk to John regarding the lawsuit." *Id.* at 76. Mr. Laney further testified that while there was some initial discussion of a value for the lawsuit based on the amounts identified in Intersil's 10-Ks, there was no separate valuation for the lawsuit as part of the purchase price. *Id.* at 75 & 86.

Jeffrey R. Bragalone
Justin B. Kimble
May 19, 2014
Page 3

    As for the last category of documents demanded by Intersil, there are no "valuation[s] of assets that would relate in any way to the assets that TAOS alleges that Intersil investigated acquiring from TAOS" because ams' acquisition of TAOS was a *stock* acquisition, not an asset acquisition.

    Concerning your request for expedited briefing, Jamil will be out of town Tuesday through Thursday of this week, and the following Monday, May 26, is a holiday. On May 27 we are scheduled to defend the deposition of Michael Wachsler-Markowtisch in Austria. We believe that your proposed motion seeks the production of privileged documents and appears to rely upon a declaration from your expert that is at least 27 paragraphs long. Finally, you are making a request for sanctions against TAOS and that entitles us to due process. For all of these reasons, we would agree to expedited briefing of at least ten days to respond to Intersil's proposed motion to compel but cannot agree to any shorter response deadline.

                                Sincerely,

                                Michael A. McCabe

623283