IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| TEXAS ADVANCED OPTOELECTRONIC SOLUTIONS, INC., | § § § § § | |
| Plaintiff, | § § | |
| v. | § § | Case No. 4:08-CV-451 |
| INTERSIL CORPORATION, | § § | |
| Defendant. | § § | |

## MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR PERMANENT INJUNCTION AND GRANTING IN PART PLAINTIFF'S MOTION FOR SUPPLEMENTAL DAMAGES

The following are pending before the court:

1.  Plaintiff's motion for permanent injunction (docket entry #518);

2.  Response to TAOS's motion for permanent injunction (docket entry #525);

3.  Plaintiff's reply in support of its motion for permanent injunction (docket entry #530);

4.  Intersil Corporation's sur-reply to Texas Advanced Optoelectronic Solutions, Inc.'s motion for permanent injunction (docket entry #539); and

5.  TAOS's notice of updated proposed final judgment and injunction and permanent injunction order (docket entry #559).

_____

1.  TAOS' motion for supplemental damages (docket entry #554);

2.  Notice of partial non-opposition to Plaintiff's motion for supplemental damages (docket entry #556);

3.  Intersil Corporation's response to TAOS's motion for supplemental damages and related post-hearing filings (docket entry #563);

4. TAOS' reply in support of its motion for supplemental damages (docket entry #565);

5. Intersil Corporation's sur-reply in opposition to TAOS's motion for supplemental damages and related post-hearing filings (docket entry #566); and

6. Intersil Corporation's amended sur-reply in opposition to TAOS's motion for supplemental damages and related post-hearing filings (docket entry #567).

On June 3, 2004, the parties entered into a letter "Confidentiality Agreement" to explore a possible business relationship. Pursuant to the terms of the letter agreement, the parties exchanged confidential information; however, the parties were ultimately unable to agree on the terms of a business relationship and discussions regarding acquisition of TAOS by Intersil ended. The Plaintiff subsequently reached the conclusion that the Defendant unfairly used the Plaintiff's confidential information to create a line of digital ambient light sensors that compete with the Plaintiff's ambient light sensors. As such, on November 25, 2008, the Plaintiff filed suit against the Defendant alleging claims for patent infringement, breach of contract, trade secret misappropriation, and tortious interference with prospective business relations.

On October 13, 2009, the Defendant filed its original answer and counterclaims, asserting 14 affirmative defenses and five counterclaims. After extensive summary judgment briefing, the case proceeded to a jury trial on February 9, 2015. At the conclusion of the trial on March 6, 2015, the jury found that (1) the Defendant breached its contract ("Confidentiality Agreement") with the Plaintiff, (2) the Defendant misappropriated the Plaintiff's trade secrets, (3) the Defendant's misappropriation of the Plaintiff's trade secrets resulted from the Defendant's fraud, malice, or gross negligence, (4) the Defendant intentionally interfered with the Plaintiff's prospective business relations with Apple, and (5) the Defendant willfully infringed the '981 patent.

# PERMANENT INJUNCTION

The Plaintiff now claims that the Defendant has continued to sell ambient light sensors that incorporate the Plaintiff's trade secrets and patented technology. In order to prevent the Defendant from continuing to sell the Infringing and At-Issue Products, the Plaintiff moves the court for the entry of a permanent injunction.

"A permanent injunction is an extraordinary remedy." *Bianco v. Globus Med., Inc.*, No. 2:12-CV-00147-WCB, 2014 WL 1049067, at *1 (E.D. Tex. Mar. 17, 2014), citing *Nken v. Holder*, 556 U.S. 418, 428 (2009); *R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496, 500 (1941). "A successful plaintiff is not entitled to injunctive relief as a matter of course, but must make a showing that the circumstances require the Court to enter an injunction." *Id.*, citing *Salazar v. Buono*, 559 U.S. 700, 714 (2010); *Harrisonville v. W.S. Dickey Clay Mfg. Co.*, 289 U.S. 334, 337-38 (1933). "'An injunction should issue only where the intervention of a court of equity is essential in order effectually to protect property rights against injuries otherwise irremediable.'" *Id.* (internal quotation marks excluded), quoting *Weinberger v. Romero–Barcelo*, 456 U.S. 305, 312 (1982), quoting *Cavanaugh v. Looney*, 248 U.S. 453, 456 (1919). "Courts have developed a four-factor test to determine whether the remedy of an injunction is warranted in a particular case." *Id*. "The plaintiff bears the burden of showing: (1) that [it] has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Id.*, citing *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 390 (2006); *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 861 (Fed. Cir. 2010), *aff'd*, 131 S.Ct. 2238 (2011).

### 1. Irreparable Injury & No Adequate Remedy at Law

As noted above, the jury found that the Defendant misappropriated the Plaintiff's trade secrets and willfully infringed the '981 patent. The Plaintiff argues that the evidence at trial established that the Defendant deliberately copied the Plaintiff's ambient light sensors to develop the Infringing and At-Issue Products in order to become a competitor in the ambient light sensor market. The Plaintiff further argues that the evidence at trial established that weeks after the parties engaged in the June 2004 due diligence discussions, the Defendant changed the structure of its EL7903 product (which became ISL29001) to mirror the Plaintiff's not-yet-released TSL256x product. The Plaintiff reminds the court that its expert witness, Mr. McAlexander, testified at trial that he found "zero evidence of any independent design" by the Defendant. Additionally, the Plaintiff's president, Mr. Laney, testified that the Defendant's data sheet for ISL29001 followed that of the Plaintiff's '981 patent. Thereafter, the Plaintiff contends that the evidence at trial revealed that the Defendant became the Plaintiff's direct competitor in the digital ambient light sensor market. Additionally, the Plaintiff argues that the evidence at trial showed that the Defendant made a concerted effort to compete with the Plaintiff for Apple's business. According to the Plaintiff, "[b]y its misappropriation and patent infringement, Intersil gained market share at TAOS' expense, caused a drop in ALS prices, and almost put TAOS out of business." PL. REPLY IN SUPPORT OF MTN. FOR PERM. INJ., p. 2.

The Plaintiff further argues that the Defendant currently sells the At-Issue and Infringing Products. Specifically, the Defendant sells ISL29003 on its website. The Plaintiff also contends that the Defendant sells ISL76683, a product that was introduced after this lawsuit was filed, but allegedly made with the same die as ISL29003. Ultimately, the Plaintiff argues that it will be injured

irreparably if it is forced to compete again with the Defendant's products that incorporate the Plaintiff's trade secrets and infringe the Plaintiff's patent.

In response, the Defendant first argues that with respect to the Plaintiff's trade secret misappropriation claims, the Plaintiff has not suffered irreparable harm, nor will it suffer irreparable harm in the future. The Defendant advises the court that the technical or financial secrets in question do not form the basis for injunctive relief because the same is no longer a secret. In support of their argument, the Defendant argues that the evidence at trial revealed that the Plaintiff publicly disclosed its trade secrets no later than February 2005 when the Plaintiff publicly released its 2560 ambient light sensor product. The Defendant notes, then, that as of February 2005, the 2560 product's combination of technical information was publicly available through reverse engineering. The Defendant argues that since the Plaintiff's technologies at issue have been in the public domain since 2005, the Plaintiff is not entitled to *future* trade secret protection in the form of an injunction. The Defendant further contends that the parties' "Confidentiality Agreement" (non-disclosure agreement) expired in 2007, thus suggesting that the Plaintiff did not expect for its trade secrets to remain secret beyond 2007.

Finally, the Defendant notes that while the Plaintiff claims it lost Apple's business in 2007, the Plaintiff has won Apple's business for each of the last four generations of iPhones over the past six years. The Defendant contends that even if the Defendant almost put the Plaintiff out of business in 2007, the Plaintiff has offered no evidence that the Plaintiff's business with Apple, or any other customer for that matter, is at risk *today* absent an injunction.

With respect to the Plaintiff's misappropriation of trade secrets claim, the court finds that the Plaintiff has failed to establish that, "in the absence of an injunction, [it] has suffered, and is

likely to continue suffering, irreparable injury for which there is no adequate remedy at law." *Bianco*, 2014 WL 1049067, *2. "The Texas common law of trade secret protection provides for injunctions to issue in appropriate cases, but the core right in the case of trade secrets is not the right to exclude others from practicing the trade secret." *Id*. "For example, the owner of a trade secret, unlike a patentee, has no right to bar a party from practicing the technology that is the subject of the trade secret, as long as the party has not obtained access to that technology by misappropriating the trade secret. Thus, the core right that attaches to a trade secret is the right against misappropriation, not the right to exclude a user of the technology." *Id*.

Here, as in *Bianco*, *supra.*, the court begins its analysis with the jury's verdict. The jury found that the Defendant misappropriated the Plaintiff's trade secrets. *See id*. at *3. For purposes of the matter at hand, this issue is settled. *See id*. The jury was instructed that if it found that the Defendant misappropriated the Plaintiff's trade secrets, the jury must determine an appropriate remedy for such misappropriation. The jury was instructed that it could award the Plaintiff either disgorgement of the Defendant's profits for the products at issue or a reasonable royalty for the Defendant's sales of the products at issue. *See* COURT'S INSTRUCTIONS TO THE JURY, Dkt. #506, p. 13. Notably, the jury determined that a reasonable award for the misappropriation of the Plaintiff's trade secrets was the disgorgement of the Defendant's profits in the amount of $48,783,007.00.

The evidence at trial revealed that in June 2004, the parties entered into a Confidentiality Agreement to explore a possible business relationship. While negotiations concerning this business relationship ultimately failed, the Plaintiff's entry into the Confidentiality Agreement showed the Plaintiff's willingness to share its trade secrets in order to engage in a business venture. Further, pursuant to the terms of the Confidentiality Agreement, the parties were bound by the terms of the

agreement until June 2007.  Once the Plaintiff's products were on the market, however, the Defendant was permitted to reverse engineer those products after the terms of the Confidentiality Agreement expired in June 2007.  *See Bianco, supra.* at *4.  Whatever potential "head start" the Defendant may have gained from its misappropriation of the Plaintiff's trade secrets occurred years ago and has no bearing on any future harm.  Since an injunction is designed to alleviate future harm, and since the threat of any future harm has long passed, the issuance of an injunction does not appear to be appropriate.  *See i4i Ltd. P'ship*, 598 F.3d at 861-62.

Additionally, the court finds that the Plaintiff's argument that it will be irreparably harmed if it is forced to compete with the Defendant's products that incorporate the Plaintiff's trade secrets is unpersuasive.  While the Plaintiff and the Defendant compete in the ambient light sensor market, the evidence showed that the Plaintiff won Apple's business for each of the last four generations of iPhones over the past six years.  The court agrees with the Defendant that even if the Defendant *almost* put the Plaintiff out of business in 2007, the Plaintiff has offered no evidence that the Plaintiff's business with Apple, or any other customer for that matter, is at risk *today* absent an injunction.

The court further questions the Plaintiff's ability to establish irreparable injury and the need for an injunction with respect to the Defendant's misappropriation of the Plaintiff's trade secrets since "trade secret misappropriation under Texas law is not a continuing tort."  *Bianco v. Globus Medical, Inc.* 53 F. Supp. 3d 929, 938 (E.D. Tex. 2014), citing TEX. CIV. PRAC. & REM. CODE § 16.010(b).  "Instead, the tort of misappropriation, as viewed under Texas law, occurs at the moment of misappropriation."  *Id*. (citation omitted).  "Thus, while a patent infringer commits a new tort of infringement each time it makes, uses or sells the patented product, a trade secret misappropriator

commits only a single tort at the time of misappropriation." *Id*. This leads the court to next review the Plaintiff's ability to establish irreparable injury, the inadequacy of money damages, and the need for an injunction with respect to the patent infringement claims.

"[T]he patent right is explicitly defined as a right of the patent owner to exclude others from practicing the invention protected by the patent." *Bianco*, 2014 WL 1049067, *2, citing 35 U.S.C. § 154(a)(1) (remaining citations omitted). "Although the Supreme Court in *eBay* made it clear that the statutory right to exclude does not justify a general rule favoring injunctions in patent cases, 547 U.S. at 392, the right to exclude is frequently invoked as being a significant factor supporting the grant of injunctive relief in particular cases." *Id*.

Again, the court's analysis begins with the verdict of the jury. The jury found that the Defendant infringed claims 16, 17, 18, 43, 45, and 46 of the '981 patent. The jury was instructed that if it found that the Defendant infringed any valid claim of the '981 patent, then the Plaintiff was entitled to at least a reasonable royalty to compensate it for that infringement. *See* COURT'S INSTRUCTIONS TO THE JURY, Dkt. #506, p. 33. The court notes that the Plaintiff only sought to recover a reasonable royalty. The jury subsequently awarded the Plaintiff a reasonable royalty for the Defendant's infringement of the '981 patent in the amount of $73,653.51.

It is clear to the court from the moving papers as well as the discussion that ensued at the January 19, 2016 hearing on this matter that the Defendant continues to sell at least one Infringing Product on its website. TR., JAN. 19, 2016 HEARING, pp. 55-58. While the court might have determined that the Defendant's continued sale of an Infringing Product amounted to irreparable harm, the court declines to do so in light of the fact that the Plaintiff viewed a reasonable royalty as sufficient compensation for the Defendant's past infringement. *See Bianco*, 2014 WL 1049067, *3.

"It also provides a sound basis from which to conclude that a continuing royalty would have the same effect on any continuing injury into the future." *Id*. Accordingly, this factor weighs against the issuance of an injunction.

### 2. Balance of Hardships

"Because the 'balance of hardships' assesses the relative effect of granting or denying an injunction on the parties," the court may consider such factors as "the parties' sizes, products, and revenue sources." *i4i Ltd. P'ship*, 598 F.3d at 862. The Plaintiff notes that as of January 3, 2014, the Defendant had $194.8 million in cash and a net worth of approximately $957 million. At trial, Alan Ratliff, the Defendant's damages expert, testified that the Defendant's sales from ambient light sensors made up 1.3% of the Defendant's total revenue from 2006 to 2013. Mr. Ratliff further testified that a large portion of the Plaintiff's business is derived from the sale of ambient light sensors. The Plaintiff argues that the Defendant's direct competition with the Plaintiff through the use of the Plaintiff's patented technology and trade secrets deprives the Plaintiff of revenue from its ambient light sensors. The Plaintiff argues that this is a hardship to the Plaintiff because a greater portion of its product portfolio, as compared to that of the Defendant's, is comprised of ambient light sensors.

The Defendant argues, and the court agrees, that without establishing irreparable harm, the Plaintiff cannot demonstrate that it will be faced with a hardship if an injunction does not issue. Accordingly, this factor weighs against the issuance of an injunction.

### 3. Public Interest

"[T]he touchstone of the public interest factor is whether an injunction, both in scope and effect, strikes a workable balance between protecting the patentee's rights and protecting the public

from the injunction's adverse effects." *i4i Ltd. P'ship*, 598 F.3d at 863 (citation omitted). The Plaintiff argues that a permanent injunction is necessary to prevent the Defendant from continuing to misuse the Plaintiff's trade secrets and patented technology. As noted by the Defendant, the Plaintiff's argument does not address how the public would be protected from the injunction's adverse effects. Accordingly, this factor weighs against the issuance of an injunction.

## SUPPLEMENTAL DAMAGES

The Plaintiff argues that it is entitled to seek damages for sales of the Infringing Products and the At-Issue Products from April 2014 through the entry of a final judgment. For all of the reasons already stated, the Plaintiff is not entitled to supplemental damages for the Defendant's misappropriation of the Plaintiff's trade secrets.

With respect to patent infringement damages, the jury did not have before it evidence of the Defendant's sales data from March 2014 through March 2015 (the jury's verdict). The Defendant does not dispute (providing that the patent infringement verdict stands) that the Plaintiff is entitled to supplemental damages for sales in the United States of products found to infringe the Plaintiff's patent from March 2014 until the expiration of the patent. The court notes that the Plaintiff seeks supplemental damages from March 2014 until the entry of a permanent injunction; however, for all of the reasons provided herein, the Plaintiff's request for injunctive relief is denied.

## CONCLUSION

Having reviewed the four factors necessary to obtain permanent injunctive relief, the court finds that the factors weigh against the issuance of a permanent injunction. Accordingly, the Plaintiff's motion for a permanent injunction (docket entry #518) is hereby **DENIED**. TAOS' motion for supplemental damages (docket entry #554) is **GRANTED IN PART**.

In the event the Plaintiff's request for injunctive relief was denied, the Defendant moved the court for a running royalty for any future patent infringement. The court finds that the request is well taken and should be granted. Since the Defendant has admitted to the ongoing sale of at least one Infringing Product, a running royalty is appropriate. The court notes that the running royalty is only appropriate with respect to the patent infringement claim, not the trade secret misappropriation claim for the reasons stated above.

The Defendant has requested the opportunity to negotiate a royalty rate to address any future harm to the Plaintiff for the remaining life of the '981 patent. The parties are hereby

**ORDERED** to negotiate a royalty rate to address any future harm to the Plaintiff for the remaining life of the '981 patent. Such supplemental damages shall be for sales in the United States of products found to infringe the Plaintiff's patent from March 2014 until the expiration of the patent. The parties shall have 30 days from the entry of this order to negotiate a royalty rate. If the parties require additional time, they may so move the court. If the parties are unable to successfully negotiate a royalty rate, the Plaintiff may move the court to impose an ongoing royalty rate.

IT IS SO ORDERED.

**SIGNED this the 22nd day of April, 2016.**

_____
RICHARD A. SCHELL
UNITED STATES DISTRICT JUDGE