# United States District Court

EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| TEXAS ADVANCED § | |
| OPTOELECTRONIC SOLUTIONS, INC. § | |
| § | Civil Action No. 4:08-cv-00451 |
| v. § | Judge Mazzant |
| § | |
| RENESAS ELECTRONICS AMERICA § | |
| INC. f/k/a INTERSIL CORPORATION § | |
| § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiff Texas Advanced Optoelectronic Solutions, Inc.'s ("TAOS") Renewed Motion for Entry of Permanent Injunction (Dkt. #618). Having considered the motion and the relevant pleadings, the Court finds that the motion should be denied.

## BACKGROUND

On June 3, 2004, the parties entered into a letter "Confidentiality Agreement" to explore a possible business relationship. Pursuant to the terms of the Confidentiality Agreement, the parties exchanged confidential information; however, the parties were ultimately unable to agree on the terms of a business relationship and discussions regarding acquisition of TAOS by Defendant Renesas Electronics America Inc. f/k/a Intersil Corporation ("Renesas") ended. The Plaintiff subsequently reached the conclusion that the Defendant unfairly used the Plaintiff's confidential information to create a line of digital ambient light sensors that compete with the Plaintiff's ambient light sensors. As such, on November 25, 2008, the Plaintiff filed suit against the Defendant alleging claims for patent infringement, breach of contract, trade secret misappropriation, and tortious interference with prospective business relations (Dkt. #1).

This case has come a long way since 2008. On October 13, 2009, the Defendant filed its original answer and counterclaims, asserting 14 affirmative defenses and five counterclaims

(Dkt. #88). After extensive summary judgment briefing, the case proceeded to a jury trial on February 9, 2015. At the conclusion of the trial on March 6, 2015, the jury found that: (1) the Defendant breached its contract (the Confidentiality Agreement) with the Plaintiff; (2) the Defendant misappropriated the Plaintiff's trade secrets; (3) the Defendant's misappropriation of the Plaintiff's trade secrets resulted from the Defendant's fraud, malice, or gross negligence; (4) the Defendant did not prove that the Plaintiff must have known or must have been reasonably able to discover that the Defendant had used the Plaintiff's proprietary information to create competing products before November 25, 2005; (5) the Plaintiff proved that the Defendant fraudulently concealed the facts upon which the Plaintiff's misappropriation of trade secrets claim was based; (6) the Defendant intentionally interfered with the Plaintiff's prospective business relations with Apple; (7) the Defendant's tortious interference was the result of fraud, malice, or gross negligence; (8) the Defendant willfully infringed the '981 patent; (9) the Defendant did not prove that any of the claims of the '981 patent were invalid due to obviousness, for failing to satisfy the written description requirement, or for failing to contain a sufficiently full and clear description of how to make and use the full scope of the claimed invention; (10) the Defendant did not prove that the Defendant's conduct was excused because of laches; and (11) the Defendant did not prove that the Plaintiff had unclean hands (Dkt. #511).

Final judgment was entered on June 9, 2016 (Dkt. #596). Renesas appealed the final judgment to the United States Court of Appeals for the Federal Circuit on June 10, 2016 (Dkt. #598). The Federal Circuit affirmed in part, reversed in part, and vacated in part the final

judgment and remanded the case (Dkt. #614, Attachment 1). On August 9, 2019, Judge Schell[1] transferred this case to the Court (Dkt. #662).

On August 24, 2018, TAOS filed its Renewed Motion for Entry of Permanent Injunction (Dkt. #618). On November 5, 2018, Renesas filed its response in opposition to the motion (Dkt. #642). On November 12, 2018, TAOS filed its reply; Renesas filed its sur-reply on November 19, 2018 (Dkt. #644; Dkt. #649).

## LEGAL STANDARD

A party seeking a permanent injunction must satisfy the traditional four-factor test before the Court may grant injunctive relief. *E.g.*, *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). The party must show:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*Id.* The Court's decision to award or deny permanent-injunctive relief is an act of equitable discretion. *Id.* (citing *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 320 (1982)).

## ANALYSIS

### I. TAOS Is Not Entitled to Permanent-Injunctive Relief

TAOS is not entitled to a permanent injunction as a remedy for Defendant's willful infringement of its '981 patent. First, TAOS has not shown that it suffered an irreparable injury. Other than pointing to one lost sale in 2008, TAOS provides no evidence of injury.

---

[1] United States Senior District Judge Richard Schell assumed senior status on March 10, 2015.

Not only is a single lost sale in 2008 insufficient to prove that TAOS will suffer irreparable harm without an injunction, but TAOS fails to establish a causal nexus relating the harm to Defendant's infringement. Second, TAOS has remedies available at law to compensate it for any injury caused by the Defendant's infringement. TAOS presents no evidence of hard-to-measure harms and has accepted a reasonable royalty for the use of its technology on two occasions, indicating TAOS can be adequately compensated with monetary damages. Finally, TAOS has not shown that the balance of hardships and public interest factors weigh in favor of permanent-injunctive relief.

### A. Irreparable Injury

TAOS cannot show that it will suffer irreparable injury in the absence of permanent-injunctive relief. In order to show irreparable injury, TAOS must prove that: (1) absent an injunction, it will suffer irreparable harm; and (2) a "causal nexus relates the alleged harm to the alleged infringement"—essentially, proof that the infringement causes the harm. *Apple Inc. v. Samsung Elecs. Co.*, 809 F.3d 633, 639 (Fed. Cir. 2015) (quoting *Apple Inc. v. Samsung Elecs. Co.*, 695 F.3d 1370, 1374 (Fed. Cir. 2012)). TAOS has proved neither.

#### i. TAOS will not suffer irreparable harm absent a permanent injunction

TAOS claims it suffered irreparable harm: (1) as a result of a lost sale to Apple in 2008; and (2) as a result of Defendant's continuing infringement (Dkt. #618 at pp. 6–10; Dkt. #644 at pp. 4–5). TAOS's injury from a lost sale in 2008 does not establish that it will suffer irreparable harm without a permanent injunction, and TAOS does not present sufficient evidence of ongoing infringement from Defendant. Accordingly, the Court finds that TAOS has not shown it will suffer irreparable harm in the absence of an injunction.

TAOS first contends that past harm is relevant in the irreparable-injury analysis, and it focuses most of its analysis on Apple's decision to purchase Defendant's infringing sensors in 2008 (Dkt. #618 at p. 6). Defendant does not dispute that past harm is relevant but claims that TAOS's assertion of irreparable harm is "ancient history," focused on a single event in 2008 (Dkt. #642 at p. 9). Defendant also distinguishes this case from *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831 (Fed. Cir. 2010), claiming that TAOS presents no evidence concerning loss of reputation, brand recognition, or goodwill—all examples of irreparable harm (Dkt. #618 at pp. 9–10 n.4).

The Court may consider past harm to TAOS's market share, revenues, and brand recognition in determining whether it "*has suffered* an irreparable injury." *E.g.*, *i4i*, 598 F.3d at 861 (emphasis in original) (citing *eBay*, 547 U.S. at 391). However, because injunctions are "tools for prospective relief designed to alleviate future harm," TAOS's ability to identify some past harm is not dispositive. *See id.* ("It was proper for the district court to *consider* evidence of past harm to i4i. . . . by its terms the first *eBay* factor looks, in *part*, at what has already occurred." (emphasis added)); *see also Tex. Advanced Optoelectronic Sols., Inc. v. Renesas Elecs. Am.*, Inc., 895 F.3d 1304, 1331 (Fed. Cir. 2018).

Unlike the plaintiff in *i4i*, which TAOS cites for support, TAOS presents no evidence that it suffered past harm to its market share or brand recognition, or that its technology was rendered obsolete, forcing it to change its business strategy to survive. *See* 598 F.3d at 862. On the contrary, TAOS currently dominates the market for ambient light sensor devices, particularly the cellphone market (Dkt. #642, Exhibit 2 ¶13). And although TAOS states that it lost market share and suffered a drop in ambient light sensor prices, TAOS's cited evidence for that proposition says

5

nothing of the sort (Dkt. #618 at p. 10 n.32). TAOS has evidence of one lost sale. On its own, that does not rise to the level of an *irreparable* harm.

After its lengthy discussion regarding past harm, TAOS concludes its irreparable-injury argument by stating that the '981 patent is the core of TAOS's business, and Defendant continues to sell infringing products (Dkt. #618 at p. 10). Defendant argues that TAOS produces no evidence of any current infringement or current harm; Defendant even disputes that it and TAOS currently compete in the cellphone market, which unlike TAOS, Defendant claims is neither a design-win market nor a two-player market (Dkt. #642 at pp. 9–11). In its reply, TAOS asserts that Defendant's representation that it no longer sells infringing products is both: (1) insufficient to defeat a request for permanent-injunctive relief without very persuasive evidence that infringement will not occur in the future; and (2) false, because Defendant continues to list the ISL 76683, an infringing product, on its website for sale in the United States (Dkt. #644 at pp. 2–3, 5).

Before turning to its analysis, the Court addresses TAOS's claim that an "infringer's representation that it no longer sells infringing products is insufficient to defeat a request for permanent injunctive relief unless there is '*very persuasive*' evidence that infringement will not take place in the future" (Dkt. #644 at p. 2) (emphasis added). This is no longer a correct statement of the law.

TAOS quotes *W.L. Gore & Assocs., Inc. v. Garlock, Inc.*, 842 F.2d 1275, 1281–82 (Fed. Cir. 1988), for this proposition. *W.L. Gore*'s permanent-injunction analysis was abrogated by the United States Supreme Court's *eBay* decision. *Compare eBay*, 547 U.S. at 392–94 (holding that categorical rules cannot replace the "traditional four-factor framework that governs the award of

6

injunctive relief" in Patent Act cases), *with W.L. Gore*, 842 F.2d at 1281–82 ("[I]njunctive relief against an adjudged infringer is *usually* granted . . . The fact that the defendant has stopped infringing is *generally* not a reason for denying an injunction against future infringement unless the evidence is very persuasive . . . ." (emphasis added)).[2] *W.L. Gore*'s categorical rule requiring "very persuasive" evidence to overcome the presumption that a permanent injunction issues on a finding of infringement is inapplicable after *eBay*.

Turning to its analysis, the Court finds that Defendant has presented sufficient, uncontested evidence that it no longer sells an infringing product in the United States, dooming TAOS's assertion that it is irreparably harmed by continued infringement. TAOS provided a link in its reply purporting to show that Defendant lists the infringing ISL 76683 for sale on its website (Dkt. #644 at p. 3 n.5). Defendant claims it no longer sells the ISL 76683 in the United States. In following the link TAOS provided, the Court notes that Defendant has one unit of the ISL 76683 available for "Order from an Authorized Distributor" in the "Americas," and a clickable "Buy" button under the "Buy Direct" column. RENESAS ELECTRONICS, https://www.renesas.com/us/en/products/sensors/ambient-light-sensors/light-to-digital-sensors/device/ISL76683.html#ordering (last visited Sept. 13, 2019). However, Edward Kohler, a Strategic Marketing Manager for Defendant, stated in his sworn declaration that the ISL 76683 is no longer sold in the United States and that Renesas has implemented a "stop ship" for the ISL 76683 in the United States (Dkt. #649, Exhibit 1 ¶¶ 3–4). TAOS presents no evidence to rebut Mr. Kohler's sworn declaration. Based

---

[2] The Federal Circuit has recognized that *W.L. Gore* was abrogated in part by *eBay*. *Zoltek Corp. v. United States*, 672 F.3d 1309, 1319 (Fed. Cir. 2012).

on Mr. Kohler's declaration—made under penalty of perjury—the Court finds that Defendant has mechanisms in place to prevent the sale of the ISL 76683 in the United States.

TAOS presents evidence of a single lost sale in 2008 but can identify no other harm. TAOS has not shown that it will suffer irreparable harm in the absence of a permanent injunction. Accordingly, TAOS fails to meet this prong of the irreparable-injury test.

### ii. TAOS cannot satisfy the causal-nexus test

Even if Apple's one-time decision to purchase Defendant's sensors was sufficient for TAOS's showing of irreparable harm, TAOS did not establish that Defendant's infringement caused that harm. In order to prove a causal nexus, TAOS needs to show "some connection between the patented features and the demand for the infringing products"; the patented features do not need to be the sole cause of the harm. *Apple Inc. v. Samsung Elecs. Co.*, 809 F.3d 633, 641 (Fed. Cir. 2015) (citation and quotation omitted). There is no question that TAOS lost a potential sale in 2008 when Apple decided to purchase Defendant's product (Dkt. #618 at pp. 8–9; Dkt. 642 at p. 9). But Defendant disputes whether a causal nexus exists between Apple's 2008 decision and Defendant's infringement—according to Defendant, Apple's decision was driven by Defendant's use of low-cost plastic packaging, which was not related to TAOS's patented technology (Dkt. #642 at pp. 9–10) (citing *Tex. Advanced Optoelectronic Sols., Inc.*, 895 F.3d at 1321).

TAOS has not established the requisite causal nexus between Defendant's infringement and Apple's decision to purchase Defendant's sensor. TAOS argues that evidence of a lost design win to an infringing product—like Apple's decision to purchase 3,000 sensors from Defendant in 2008—supports finding the existence of a causal nexus (Dkt. #618 at pp. 8–9). But the evidence

8

indicates that it was Defendant's use of low-cost plastic packaging[3] that drove Apple to purchase its sensors back in 2008, and TAOS has not shown any connection between its patented features and Apple's demand. *See Tex. Advanced Optoelectronic Sols., Inc.*, 895 F.3d at 1321 ("TAOS itself attributed Intersil's iPhone 3G win primarily to Intersil's significantly lower bid price, made possible by using the (lower cost) plastic packaging."). Indeed, one of TAOS's founders testified at trial that TAOS lost the bid to supply sensors for the iPhone in 2008 "because of price." (Dkt. #618, Exhibit D at p. 10). And once TAOS presented Apple with a "roadmap to a lower cost solution in plastic packages," TAOS immediately regained Apple's business (Dkt. #618, Exhibit D at p. 11).

Apple's cost-based decision is consistent with the fact that Apple never used Defendant's sensor in its infringing mode of operation—"Mode 3" (Dkt. #642 at p. 13). If Apple's decision was partially motivated by its desire to have a sensor with TAOS's patented features, Apple would likely have wanted the sensor to operate in Mode 3. TAOS does not present evidence to dispel this common-sense conclusion or establish that its technology was a driving force behind Apple's choice to purchase Defendant's sensors.[4] *See Apple*, 809 F.3d at 644 (recognizing the existence of a causal nexus where "Apple loses sales because Samsung products contain Apple's patented features.").

---

[3] Defendant used low-cost plastic packaging as early as 2003, and its use of that packaging did not constitute infringement or misappropriation of trade secrets. *See Tex. Advanced Optoelectronic Sols., Inc.*, 895 F.3d at 1313, 1326–27.

[4] TAOS presents no evidence, for example, that Apple wanted a sensor that *could* operate in Mode 3, even if it never actually utilized Mode 3. *See generally Tex. Advanced Optoelectronic Sols., Inc.*, 895 F.3d at 1327–28. And for the reasons stated in Defendant's response, the Court finds that the only evidence TAOS presented discussing a causal nexus is inapposite (Dkt. 642 at p. 12 n.9).

9

Even if TAOS had established that it would suffer irreparable harm without injunctive relief, it has not established that the harm is causally related to the patented invention. Accordingly, the irreparable-injury analysis weighs against granting TAOS permanent-injunctive relief.

### B. Remedies Available at Law

Because adequate remedies at law exist to compensate TAOS for harm caused by Defendant's infringement of its '981 patent, permanent-injunctive relief is not appropriate. "This factor requires a patentee to demonstrate that 'remedies available at law, such as monetary damages, are inadequate to compensate' the patentee for the irreparable harm it has suffered." *Apple Inc. v. Samsung Elecs. Co.*, 735 F.3d 1352, 1368 (Fed. Cir. 2013) (quoting *eBay*, 547 U.S. at 391). To demonstrate the inadequacy of monetary relief, TAOS points to its decision not to license its technology to Defendant (Dkt. #618 at p. 10). TAOS also claims that the "design-win nature of the ambient light sensor market makes lost future sales difficult to quantify." (Dkt. #618 at p. 11).

Defendant counters that TAOS has no evidence supporting its claim that monetary damages would be difficult to calculate (Dkt. #642 at p. 13). Defendant also argues that TAOS sought and obtained a reasonable royalty for Defendant's past infringement, making it likely that a reasonably royalty would be an adequate remedy for any future infringement (Dkt. #642 at pp. 13–14). Defendant points out that because it is a very large company, it would be capable of paying a money judgment for future infringement (Dkt. #642 at p. 14). Finally, Defendant claims that TAOS *has* licensed its patented technology to Avago, one of TAOS's competitors, in a "Sales

and Supplier Agreement"; TAOS disputes that this agreement is a license but does not dispute that it receives a royalty from the agreement (Dkt. #642 at p. 14; Dkt. 644 at p. 6; Dkt. #649 at pp. 6–7).

The Court finds that TAOS has adequate remedies at law to compensate it for its injury. A patentee's decision not to license its technology is relevant to the analysis, but it is not dispositive. *E.g.*, *Acumed LLC v. Stryker Corp.*, 551 F.3d 1323, 1328 (Fed. Cir. 2008); *eBay*, 547 U.S. at 393. TAOS does not dispute that it receives a royalty under the Sales and Supplier Agreement, but it does dispute Defendant's characterization of the agreement as a "license" (Dkt. #644 at p. 6). Whether the agreement represents a license is unimportant. The test is not whether TAOS has ever licensed its technology—that kind of categorical determination would run afoul of *eBay*. 547 U.S. at 393. The relevant question is whether the evidence indicates that monetary damages would be inadequate to compensate TAOS for its injury. TAOS not only chose to accept an award of reasonable royalties for Defendant's infringement, but it was able to quantify royalties in its Sales and Supplier Agreement with Avago, one of TAOS's main competitors (Dkt. #642 at p. 11 n.6). TAOS provides no evidence of any hard-to-measure harms caused by Defendant's infringement, and TAOS has—on multiple occasions, now—accepted reasonable royalties for the use of its technology. *See generally Tex. Advanced Optoelectronic Sols., Inc.*, 895 F.3d at 1331 (stating that "hard-to-measure harms, such as impaired goodwill and competitive position," can justify permanent-injunctive relief, even where a patent owner has accepted reasonable royalties for past infringement). TAOS has not demonstrated that no adequate remedy at law exists.

Further, the Court's finding that an adequate remedy at law exists does not inequitably force TAOS to license its technology to its direct competitor in a two-player market. Defendant established without refutation that it no longer competes with TAOS or sells to Apple or any cell-phone manufacturer (Dkt. #642 at p. 15). Defendant also established that TAOS has several competitors in the market, including Avago (Dkt. #624 at p. 11 n.6). TAOS does not present countervailing evidence. *See generally* (Dkt. #644). All TAOS states is that the "design-win nature of the ambient light sensor market makes lost future sales difficult to quantify" (Dkt. #618 at p. 11). Unlike the patentees in the cases TAOS cites for support, TAOS fails to provide any evidence for its assertion that lost future sales would be difficult to quantify (Dkt. #618 at pp. 10–11) (citing *Apple*, 809 F.3d at 645; *Broadcom*, 543 F.3d at 703). And TAOS's naked assertion is undercut by the reality that on at least two separate occasions, TAOS *has* quantified a reasonable royalty for the use of its technology.[5]

Because the Court finds that adequate remedies at law exist to compensate TAOS for its injuries, this factor weighs against granting permanent-injunctive relief.

### C. Balance of Hardships

"The balance of hardships factor 'assesses the relative effect of granting or denying an injunction on the parties.'" *See Apple*, 735 F.3d at 1371 (quoting *i4i*, 598 F.3d at 862). Neither party would be particularly burdened by either outcome. TAOS claims that requiring a party to compete against its own, patented invention represents a substantial hardship (Dkt. #618 at p. 11).

---

[5] TAOS states that "the Federal Circuit has already rejected [Defendant's] claim that TAOS' pursuit of a reasonable royalty for past infringement dictates that a continuing royalty sufficiently compensates TAOS for future injury." (Dkt. #644 at p. 6). True—TAOS's pursuit of a reasonable royalty does not *dictate* the conclusion that TAOS has an adequate remedy at law. But it is relevant to the analysis. *Tex. Advanced Optoelectronic Sols., Inc.*, 895 F.3d at 1331.

TAOS lists several other reasons why the balance-of-hardships factor weighs in favor of granting injunctive relief, including that it filed this lawsuit in 2008, that Defendant continued to sell infringing products throughout the court proceedings and post-verdict briefing, and that three more years remain on the life of the '981 patent (Dkt. #618 at pp. 11–12). TAOS admits that Defendant does not currently offer any infringing products for sale on its website[6] but claims that Defendant sold infringing products "through other means" in 2016 (Dkt. #618 at p. 12). And TAOS argues that regardless of any ongoing sales, Defendant is still *capable* of manufacturing and selling the infringing product, which TAOS claims is another factor weighing in favor of permanent-injunctive relief (Dkt. #618 at p. 12).

Defendant argues that TAOS did not provide any evidence that failing to obtain permanent-injunctive relief would have a negative impact on TAOS's market share, customers, or future sales, and thus failed to meet its burden on this factor (Dkt. #642 at pp. 14–15). Defendant also argues that it no longer competes with TAOS, sells to Apple or any cell-phone manufacturer, or sells any product infringing on TAOS's '981 patent in the United States (Dkt. #642 at p. 15). Thus, Defendant claims that any "competition" TAOS refers to comes from "one or more of the 18 other competitors identified at the trial . . . ." (Dkt. #642 at p. 15). Defendant states that injunctive relief is not appropriate because the '981 patent is close to expiration (Dkt. #642 at pp. 15–16). Finally, Defendant maintains that because there would be no commercial impact of a denial, TAOS has produced no evidence that it would benefit from an injunction (Dkt. #649 at p. 7).

---

[6] Contradicting TAOS's assertion that Defendant still offers an infringing product for sale on its website (Dkt. #644 at p. 3 n.5).

The Court finds that the balance of hardships is neutral—thus, TAOS has not shown that it is entitled to permanent-injunctive relief on this factor. Defendant argues that it no longer competes with TAOS, sells to Apple or any cell-phone manufacturer, or sells any product infringing on TAOS's '981 patent in the United States, particularly because the '981 patent is old technology (Dkt. #642 at pp. 10, 15). By claiming that it no longer sells any infringing products, Defendant effectively concedes that the hardship of complying with an injunction would be minimal. *See Apple*, 735 F.3d at 1371.

However, TAOS has not established that it would be burdened by the denial of an injunction. TAOS's unsupported assertions and conflicting statements regarding whether Defendant continues to sell infringing products in the United States does not convince the Court that it would be burdened in the absence of a permanent injunction, particularly because TAOS does not present evidence that Defendant continues to compete with it. *See ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1341 (Fed. Cir. 2012).

### D. Public Interest

The "touchstone of the public interest factor is whether an injunction, both in scope and effect, strikes a workable balance between protecting the patentee's rights and protecting the public from the injunction's adverse effects." *i4i*, 598 F.3d at 863. Because the public-interest factor is neutral, TAOS has not shown that it is entitled to permanent-injunctive relief on this factor.

TAOS argues that the public interest nearly always weighs in favor of protecting a patentee's property rights in the absence of countervailing factors and asserts that injunctive relief is proper under this prong because this public interest would not be served by allowing a willful

infringer to "continue misusing" TAOS's patented technology (Dkt. #618 at p. 13). Defendant counters by arguing that the public's general interest in upholding patent rights, without more, does not warrant injunctive relief under this prong (Dkt. #642 at p. 16). Defendant also states that it has already stopped selling the infringing products and has no need for the "outdated technology" represented by TAOS's '981 patent (Dkt. #642 at p. 16).

Defendant is correct—without more, the public's general interest in upholding patent rights does not warrant injunctive relief. *See, e.g.*, *ActiveVideo Networks, Inc.*, 694 F.3d at 1341 ("Although enforcing the right to exclude serves the public interest, the public interest factor requires consideration of other aspects of the public interest."); *eBay*, 547 U.S. at 393 (cautioning against broad classifications when evaluating the four-factor, permanent-injunction analysis). Here, the Court finds that the public interest does not weigh in favor of granting or denying TAOS a permanent injunction.

As previously addressed by the Court, TAOS's assertion that Defendant continues to infringe its '981 patent is unsubstantiated. Thus, the public's only interest in an injunction here is its interest in a robust patent system—a worthy interest, to be sure. *See ActiveVideo Networks, Inc.*, 694 F.3d at 1341. However, an unnecessary injunction can create confusion in the marketplace and provide "undue leverage in negotiations." *eBay*, 547 U.S. at 396–97 (Kennedy, J., concurring). Accordingly, the public interest neither supports nor counsels against granting TAOS permanent-injunctive relief.

## CONCLUSION

TAOS has not shown that any of the four factors weigh in favor of granting permanent-injunctive relief. It is therefore **ORDERED** that TAOS's Renewed Motion for Entry of Permanent Injunction (Dkt. #618) is hereby **DENIED**.

**SIGNED this 1st day of October, 2019.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE