# United States District Court

### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| TEXAS ADVANCED OPTOELECTRONIC SOLUTIONS, INC. | § § § | |
| | § | Civil Action No. 4:08-cv-00451 |
| v. | § | Judge Mazzant |
| | § | |
| RENESAS ELECTRONICS AMERICA INC. f/k/a INTERSIL CORPORATION | § § § § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Pending before the Court is Plaintiff Texas Advanced Optoelectronic Solutions, Inc.'s ("TAOS") Motion for Entry of Final Judgment (Dkt. #672). TAOS seeks entry of final judgment on two of the four claims that it prevailed on during trial in 2015: (1) breach of contract; and (2) tortious interference. Though final judgment was already entered on TAOS's trade secret misappropriation claim to the exclusion of TAOS's breach of contract and tortious interference claims, the Federal Circuit vacated the damages award on TAOS's misappropriation claim. Now on remand, TAOS argues it is entitled to re-elect its remedy and seeks the entry of final judgment on its breach of contract and tortious interference claims so that it may recover on those two claims.

Having considered the motion, the relevant pleadings, the Federal Circuit's opinion in *Texas Advanced Optoelectronic Solutions, Inc. v. Renesas Electronics America, Inc.*, 895 F.3d 1304 (Fed. Cir. 2018), and the parties' argument at the February 18 hearing, the Court finds that TAOS may re-elect its remedy; but the Court also finds that it cannot enter final judgment on TAOS's breach of contract claim without conducting a new damages trial. Further, the Court finds that the bases for TAOS's tortious interference claim have been eliminated on appeal, meaning that the jury's tortious interference verdict cannot stand. So, TAOS's Motion for Entry of Final Judgment is denied.

# BACKGROUND

On June 3, 2004, the parties entered into a letter "Confidentiality Agreement" to explore a possible business relationship. Pursuant to the terms of the Confidentiality Agreement, the parties exchanged confidential information; however, the parties were ultimately unable to agree on the terms of a business relationship and discussions regarding acquisition of TAOS by Defendant Renesas Electronics America Inc. f/k/a Intersil Corporation ("Renesas") ended. TAOS subsequently reached the conclusion that Renesas unfairly used TAOS's confidential information to create a line of digital ambient light sensors that compete with TAOS's ambient light sensors. As such, on November 25, 2008, TAOS filed suit against Renesas alleging claims for patent infringement, breach of contract, trade secret misappropriation, and tortious interference with prospective business relations (Dkt. #1).

This case has come a long way since 2008. On October 13, 2009, Renesas filed its original answer and counterclaims, asserting 14 affirmative defenses and five counterclaims (Dkt. #88). After extensive summary judgment briefing, the case proceeded to a jury trial on February 9, 2015. At the conclusion of the trial on March 6, 2015, the jury found that: (1) Renesas breached its contract (the Confidentiality Agreement) with TAOS; (2) Renesas misappropriated TAOS's trade secrets; (3) Renesas's misappropriation of TAOS's trade secrets resulted from Renesas's fraud, malice, or gross negligence; (4) Renesas did not prove that TAOS must have known or must have been reasonably able to discover that Renesas had used TAOS's proprietary information to create competing products before November 25, 2005; (5) TAOS proved that Renesas fraudulently concealed the facts upon which TAOS's misappropriation of trade secrets claim was based; (6) Renesas intentionally interfered with TAOS's prospective business relations with Apple; (7)

Renesas's tortious interference was the result of fraud, malice, or gross negligence; (8) Renesas willfully infringed the '981 patent; (9) Renesas did not prove that any of the claims of the '981 patent were invalid due to obviousness, for failing to satisfy the written description requirement, or for failing to contain a sufficiently full and clear description of how to make and use the full scope of the claimed invention; (10) Renesas did not prove that Renesas's conduct was excused because of laches; and (11) Renesas did not prove that TAOS had unclean hands (Dkt. #511).

Final judgment was entered on June 9, 2016 (Dkt. #596). Renesas appealed the final judgment to the United States Court of Appeals for the Federal Circuit on June 10, 2016 (Dkt. #598). The Federal Circuit affirmed in part, reversed in part, and vacated in part the final judgment and remanded the case (Dkt. #614, Attachment 1). On August 9, 2019, Judge Schell[1] transferred this case to the Court (Dkt. #662).

On November 25, 2019, TAOS filed its Motion for Entry of Final Judgment (Dkt. #672). On December 20, 2019, Renesas filed its response in opposition to the motion (Dkt. #674). On January 10, 2020, TAOS filed its reply; Renesas filed its sur-reply on January 31, 2020 (Dkt. #678; Dkt. #680). On February 18, 2020, the Court held a hearing on TAOS's Motion for Entry of Final Judgment.

## LEGAL STANDARD

"Judgment as a matter of law is justified where 'a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue.'" *Internet Machines LLC v. Alienware Corp.*, No. 6:10-CV-23, 2013 WL 4056282, at *2 (E.D. Tex. June 19, 2013), *aff'd sub nom. Internet*

---

[1] United States Senior District Judge Richard Schell assumed senior status on March 10, 2015.

*Machines LLC v. Cyclone Microsystems, Inc.*, 575 F. App'x 895 (Fed. Cir. 2014) (quoting FED. R. CIV. P. 50(a)(1)). "The grant or denial of a motion for judgment as a matter of law is a procedural issue not unique to patent law, reviewed under the law of the regional circuit in which the appeal from the district court would usually lie." *Finisar Corp. v. DirectTV Grp., Inc.*, 523 F.3d 1323, 1332 (Fed. Cir. 2008). "A JMOL may only be granted when, 'viewing the evidence in the light most favorable to the verdict, the evidence points so strongly and overwhelmingly in favor of one party that the court believes that reasonable jurors could not arrive at any contrary conclusion." *Versata Software, Inc. v. SAP Am., Inc.*, 717 F.3d 1255, 1261 (Fed. Cir. 2013) (quoting *Dresser-Rand Co. v. Virtual Automation, Inc.*, 361 F.3d 831, 838 (5th Cir. 2004)).

Under Fifth Circuit law, a court should be "especially deferential" to a jury's verdict and must not reverse the jury's findings unless substantial evidence does not support the findings. *Baisden v. I'm Ready Prods., Inc.*, 693 F.3d 491, 499 (5th Cir. 2012). "Substantial evidence is defined as evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions." *Threlkeld v. Total Petroleum, Inc.*, 211 F.3d 887, 891 (5th Cir. 2000). A motion for judgment as a matter of law must be denied "unless the facts and inferences point so strongly and overwhelming in the movant's favor that reasonable jurors could not reach a contrary conclusion." *Baisden*, 693 F.3d at 498 (citation omitted). However, "[t]here must be more than a mere scintilla of evidence in the record to prevent judgment as a matter of law in favor of the movant." *Arismendez v. Nightingale Home Health Care, Inc.*, 493 F.3d 602, 606 (5th Cir. 2007).

In evaluating a motion for judgment as a matter of law, a court must "draw all reasonable inferences in the light most favorable to the verdict and cannot substitute other inferences that [the

court] might regard as more reasonable." *E.E.O.C. v. Boh Bros. Constr. Co.*, 731 F.3d 444, 451 (5th Cir. 2013) (citation omitted). However, "[c]redibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). "[T]he court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that the evidence comes from disinterested witnesses.'" *Id.* at 151 (citation omitted).

"In regard to granting a new trial, the Court, in its discretion, may grant a new trial after a jury trial 'for any reason for which a new trial has heretofore been granted in an action at law in federal court.'" *Internet Machines*, 2013 WL 4056282, at *2 (quoting FED. R. CIV. P. 59(a)(1)(A)). "Grounds for a new trial include that 'the verdict is against the weight of the evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was committed in its course.'" *Id.* (quoting *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 613 (5th Cir. 1985)).

## ANALYSIS

Although styled as a motion for the entry of final judgment, much of the parties' briefing recounts this case's lengthy procedural history and addresses a threshold question: is TAOS's original election of the trade secret misappropriation remedy binding after the Federal Circuit's opinion in *Texas Advanced Optoelectronic Solutions, Inc. v. Renesas Electronics America, Inc.*, 895 F.3d 1304 (Fed. Cir. 2018), which vacated the jury's damage award for TAOS's misappropriation claim but upheld the jury's finding of liability? Renesas says yes; TAOS says no.

The Court agrees with TAOS—TAOS may re-elect its remedy. After the jury's verdict in 2015, the remedy affording TAOS the most relief was the damages award from its trade secret misappropriation claim. But on appeal, that award was vacated. So, consistent with the election-of-remedies doctrine and the Federal Circuit's mandate, TAOS may re-elect its remedy.

Having determined that on remand, TAOS may re-elect its remedy, the Court then turns to the parties' arguments regarding whether entry of final judgment is appropriate on TAOS's breach of contract and tortious interference claims. The Court finds that it cannot enter final judgment without conducting a new damages trial on TAOS's breach of contract claim. Further, the Court finds that the bases for TAOS's tortious interference claim have been eliminated on appeal, meaning that TAOS's tortious interference verdict cannot stand. Accordingly, TAOS's Motion for Entry of Final Judgment must be denied, and the Court must conduct a new damages trial before entering final judgment.[2]

## I. Election of Remedies

Both parties agree that Texas substantive law applies to the election-of-remedies determination. (Dkt. #674 at p. 21 & n.27; Dkt. #678 at p. 7) (citing *Aguilar v. Williamson County*, A-11-CA-278-SS, 2011 WL 13137682, at *3 n.3 (W.D. Tex. Dec. 19, 2011)).[3] The purpose of

---

[2] TAOS will have the opportunity to present evidence of damages on both its trade secret misappropriation and breach of contract claims and then, consistent with the election-of-remedies doctrine, elect the remedy affording it the greatest relief. Or, TAOS may choose to present evidence of damages on only one of the two claims. The Court presumes that TAOS will not be including its patent infringement claim in a new damages trial because TAOS previously indicated to the Court that it did not intend to pursue damages on its patent infringement claim (Dkt. #673 at p. 3).

[3] The only other conceivable option would be California law, since TAOS submits that its breach of contract claim is governed by California law (Dkt. #672 at p. 25 n.102). Application of California law would not change the Court's conclusion. *See Fassberg Constr. Co. v. Hous. Auth. of L.A.*, 152 Cal. App. 4th 720, 759, 60 Cal. Rptr. 3d 375, 409 (2007) ("The doctrine generally holds that if a plaintiff elects a particular remedy in lieu of an alternative and inconsistent remedy and thereby gains an advantage to the detriment of the defendant, the plaintiff thereafter is precluded from pursuing the alternative remedy. The doctrine applies *only* if the defendant suffered a substantial injury as a result of the plaintiff's initial election of remedies.") (emphasis added) (internal citations omitted).

the election doctrine is to "prevent a party who has obtained a specific form of remedy from obtaining a different and inconsistent remedy for the same wrong." *Fina Supply, Inc. v. Abilene Nat. Bank*, 726 S.W.2d 537, 541 (Tex. 1987). The doctrine "operates to prevent a plaintiff from recovering twice for the same wrong, not to prevent a plaintiff from recovering once." *Malvino v. Delluniversita*, 840 F.3d 223, 234 (5th Cir. 2016) (citing *Vickery v. Vickery*, 999 S.W.2d 342, 373 (Tex. 1999)). The doctrine is disfavored, widely criticized, and should not be expanded. *Id.* (citing *Am. Sav. & Loan Ass'n of Hous. v. Musick,* 531 S.W.2d 581, 588 (Tex. 1975)); *Bocanegra v. Aetna Life Ins. Co.*, 605 S.W.2d 848, 850 (Tex. 1980).

Renesas argues that TAOS's binding election occurred when TAOS proceeded to final judgment on its misappropriation claim with full knowledge of its alternative claims. (Dkt. #674 at p. 22) (citing *Krobar Drilling, L.L.C. v. Ormiston*, 426 S.W.3d 107, 113 (Tex. App.—Houston [1st Dist.] 2012, pet. denied). The effect of this binding election, Renesas claims, is that TAOS is precluded from exercising any other procedure or remedy, even if TAOS fails to secure full satisfaction by way of the remedy it elected. (Dkt. #674 at p. 22). The Court is unpersuaded by Renesas's arguments.

Prior to appeal, TAOS's misappropriation remedy afforded it the greatest relief. But that remedy—the monetary damages award—was "wiped from the book" on appeal. TAOS's misappropriation remedy is now gone, but TAOS is still entitled to a remedy—specifically, it is entitled to the remedy that affords it the greatest relief. In accordance with the effect of the Federal Circuit's vacatur of TAOS's previously elected remedy, the case law dealing with the election-of-remedies doctrine, and the underlying equitable nature of that doctrine, TAOS's prior election of

its vacated trade secret misappropriation remedy is not binding.  On remand, TAOS is entitled to the remedy that affords it the greatest relief.

### A.  The Federal Circuit's Vacatur Eliminated TAOS's Elected Remedy

When "a jury returns favorable findings on two or more theories, the party has a right to a judgment on the theory entitling him to the greatest or most favorable relief."  *Boyce Iron Works, Inc. v. Sw. Bell Tel. Co.*, 747 S.W.2d 785, 787 (Tex. 1988) (citations omitted).  Indeed, even if a party fails to elect its remedy prior to judgment, courts applying Texas law must "utilize the findings affording the greater recovery and render judgment accordingly."  *Quest Med., Inc. v. Apprill*, 90 F.3d 1080, 1085 n.5 (5th Cir. 1996) (citing *Birchfield v. Texarkana Mem'l Hosp.*, 747 S.W.2d 361, 367 (Tex. 1988)).  And "[t]here is no election . . . when one first unsuccessfully pursues a right or remedy which proves unfounded and then pursues the one that is allowed."  *Bocanegra*, 605 S.W.2d at 852.

After TAOS elected the jury's award of monetary damages for trade secret misappropriation, the Federal Circuit vacated that award.  *Tex. Advanced Optoelectronic Sols.*, 895 F.3d at 1317 ("The monetary award for trade secret misappropriation must be vacated . . . .").[4] Renesas claims that because the Federal Circuit upheld the jury's finding of liability on TAOS's misappropriation claim and clarified that TAOS is entitled to a misappropriation damages trial, TAOS has obtained the remedy it elected, precluding TAOS from re-electing (Dkt. #680 at p. 6). But Renesas gives no credit to the effect of vacatur on TAOS's monetary damages award.  Instead, Renesas labels TAOS's argument that the Federal Circuit vacated the trade secret remedy, thus

---

[4] This included the exemplary damages award.  *Id.*

allowing re-election, as "specious" and asserts that the remedy TAOS elected was the jury's finding of *liability* on the misappropriation claim. *See* (Dkt. #680 at p. 6 n.6). Not so.

The plain meaning of "remedy" repudiates Renesas's position. A "remedy" is the "means of enforcing a right or preventing or redressing a wrong; legal or equitable relief." *Remedy*, BLACK'S LAW DICTIONARY (11th ed. 2019). And "[t]he two most common remedies are judgments that plaintiffs are entitled to collect sums of money from defendants (damages) and orders to defendants to refrain from their wrongful conduct or to undo its consequences (injunctions)." *Id.* Renesas's repeated assertion that TAOS's "remedy" is the jury's liability finding is erroneous. The remedy is the damages award assessed to compensate TAOS for Renesas's trade secret misappropriation. And the Federal Circuit vacated that remedy on appeal.

Vacatur "eliminates a judgment . . . ." *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 22 (1994) (quoting *United States v. Munsingwear, Inc.*, 340 U.S. 36, 40 (1950)); *see also United States v. Garde*, 848 F.2d 1307, 1311 (D.C. Cir. 1988) (equating vacatur with having a court's decision "wiped from the book . . . ."). So, the remedy TAOS elected no longer exists. The Federal Circuit's vacatur of TAOS's misappropriation damages—i.e., TAOS's remedy— naturally lends itself to the conclusion that TAOS may re-elect.[5] And an examination of two analogous cases—*Malvino* from the Fifth Circuit and *Louie Ledeaux* from the Texas Court of Appeals—further confirms that TAOS may re-elect its remedy.

---

[5] It is true that, consistent with the Federal Circuit's opinion, TAOS is entitled to a new determination of its trade secret damages. *See Tex. Advanced Optoelectronic Sols.*, 895 F.3d at 1318. But this does nothing to change the Court's analysis on the election issue—TAOS is not forced to conduct a new damages trial on misappropriation. *Cf. Drury Southwest, Inc. v. Louie Ledeaux #1, Inc.*, 350 S.W.3d 287, 293–94 (Tex. App.—San Antonio 2011, pet. denied) (remanding the case to the trial court so that the plaintiff could re-elect its remedy rather than conduct a new trial on the question of damages). And the Federal Circuit acknowledged that its remand for a new trial was conditioned on whether a new trial "continues to be requested on remand . . . ." *Tex. Advanced Optoelectronic Sols.*, 895 F.3d at 1318.

**B.** *Malvino* and *Louie Ledeaux* Confirm that TAOS May Re-Elect Its Remedy

In *Malvino*, the plaintiff obtained "a $1,610,802 judgment on claims brought under the Racketeer Influenced and Corrupt Organizations Act (RICO)." 840 F.3d at 226. The plaintiff also obtained liability findings on its common-law torts, but the trial court did not enter judgment on those claims because RICO provided the greater recovery. *Id.* at 233.

The Fifth Circuit reversed the judgment on the plaintiff's RICO claim. *Id.* at 226. At oral argument, the defendants reasoned that the Fifth Circuit should treat the plaintiff's "election of RICO remedies as final and binding and enter a take-nothing judgment" rather than "remand to allow the district court to consider entering judgment on [the plaintiff's] fraud, negligent misrepresentation, and civil conspiracy claims—a decision from which another appeal could follow." *Id.* at 233. Rejecting the defendants' argument, the Fifth Circuit explained that the latter option was appropriate. *Id.*

Examining Texas's election-of-remedies doctrine, the Fifth Circuit noted that it could not find any authority holding that "a plaintiff cannot change his election if the claim he elected to recover on is reversed on appeal." *Id.* The Fifth Circuit also discussed how the equitable nature of the doctrine counseled against the defendants' approach. *Id.* at 233–34. Further, vacating the RICO judgment meant "there would no longer be a double recovery if judgment were entered on the common law claims"—and since the doctrine merely operates to "prevent a plaintiff from recovering twice for the same wrong, not to prevent a plaintiff from recovering once"—the Fifth Circuit remanded the case so that the district court could consider entering judgment on the common-law claims. *Id.* at 234. In doing so, the Fifth Circuit favorably cited *United States v. United Technologies Corp.*, 190 F. Supp. 3d 752 (S.D. Ohio 2016), for the proposition that a party

may seek an alternative remedy after the prior, elected award was vacated on appeal since "any attempted election of one of two alternative remedies is not effective unless and until the plaintiff actually obtains the remedy it elected." *Malvino*, 840 F.3d at 234.

*Louie Ledeaux* even more closely resembles the situation here. In *Louie Ledeaux*, the jury awarded over one million dollars in damages on the plaintiff's Texas Deceptive Trade Practices Act ("DTPA") claim. 350 S.W.3d at 289. The plaintiff also prevailed on several other causes of action. *Id.* at 290. Because the DTPA remedy provided the plaintiff with the greatest recovery, the plaintiff elected to recover under the DTPA. *Id.* at 293. On appeal, the court held that there was sufficient evidence to support the jury's finding of liability under the DTPA. *Id.* at 292. But the court also held that the jury's damage award on the plaintiff's DTPA claim was excessive, and it reversed the lower court's award of DTPA damages. *Id.* at 293.

The plaintiff-appellee then filed a motion for rehearing, requesting that the court remand the case for a re-election of remedies instead of a new trial. *Id.* The defendant-appellant argued that plaintiff waived all other favorable jury findings by electing to recover under the DTPA. *Id.* The court agreed with the plaintiff. *Id.* at 293–94. The court explained that the plaintiff had not waived any of its other theories of recovery just by electing recovery under the DTPA. *Id.* at 293 (citing *Boyce Iron Works*, 747 S.W.2d at 787). Since the court reversed the elected remedy as excessive, it reasoned that a "remand for a re-election of remedies would enable [the plaintiff] to exercise its right to a judgment on the theory entitling it to the greatest relief, but would not enable [the plaintiff] to obtain double recovery, which is the only purpose for an election of remedies." *Id.*

*Malvino* and *Louie Ledeaux* both confirm that TAOS may re-elect its remedy here.  In both cases, the remedy that had afforded the plaintiff the greatest relief was reversed on appeal.  And in both cases, the courts reasoned that the plaintiff may re-elect its remedy on remand.  Just as in *Malvino* and *Louie Ledeaux*, the Federal Circuit vacated the remedy that afforded TAOS the greatest relief.  And just as the plaintiffs in *Malvino* and *Louie Ledeaux* were able to do, TAOS may re-elect its remedy on remand.

Renesas unpersuasively attempts to distinguish these cases.   Renesas attempts to distinguish the Fifth Circuit's decision in *Malvino*, asserting that unlike in *Malvino*—where re-election was allowed because the "elected claim was *reversed* and *eliminated* on appeal"—re-election is not allowed here because the Federal Circuit "*affirmed* the portion of the final judgment concerning trade secret liability . . ." (Dkt. #674 at p. 23).  Renesas also argues that in both *Malvino* and *Louie Ledeaux*, the plaintiffs specifically reserved their right to re-elect, while TAOS did not (Dkt. #674 at pp. 24–25).

TAOS disagrees with Renesas's characterization of what the Federal Circuit did on appeal: first, TAOS asserts that the Federal Circuit may have affirmed the trade secret misappropriation verdict as to liability, but it vacated the misappropriation remedy; second, TAOS repudiates Renesas's waiver argument, stating that TAOS preserved its right to re-elect on remand. (Dkt. #678 at pp. 7–9).  The Court agrees with TAOS.

Renesas is correct that in *Malvino*, the Fifth Circuit reversed both the remedy and the jury's finding of liability.  But the Fifth Circuit did not cabin its decision to situations where both the elected remedy *and* the jury's finding of liability are reversed—in fact, the Fifth Circuit favorably cited the *United Technologies* case for the proposition that a party may "seek an alternative remedy

on remand *after a damages award* [is] vacated on appeal . . . ." *Malvino*, 840 F.3d at 234 (emphasis added). And the principles underlying the Fifth Circuit's decision "counsel[] against" the "stringent approach" suggested by Renesas. *See id.* at 233–34 (collecting cases, including the *Krobar Drilling* case relied on by Renesas). Renesas's unpersuasive interpretation of *Malvino*'s holding is largely attributable to its flawed argument that a jury verdict of liability is a remedy— as the Court already addressed, that premise is incorrect. *See supra* Section I.A. The Fifth Circuit's reversal of the damages award was sufficient to trigger re-election in *Malvino*. *See Malvino*, 840 F.3d at 233–34.

Renesas's attempt to distinguish *Louie Ledeaux*—where the court remanded for re-election after it reversed *only* the damage award—is cursory at best. Renesas claims that the plaintiff in *Louie Ledeaux* specifically reserved its right to re-elect, while TAOS did not. Assuming that a party must reserve its right to re-elect under the election-of-remedies doctrine, TAOS did so here.

TAOS's brief to the Federal Circuit included the following footnote:

> In the unlikely event that the Court modifies or vacates the judgment, TAOS respectfully requests that the Court remand to the district court for a determination of whether judgment should be entered on the breach of contract and tortious interference claims. *See Malvino v. Delluniversita*, 840 F.3d 223, 233–34 (5th Cir. 2016).

Brief for Plaintiff-Cross-Appellant at 91 n.12, *Tex. Advanced Optoelectronic Sols., Inc. v. Renesas Elecs. Am., Inc.*, 895 F.3d 1304 (Fed. Cir. 2018) (No. 16-2121, Dkt. #41), 2017 WL 562571. And the Federal Circuit considered and squarely addressed TAOS's request:

> TAOS has requested that, in the event the judgment is vacated or modified on appeal, we "remand to the district court for a determination of whether judgment should be entered on the breach of contract and tortious interference claims." TAOS Br. at 91 n.12. We think it sufficient, in light of our vacatur of the disgorgement award for trade secret misappropriation, to vacate the district court's determination that the damages for breach of contract and tortious interference are

> duplicative of that disgorgement award. We leave to the district court on remand
> the resolution of all issues, both substantive and procedural, that bear on the proper
> treatment of the jury verdicts on breach of contract and tortious interference.

*Tex. Advanced Optoelectronic Sols.*, 895 F.3d at 1332 (second internal citation omitted). Renesas

dismisses TAOS's footnote as "far from a request for re-election on remand" (Dkt. #674 at p. 25

n.35). Renesas also argues that in any event, the Federal Circuit did not make a remand for re-

election (Dkt. #674 at p. 25 n.35). Renesas's argument impermissibly asks the Court to put form

over substance.

While TAOS did not use the word "re-elect" in its brief to the Federal Circuit, TAOS was

clearly asking the Federal Circuit for the opportunity to re-elect should the judgment be vacated.

Not only did TAOS reference wanting to preserve its right to request that judgment be entered on

its breach of contract and tortious interference claims—which had not been entered in part because

TAOS's misappropriation claim provided the greatest recovery (Dkt. #571 at p. 9)—but TAOS

cited to the Fifth Circuit's *Malvino* decision, which is relevant here *only* for its discussion of re-

election.

And the Federal Circuit responded to TAOS's request: after citing TAOS's footnote, the

Federal Circuit left to the Court "on remand the resolution of *all* issues, both substantive and

procedural, that bear on the proper treatment of the jury verdicts on breach of contract and tortious

interference." *Tex. Advanced Optoelectronic Sols.*, 895 F.3d at 1332 (emphasis added). One of

those issues—in fact, the *threshold* issue—is whether entry of judgment on TAOS's breach of

contract and tortious interference claims is barred by TAOS's prior election. The Court fails to

see how TAOS waived its re-election argument and how the Federal Circuit did not allow the

Court to consider the issue of re-election on remand as Renesas claims. Renesas's half-hearted attempt to distinguish *Louie Ledeaux* is unpersuasive.

### C. Equity Counsels Allowing TAOS to Re-Elect Its Remedy

The equitable nature of the election doctrine also persuades the Court to allow TAOS to re-elect its remedy. It is a "well-settled principle of Texas law that the doctrine of election of remedies is a disfavored child of equity whose utility is now largely obsolete." *Fid. & Deposit Co. of Md. v. Koehler*, 424 F.2d 1296, 1297 (5th Cir. 1970) (citation omitted). And the "only purpose" of the doctrine is to prevent a plaintiff from receiving a double recovery. *E.g.*, *Louie Ledeaux*, 350 S.W.3d at 293.

The Court found Renesas's answer to a hypothetical during the February 18 hearing instructive. The Court asked whether a party's election would be binding in a situation where, on appeal, the remedy it elected was reduced from one-million dollars to one dollar, while an alternate remedy affording greater relief went undisturbed. Renesas said yes—as it had to, to avoid conceding its argument—though it acknowledged that the result was "harsh." But a "harsh" outcome resulting from the application of a disfavored doctrine is not equitable. Indeed, the "equitable nature" of the election-of-remedies doctrine "counsels against such a stringent approach." *See Malvino*, 840 F.3d at 233 (citing *Krobar Drilling*, 426 S.W.3d at 112). It is equitable that TAOS be allowed to re-elect when the remedy it was entitled to was "wiped from the book" on appeal.

## II. Entry of Final Judgment

Having determined that TAOS is entitled to re-elect its remedy, the Court turns to TAOS's request for entry of final judgment. TAOS seeks the entry of final judgment on its breach of

contract and tortious interference claims in accordance with the jury's verdict. The Court finds that TAOS is not entitled to the entry of final judgment on either claim: the jury's liability finding on TAOS's breach of contract claim is still sound, but the jury's award of damages is not. And the jury's tortious interference verdict is infirm in light of the Federal Circuit's analysis of the wrongful acts underlying TAOS's interference claim.[6]

Before proceeding with its analysis, the Court believes it is helpful to explain the unique procedural posture of this case. After prevailing on all four of its claims at trial in early 2015, TAOS elected to recover on its trade secret misappropriation claim. This meant that Judge Schell had no occasion to consider the propriety of the jury's verdict on TAOS's breach of contract and tortious interference claims. *See* (Dkt. #571 at p. 17) ("The Defendant moves for judgment as a matter of law under Rule 50 of the Federal Rules of Civil Procedure on all four of the Plaintiff's claims. Since the court has already disposed of the Plaintiff's breach of contract and tortious interference claims, the court need not address the Defendant's arguments regarding those claims as they are moot.").[7] So, the jury verdicts on TAOS's breach of contract and tortious interference claims were never fully dealt with in post-trial motions. But now that TAOS is seeking the entry of final judgment on its breach of contract and tortious interference claims, the Court finds itself in the position of assessing whether judgment can be entered on those claims as a matter of law— as if the Court was routinely ruling on post-trial motions immediately after completing trial.[8]

---

[6] Because the Court is not entering final judgment on TAOS's claims at this time, the Court need not decide whether any of the damage awards are duplicative.

[7] This easily disposes of TAOS's claim that Renesas waived these arguments during post-trial briefing (Dkt. #678 at pp. 4–5)—Renesas moved for judgment as a matter of law on all four of TAOS's claims (Dkt. #571 at p. 17).

[8] Presciently, Renesas's noted in its Renewed Motion for Judgment as a Matter of Law filed on May 22, 2015: "If TAOS attempts to resurrect the award for breach of contract damages, supplemental briefing would be necessary in

As if the passage of five years prior to examining what is essentially a post-trial motion for the entry of judgment was not peculiar enough, there is another intriguing ingredient to add to the mix: though the Federal Circuit had no occasion to directly review the jury's verdict on TAOS's breach or interference claims, it made several binding determinations that implicate the finality of those two claims. As Renesas points out, the Court cannot pretend that the Federal Circuit's opinion "does not exist and the case is back in 2015 with the Court deciding post-trial Rule 50(b) motions based on the original jury evidence" (Dkt. #680 at p. 10).

Presented with the parties' briefing and the Federal Circuit's intervening examination of the law and the evidence in this case, the Court concludes that it cannot enter final judgment without conducting a new damages trial on TAOS's breach of contract claim. Further, the Court concludes that the bases for TAOS's tortious interference claim have been eliminated on appeal. Accordingly, TAOS's Motion for Entry of Final Judgment must be denied, and the Court must conduct a new damages trial before entering final judgment in this case.

## A. TAOS's Breach of Contract Claim

On TAOS's breach of contract claim, the jury found Renesas liable for breaching the Confidentiality Agreement and awarded TAOS $1.00 in nominal damages for Renesas's retention of TAOS's confidential information and $12,000,000.00 as a reasonable royalty for Renesas's breach (Dkt. #596).

Renesas asserts that TAOS's breach of contract claim is not final or supported because the "evidence on remand will show that" Renesas did not breach the contract's Confidentiality Agreement and that there is no causal link between the breach and the claimed damage (Dkt. #674

order to address the underlying issues related to the jury's finding of breach of contract and the amount of that award." (Dkt. #528 at p. 15 n.5). Nearly five years later, that briefing is before the Court.

at pp. 25–26). Renesas also argues that because the breach of contract claim was not on appeal, the Federal Circuit did not review the sufficiency of any evidence to support the verdict (Dkt. #674 at p. 14). And Renesas asserts that if anything, the Federal Circuit "gutted the factual underpinnings" of TAOS's breach of contract claim, particularly where it ruled that the "Build vs. Buy" was not a viable trade secret (Dkt. #674 at p. 14).

TAOS counters by arguing that Renesas is attempting to improperly relitigate a disputed issue of fact—i.e., whether Renesas breached—without pointing to any legal error committed by the trial court or any lack of evidence supporting the jury's verdict (Dkt. #678 at p. 1). It is consistent with the jury's verdict and the Federal Circuit's opinion, TAOS argues, for the Court to enter final judgment on its breach of contract claim (Dkt. #678 at pp. 2–7). The Court agrees with TAOS that the jury's liability finding may stand. But the Court agrees with Renesas that its damages award cannot.

### i. The Jury's Liability Verdict on Breach of Contract May Stand

On appeal, the Federal Circuit held that Renesas's use of TAOS's confidential information to conduct a "build versus buy" analysis was, as a matter of law, not a breach of the Confidentiality Agreement. *Tex. Advanced Optoelectronic Sols.*, 895 F.3d at 1314 ("Although it is undisputed that [Renesas] used TAOS's information for the 'Build vs. Buy' analysis, that use was contractually permitted . . . ."). The Court's Instructions to the Jury gave two possible bases that could support a finding of breach: (1) Renesas's use of TAOS's confidential information to conduct a "build versus buy" analysis; and (2) Renesas's use of TAOS's confidential information to revamp Renesas's designs for its ambient light sensor and develop a new line of light sensors to compete with TAOS (Dkt. #506 at p. 6). The jury's verdict did not delineate between the two

theories for breach, indicating only that TAOS met its burden of proving Renesas's breached the Confidentiality Agreement (Dkt. #511 at p. 1). As such, it is possible that the jury based its verdict on a legally erroneous instruction. *See id.* ("As a matter of law, we conclude, the Confidentiality Agreement provided [Renesas] the 'privilege' to use the [Build vs. Buy] information in the way that [Renesas] used it . . . .").

Generally, "if a jury could find liability according to multiple theories, and one of them is erroneous," a new trial is required unless it is clear that "the jury came to its decision using only correct legal theories." *See Tex. Advanced Optoelectronic Sols.*, 895 F.3d at 1316 (quoting *Rodriguez v. Riddell Sports, Inc.*, 242 F.3d 567, 577 (5th Cir. 2001)). But even if it is unclear whether the jury came to its decision using only correct legal theories, the jury's verdict may stand if the legal error was harmless. *See id.* (citing *Skilling v. United States*, 561 U.S. 358, 414 & n.46 (2010)). With regard to TAOS's misappropriation claim—which had substantial overlap with TAOS's breach of contract claim—the Federal Circuit "conclude[d] that the error regarding the Build v. Buy theory was harmless." *Id.* Although analyzing the jury's misappropriation verdict, the Federal Circuit relied on the fact that the "overwhelming evidence" at trial showed that Renesas "learned of TAOS's design during the due diligence and changed its design soon after the negotiations fell through." *Id.* Under "these circumstances," the Federal Circuit affirmed the jury's verdict of liability for trade secret misappropriation because the legal error was harmless. *Id.*

The same conclusion applies to the jury's finding of liability for breach of contract. The Court's Instructions to the Jury gave two possible bases that could support a finding of breach, one of which was that Renesas used TAOS's confidential information to revamp Renesas's designs for

its ambient light sensor and develop a new line of light sensors to compete with TAOS (Dkt. #506 at p. 6). The Federal Circuit noted that there was "overwhelming evidence" of this at trial. *Id.* So just like the Federal Circuit concluded with TAOS's misappropriation claim, the jury's liability verdict on breach may stand. *See Outside the Box Innovations, LLC v. Travel Caddy, Inc.*, 695 F.3d 1285, 1301 (Fed. Cir. 2012) ("As a general rule, the law of the case doctrine 'prohibits a court from revisiting an issue once it has been decided in pending litigation.'") (quoting *Transonic Sys., Inc. v. Non–Invasive Med. Techs. Corp.*, 75 F. App'x 765, 774 (Fed. Cir. 2003)); *Tollett v. City of Kemah*, 285 F.3d 357, 363 (5th Cir. 2002) (same).

Renesas's argument that TAOS's breach of contract claim is not supported because the "evidence on remand will show that" Renesas did not breach the contract's Confidentiality Agreement not only flouts the law of the case, but it is generally unpersuasive. Renesas already had its opportunity to present evidence to the jury that it did not breach the Confidentiality Agreement. Its evidence did not convince the jury. Renesas does not now get the opportunity to present more evidence when the jury had—as determined by the Federal Circuit—"overwhelming evidence" to support a conclusion that Renesas breached the Confidentiality Agreement after it "learned of TAOS's design during the due diligence and changed its design soon after the negotiations fell through." *See Tex. Advanced Optoelectronic Sols.*, 895 F.3d at 1316. The jury's finding of liability against Renesas for breach of the Confidentiality Agreement is final and supported.

### ii. The Jury's Damages Award for Breach Cannot Stand

But the jury's damages award for breach cannot stand. Just as with the jury's liability finding, the jury did not delineate between the two theories for breach—one permissible, one

legally erroneous—when it awarded TAOS damages. It simply awarded TAOS $12,000,000.00 as a reasonable royalty for Renesas's breach of the Confidentiality Agreement (Dkt. #596).

On appeal, the Federal Circuit vacated the jury's damages award for trade secret misappropriation on two independent grounds. *Id.* at 1317. The first ground for vacatur was the fact that because TAOS's damage calculation did not distinguish among the permissible and impermissible grounds for liability, the entire award could not be supported on the record. *Id.* The Court must reach the same conclusion here with regard to TAOS's damages for breach of contract.[9]

Like with the calculation for misappropriation damages, TAOS's damages expert at trial simply presented a total damages calculation for breach of the Confidentiality Agreement—he did not allocate the damages according to the two proposed grounds for breach (Dkt. #587 at pp. 132–35).[10] And in fact, TAOS's expert explicitly tied the misappropriation damages and breach damages together, noting that the Renesas products used to calculate the breach damages were the same as the products used to calculate the misappropriation damages and ultimately concluding that a "17.2 million" dollar reasonable royalty payment for breach was appropriate—the same figure that served as a reasonable royalty for misappropriation (Dkt. #587 at pp. 132–35).

The Court is unaware of anything in the record indicating that the jury's entire damage award for breach of contract can be supported by the remaining ground for liability. Nor does TAOS explain how its trade secret misappropriation damages—which the Federal Circuit vacated

---

[9] The Federal Circuit's alternative and independent ground for vacating the misappropriation award was that "the unrebutted evidence at trial showed that TAOS's [trade secret] was accessible to [Renesas] by proper means long before the time of many of the sales included in TAOS's request for monetary relief." *Id.* As the Court concludes that TAOS's breach award cannot stand under the Federal Circuit's first holding, the Court does not address whether TAOS's breach award is impacted by this alternative holding.

[10] Indeed, as he described it to the jury, the expert's understanding of the breach of contract claim was that "there was a misuse of—of the data. There was a break of, for example, the Confidentiality—Confidentiality Agreement. There was a—going beyond the permitted use that the parties had agreed to" (Dkt. #587 at p. 133).

under similar circumstances—and its breach of contract damages should suffer different fates when its expert explicitly intertwined the two calculations for the jury. Accordingly, TAOS is not entitled to the entry of final judgment on its breach of contract claim. A new damages trial must be conducted to ensure that the jury's damages award is based upon only the correct legal theory for TAOS's breach of contract claim. *See id.* at 1316 (explaining that under Fifth Circuit law, a new trial is the appropriate way to proceed when it is unclear whether the jury came to its decision using only correct legal theories).

### B. TAOS's Tortious Interference Claim

The jury found Renesas liable for tortious interference with TAOS's prospective relations with Apple and awarded TAOS $8,000,000.00 in lost-profit damages and $10,000,000.00 in exemplary damages for a total of $18,000,000.00 (Dkt. #596).

Renesas submits that the tortious interference claim is not final or supported because the Federal Circuit eliminated any basis for it (Dkt. #674 at p. 26). Renesas argues that final judgment cannot be entered on TAOS's tortious interference claim because the Federal Circuit's opinion made clear that there is no evidence to support a conclusion that Renesas committed an independently tortious or unlawful act that was a substantial factor in preventing the contractual or business relationship from occurring (Dkt. #674 at p. 27). The Court agrees. In light of the Federal Circuit's discussion of TAOS's trade secret misappropriation and patent infringement claims on appeal, there is no evidence to support any link between these underlying acts and Apple's decision to purchase Renesas's ambient light sensors for the iPhone 3G in 2008.[11] Accordingly, TAOS is not entitled to final judgment on its tortious interference claim.

---

[11] The Court's analysis focuses exclusively on the Apple iPhone 3G contract because—as TAOS admits—this is the only prospective business relation that TAOS claimed Renesas interfered with at trial. *See* (Dkt. #672 at pp. 10–11,

### i. The Jury's Liability Finding for Tortious Interference Cannot Stand

To prevail on a claim for tortious interference with its prospective business relations with Apple, TAOS needed to do more than establish that Renesas simply committed an independently tortious or wrongful act—TAOS needed to prove that Renesas's "independently tortious or wrongful act . . . interfered with a reasonably probable contract that would have been entered into but for the interference." *See Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 924 (Tex. 2013). The Court's Instructions to the Jury reflected that, instructing the jury that TAOS could prevail on its tortious interference claim only if it showed that Renesas "committed an independently tortious or unlawful act that was a substantial factor in preventing the contractual or business relationship from occurring" (Dkt. #672 at p. 10). So, the question is whether TAOS established that Renesas's misappropriation of trade secrets and/or patent infringement interfered with a reasonably probable contract that TAOS would have entered into with Apple to supply the ambient light sensors for the iPhone 3G. *See id.* (explaining that where trespass served as the underlying wrongful act for a tortious interference with prospective business relations claim, the plaintiff must establish whether the defendant's "refusal to vacate the premises interfered with a reasonably probable contract . . . .").[12]

---

19) ("the tortious interference claim was based on [Renesas] interfering with TAOS' business relationship by designing its infringing ISL29003 into the Apple iPhone (around 2008)").

[12] Both patent infringement and misappropriation of trade secrets qualify as predicate "independently tortious or unlawful act[s]" for purposes of an interference claim. *Luminati Networks Ltd. v. BIScience Inc.*, 2:18-CV-00483-JRG, 2019 WL 2084426, at *5 (E.D. Tex. May 13, 2019) ("[C]laims for patent infringement may be a necessary predicate to a claim for tortious interference with business relations under Texas law . . . .") (citing *Coinmach Corp.*, 417 S.W.3d at 923); *Rimkus Consulting Group, Inc. v. Cammarata*, 688 F. Supp. 2d 598, 675 (S.D. Tex. 2010) ("Misappropriation of trade secrets is a common-law tort cause of action under Texas law") (citing *Trilogy Software, Inc. v. Callidus Software, Inc.*, 143 S.W.3d 452, 463 (Tex. App.—Austin 2004, pet. denied).

Renesas makes several arguments about why the jury's liability finding on tortious interference cannot stand. First, Renesas asserts that TAOS's complaint did not assert patent infringement as a basis for its tortious interference claim, stopping TAOS for using that as a basis now (Dkt. #674 at p. 17 & n.20). Second, Renesas claims that because Renesas did not win the iPhone 3G contract using TAOS's confidential information, there is no causal link between any misappropriation and the tortious interference (Dkt. #674 at pp. 16–17). And assuming that patent infringement can serve as the basis for the tortious interference, Renesas submits that it did not win the iPhone 3G contract because of any asserted use of TAOS's patented subject matter (Dkt. #674 at p. 17).

Renesas first argument—that TAOS's complaint did not assert patent infringement as a basis for its tortious interference claim—misses the mark. As TAOS points out, the joint final pretrial order identifies "[w]hether [Renesas] intentionally interfered with TAOS' prospective business relations with Apple through independently tortious or unlawful conduct, including but not limited to [Renesas's] alleged infringement of the '981 Patent and/or misappropriation of TAOS' trade secrets" as a contested issue of law or fact (Dkt. #505 at p. 16). It is well settled that the final pretrial order supersedes all prior pleadings. *See In re Katrina Canal Breaches Litig.*, 309 F. App'x 836, 838 (5th Cir. 2009) (collecting cases). So, as TAOS points out in its reply, Renesas's argument that patent infringement cannot serve as the underlying tort is inapposite (Dkt. #678 at p. 6 & n.30).

Renesas's other two arguments can be boiled down to one concept: Renesas did not win the Apple iPhone 3G contract using any misappropriated information or by using TAOS's patented subject matter; rather, as the Federal Circuit summarized the evidence at trial, Renesas won the

contract "primarily" due to Renesas's "significantly lower bid price, made possible by using the (lower cost) plastic packaging." *See* (Dkt. #674 at pp. 16–17 & n.19) (quoting *Tex. Advanced Optoelectronic Sols.*, 895 F.3d at 1321). According to Renesas, this means that the jury's finding of liability for tortious interference cannot stand. The Court must agree.

### a. The Federal Circuit's Examination of the iPhone 3G Contract

In its opinion, the Federal Circuit made several observations about what the evidence at trial showed regarding Apple's purchase of ambient light sensors from Renesas for Apple's iPhone 3G. Specifically, the Federal Circuit explained that TAOS was unable to point to any evidence at trial to show that TAOS "would have won the contract [with Apple in 2008] had [Renesas] not used TAOS's photodiode array structure." *Tex. Advanced Optoelectronic Sols.*, 895 F.3d at 1321. And it elaborated: "TAOS itself attributed [Renesas's] iPhone 3G win primarily to [Renesas's] significantly lower bid price, made possible by using the (lower cost) plastic packaging." *Id.* The plastic packaging that gave Renesas the iPhone 3G win was not misappropriated information. *Id.* at 1315. The Federal Circuit also noted that TAOS immediately regained Apple's business after adopting similar plastic packaging to reduce its prices. *Id.* at 1321.

Although the Federal Circuit's discussion was not directed at TAOS's tortious interference claim, the Court struggles to see how it is not the law of the case. *See Outside the Box*, 695 F.3d at 1301; *Tollett*, 285 F.3d at 363 (5th Cir. 2002). And as the law of the case, the Court may not reexamine the Federal Circuit's determination that Apple's decision to award Renesas the iPhone 3G contract was driven by Renesas's use of low-price plastic packaging.

### b. Renesas's Misappropriation Did Not Interfere with TAOS's Prospective Relations with Apple

Pertinent to this analysis, the Federal Circuit held that TAOS's trade secret misappropriation verdict could not be predicated on TAOS's use of glass packaging (as opposed to plastic packaging) despite the high cost of glass packaging. *Tex. Advanced Optoelectronic Sols.*, 895 F.3d at 1312. This is because the evidence at trial showed that Renesas had been using low-cost plastic "long before TAOS revealed its cost-breakdown information" to Renesas. *Id.* Renesas independently recognized that using plastic packaging would offer it a price advantage. *Id.*

In fact, the *only* trade secret that TAOS could prove Renesas misappropriated was TAOS's 1:1 interleaved photodiode array—and there was no evidence at trial that TAOS would have won the iPhone 3G contract had Renesas not used TAOS's photodiode array structure. *Id.* at 1321. And the Federal Circuit went further, explaining that TAOS's 1:1 interleaved photodiode array was properly accessible to Renesas no later than January 2006. *Id.* at 1317. Apple's decision to purchase Renesas's sensors for the iPhone 3G came in 2008. *Id.* at 1310.

Thus, Renesas's misappropriation could not have interfered with TAOS's prospective relationship with Apple. TAOS was unable to point to any evidence at trial to show that TAOS "would have won the contract [with Apple in 2008] had [Renesas] not used TAOS's photodiode array structure," which is consistent with the fact that "TAOS itself attributed [Renesas's] iPhone 3G win primarily to [Renesas's] significantly lower bid price, made possible by using the (lower cost) plastic packaging," which was not misappropriated information. *Id.* at 1315, 1321.

Additionally, the Federal Circuit's determination that TAOS's only misappropriated trade secret was properly accessible to Renesas no later than January 2006 precludes TAOS from claiming that any misappropriated information interfered with any reasonably probable Apple

business—Renesas did not even start contracting with Apple until after TAOS's 1:1 interleaved photodiode array lost trade-secret status, and TAOS itself admits that the iPhone 3G contract that served as the basis for the tortuous interference verdict was awarded in 2008. *See* (Dkt. #672 at pp. 10–11, 19). Accordingly, TAOS's tortious interference verdict cannot be supported by its misappropriation tort.

### c. Renesas's Patent Infringement Did Not Interfere with TAOS's Prospective Relations with Apple

With regard to TAOS's patent infringement claim, the Federal Circuit reversed the verdict of infringement of method claims 43, 45, and 46, but it affirmed the judgment of infringement of apparatus claims 16, 17, and 18. *Id.* at 1327–28. Unfortunately for TAOS, there is no evidence that Renesas's infringement of apparatus claims 16, 17, and 18—which require only devices *capable* of operating in "Mode 3"—interfered with TAOS's prospective relations with Apple.

As this Court discussed in denying TAOS's Renewed Motion for Entry of Permanent Injunction, "TAOS has not shown any connection between its patented features and Apple's demand." *Tex. Advanced Optoelectronic Sols., Inc. v. Renesas Elecs. Am. Inc.*, 4:08-CV-00451, 2019 WL 4805916, at *4 (E.D. Tex. Oct. 1, 2019). Indeed, the Court described how the fact that "Apple never used Defendant's sensor in its infringing mode of operation—'Mode 3'"—was consistent with the evidence at trial showing that Apple's decision to purchase Renesas's sensors was cost based. *Id.*

The Court also noted when it published its order on October 1, 2019, that TAOS presented no evidence to dispel the common-sense conclusion that "Apple would likely have wanted the sensor to operate in Mode 3" had Apple's decision to purchase Renesas's sensor for the iPhone 3G been even "partially motivated by its desire to have a sensor with TAOS's patented

features . . . ." *Id.* When TAOS filed its Motion for Entry of Final Judgment on November 25, 2019, any evidence from trial that Apple's decision was even "partially motivated by its desire to have a sensor with TAOS's patented features" was still absent. *See generally* (Dkt. #672).

This, coupled with the fact that "TAOS itself attributed [Renesas's] iPhone 3G win primarily to [Renesas's] significantly lower bid price, made possible by using the (lower cost) plastic packaging," *Tex. Advanced Optoelectronic Sols.*, 895 F.3d at 1321, establishes that there is no evidence that Renesas's infringement of apparatus claims 16, 17, and 18 interfered with a reasonably probable contract TAOS would have made with Apple to supply the sensors in the iPhone 3G. Accordingly, TAOS's tortious interference claim cannot be supported by its patent infringement claim. Because both of TAOS's bases for its tortious interference claims have been eliminated, TAOS is not entitled to final judgment on tortious interference.

## CONCLUSION

It is therefore **ORDERED** that TAOS's Motion for Entry of Final Judgment (Dkt. #672) is hereby **DENIED**.

In light of the Court's conclusion that a new damages trial must be conducted, the parties will need to submit a joint, abbreviated scheduling order to the Court with the deadlines necessary to prepare for trial. The Court will note that given the COVID-19 pandemic, there may be a backlog causing this trial to be pushed further than the parties or the Court would like.

Accordingly, the Court encourages the parties to return to mediation if they believe a settlement is practicable. The parties **SHALL** notify the Court within **ten (10)** days whether they intend to return to mediation so that the Court can appoint a mediator. Should the parties agree on a mediator, they should provide the Court with the mediator's name.

If the parties believe mediation would be futile, the parties are **ORDERED** to submit their joint scheduling order to the Court within **fourteen (14)** days.

**IT IS SO ORDERED**.

 **SIGNED this 27th day of March, 2020.**


_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE