# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| AMS SENSORS USA INC. f/k/a § <br> TEXAS ADVANCED OPTOELECTRONIC § <br> SOLUTIONS, INC. § <br> § <br> v. § <br> § <br> RENESAS ELECTRONICS AMERICA § <br> INC. f/k/a INTERSIL CORPORATION § | Civil Action No. 4:08-cv-00451 <br> Judge Mazzant |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiff AMS Sensors USA Inc. f/k/a Texas Advanced Optoelectronic Solutions, Inc.'s ("AMS") Motion to Reconsider Order Denying TAOS' Motion for Entry of Final Judgment (Dkt. #686).[1] Having considered the motion and the relevant pleadings, the Court finds that the motion should be denied.

## BACKGROUND

On June 3, 2004, the parties entered into a letter "Confidentiality Agreement" to explore a possible business relationship. Pursuant to the terms of the Confidentiality Agreement, the parties exchanged confidential information; however, the parties were ultimately unable to agree on the terms of a business relationship and discussions regarding acquisition of AMS by Defendant Renesas Electronics America Inc. f/k/a Intersil Corporation ("Renesas") ended. The Plaintiff subsequently reached the conclusion that the Defendant unfairly used the Plaintiff's confidential information to create a line of digital ambient light sensors that compete with the Plaintiff's ambient light sensors. As such, on November 25, 2008, the Plaintiff filed suit against the

---

[1] After AMS filed its motion for reconsideration, Renesas filed an unopposed Motion to Change Plaintiff's Name and Style of Case (Dkt. #690), which the Court granted (Dkt. #691). So while AMS's motion for reconsideration refers to "TAOS" in its title, Plaintiff is now properly referred to as "AMS."

Defendant alleging claims for patent infringement, breach of contract, trade secret misappropriation, and tortious interference with prospective business relations (Dkt. #1).

This case has come a long way since 2008. On October 13, 2009, the Defendant filed its original answer and counterclaims, asserting 14 affirmative defenses and five counterclaims (Dkt. #88). After extensive summary judgment briefing, the case proceeded to a jury trial on February 9, 2015. At the conclusion of the trial on March 6, 2015, the jury found that: (1) the Defendant breached its contract (the Confidentiality Agreement) with the Plaintiff; (2) the Defendant misappropriated the Plaintiff's trade secrets; (3) the Defendant's misappropriation of the Plaintiff's trade secrets resulted from the Defendant's fraud, malice, or gross negligence; (4) the Defendant did not prove that the Plaintiff must have known or must have been reasonably able to discover that the Defendant had used the Plaintiff's proprietary information to create competing products before November 25, 2005; (5) the Plaintiff proved that the Defendant fraudulently concealed the facts upon which the Plaintiff's misappropriation of trade secrets claim was based; (6) the Defendant intentionally interfered with the Plaintiff's prospective business relations with Apple; (7) the Defendant's tortious interference was the result of fraud, malice, or gross negligence; (8) the Defendant willfully infringed the '981 patent; (9) the Defendant did not prove that any of the claims of the '981 patent were invalid due to obviousness, for failing to satisfy the written description requirement, or for failing to contain a sufficiently full and clear description of how to make and use the full scope of the claimed invention; (10) the Defendant did not prove that the Defendant's conduct was excused because of laches; and (11) the Defendant did not prove that the Plaintiff had unclean hands (Dkt. #511).

Final judgment was entered on June 9, 2016 (Dkt. #596). Renesas appealed the final judgment to the United States Court of Appeals for the Federal Circuit on June 10, 2016

(Dkt. #598). The Federal Circuit affirmed in part, reversed in part, and vacated in part the final judgment and remanded the case (Dkt. #614, Attachment 1). On August 9, 2019, Judge Schell[2] transferred this case to the undersigned (Dkt. #662).

On November 25, 2019, AMS filed its Motion for Entry of Final Judgment (Dkt. #672). This Court denied the Motion on March 27, 2020 ("Order") (Dkt. #682). In relevant part, the Court found that the bases for AMS's tortious interference claim had been eliminated on appeal, meaning that the Court could not enter final judgment on this claim.

On April 16, 2020, AMS filed its Motion to Reconsider Order Denying Its Motion for Entry of Final Judgment (Dkt. #686). On April 30, 2020, Renesas filed its Opposition to AMS's Motion for Reconsideration (Dkt. #688).

**LEGAL STANDARD**

A motion seeking reconsideration may be construed under Federal Rule of Civil Procedure 54(b), 59(e), or 60(b) depending on the circumstances. "The Fifth Circuit recently explained that 'Rule 59(e) governs motions to alter or amend a final judgment,' while 'Rule 54(b) allows parties to seek reconsideration of interlocutory orders and authorizes the district court to revise at any time any order or other decision that does not end the action.'" *Dolores Lozano v. Baylor Univ.*, No. 6:16-CV-403-RP, 2018 WL 3552351, at *1 (W.D. Tex. July 24, 2018) (quoting *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 336 (5th Cir. 2017)). Further, "'[i]nterlocutory orders,' such as grants of partial summary judgment, 'are not within the provisions of 60(b), but are left within the plenary power of the court that rendered them to afford such relief from them as justice requires [pursuant to Rule 54(b)]." *McKay v. Novartis Pharm. Corp.*, 751 F.3d 694, 701 (5th Cir. 2014) (quoting

---

[2] United States Senior District Judge Richard Schell assumed senior status on March 10, 2015.

*Zimzores v. Veterans Admin.*, 778 F.2d 264, 266 (5th Cir. 1985)) (citing *Bon Air Hotel, Inc. v. Time, Inc.*, 426 F.2d 585, 862 (5th Cir. 1970)).

Because this is a motion seeking reconsideration of an interlocutory order, the Court uses Federal Rule of Civil Procedure 54(b).[3] "Federal Rule of Civil Procedure 54(b) provides that, in a case involving multiple claims or parties, 'any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities or fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.'" *Blundell v. Home Quality Care Home Health Care, Inc.*, No. 3:17-cv-1990-L-BN, 2018 WL 276154, at *4 (N.D. Tex. Jan. 3, 2018) (quoting FED. R. CIV. P. 54(b)). "Under Rule 54(b), 'the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law.'" *Austin*, 864 F.3d at 336 (quoting *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 185 (5th Cir. 1990), *abrogated on other grounds*, *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 n.14 (5th Cir. 1994)).

## ANALYSIS

AMS argues that it is entitled to reconsideration because: (1) the Order contravened controlling authority regarding the law of the case doctrine; and (2) Renesas waived its causation argument on tortious interference when it failed to reassert the argument in its Rule 50(b) motion. Renesas disagrees on both accounts. Renesas counters that there is no intervening change to the law, no new evidence, and no clear error of law that would lead to reconsideration being

---

[3] AMS set out the Rule 59(e) standard in its Motion to Reconsider. The Court does not believe that is the appropriate standard here. In fact, in AMS's Motion to Reconsider, AMS acknowledges that the Court did not enter final judgment on its breach of contract and tortious interference claims—that is precisely why AMS is requesting that the Court reconsider its Order and enter final judgment now. Thus, the Court will use the Rule 54(b) standard. At any rate, a denial under Rule 54(b) would indisputably be a denial under the harsher Rule 59(e) standard.

appropriate in this case. The Court agrees with Renesas's assessment that reconsideration is inappropriate.

### I. The Order Did Not Contravene Controlling Authority Regarding the Law of the Case Doctrine

AMS argues that the Court misapplied the law of the case doctrine in denying AMS's Motion for Entry of Final Judgment. AMS bases its argument on the fact that the issue of causation as it relates to its tortious interference claim was not an issue raised on appeal. True—that issue was not squarely raised on appeal. But AMS errs in its assumption that because the issue was not squarely before the Federal Circuit, the law of the case doctrine does not apply. AMS misconstrues what the Court held in its Order.

In denying AMS's motion for the entry of final judgment, the Court: (1) examined the Federal Circuit's treatment of AMS's trade secret misappropriation and patent infringement claims, which *were* on appeal; (2) found that the Federal Circuit's decision of several issues of law and fact relating to those claims necessarily implicated AMS's tortious interference claim, which *relied* on those two causes of action as independently tortious or wrongful acts; and (3) applied those issues decided by necessary implication to conclude that AMS was not entitled to final judgment on its tortious interference claim because the evidence did not establish that Renesas's misappropriation of trade secrets and/or patent infringement interfered with a reasonably probable contract that AMS would have entered into with Apple to supply the ambient light sensors for the iPhone 3G (Dkt. #682 at pp. 22–28).

The law of the case doctrine provides that "an issue of law or fact decided on appeal may not be reexamined either by the district court on remand or by the appellate court on a subsequent appeal." *Vine v. PLS Fin. Servs., Inc.*, No. 4:18-CV-00450, 2019 WL 4257108, at *7 (E.D. Tex. Sept. 9, 2019) (quoting *Fuhrman v. Dretke*, 442 F.3d 893, 896 (5th Cir. 1978)). "The duty of a

5

lower court to follow what has been decided at an earlier stage of the case comprehends things decided by necessary implication as well as those decided explicitly." *Terrell v. Household Goods Carriers' Bureau*, 494 F.2d 16, 19 (5th Cir. 1974).

AMS asserts that the evidence at trial actually does show that its photodiode array structure—AMS's only remaining trade secret (Dkt. #682 at p. 26)—was a substantial factor in causing the interference with its prospective Apple contract. The Federal Circuit expressly concluded otherwise. *See Tex. Advanced Optoelectronic Sols., Inc. v. Renesas Elecs. Am., Inc.*, 895 F.3d 1304 (Fed. Cir. 2018), *cert. denied*, 139 S. Ct. 2741 (2019). According to the Federal Circuit: (1) "[AMS] has not identified evidence showing that it would have won the contract had [Renesas] not used [AMS's] photodiode array structure"; and (2) "[AMS] itself attributed [Renesas's] iPhone 3G win primarily to [Renesas's] significantly lower bid price, made possible by using the (lower cost) plastic packaging." *Id.* at 1321. Moreover, the Federal Circuit noted that AMS regained Apple's business when AMS switched over to plastic packaging. *Id.*

AMS argues that the Federal Circuit's conclusions were not made for the purpose of determining causation as an element of any liability claim, much less a tortious interference claim. Rather, these statements were made in the distinct context of analyzing a Seventh Amendment issue regarding a disgorgement award. In particular, AMS contends that the Federal Circuit's analysis is confined to the disgorgement remedy and the Court may not look to it when assessing AMS's tortious interference claim. While the Court agrees that the Federal Circuit decided these facts in the disgorgement-award context, the Court finds that reconsideration is not appropriate since the facts decided by the Federal Circuit necessarily implicated the jury verdict on AMS's tortious interference claim.

As discussed above, the law of the case doctrine "comprehends things decided by necessary implication . . . ." *Terrell*, 494 F.2d at 19. In place of the Federal Circuit's conclusions, AMS would have this Court reach a different conclusion about what substantially caused Apple to use Renesas's ambient light sensors in the iPhone 3G. The Court will not contravene the law of the case doctrine as AMS suggests it do. In the alternative, AMS suggests that there were multiple factors that substantially caused Apple to use Renesas's ambient light sensors in the iPhone 3G— so, AMS claims, because there may be more than one proximate cause to an injury, the Court should reconsider its Order. AMS's analysis is not consistent with the but-for test used in tortious interference claims under Texas law.[4]

Claims of tortious interference with business relations use the but-for test for causation. To be successful on this claim, a plaintiff must prove that the "independently tortious or wrongful act . . . interfered with a reasonably probable contract and that the contract would have been entered into *but for* that interference." *See Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 924 (Tex. 2013) (emphasis added); see also *Anderson v. Archer*, 490 S.W.3d 175, 179 (Tex. App.—Austin 2016), *aff'd*, 556 S.W.3d 228 (Tex. 2018) ("A successful claim for

---

[4] It appears that AMS is attempting to argue that the causation test used for tortious interference claims should not be the but-for test, but rather the substantial-factor test. To the extent that AMS is arguing that, its argument is flawed. First, AMS cites *Bustamante v. Ponte*, 529 S.W.3d 447 (Tex. 2017), to support its contention that there may be more than one proximate cause for an injury. But the Texas Supreme Court noted in *Bustamante* that there is only more than one proximate cause when "but for causation . . . yields to the more general substantial factor causation . . . ." *Id.* at 457 (quoting *Bostic v. Georgia-Pacific Corp.*, 439 S.W.3d 332. 344 (Tex. 2014)). Moreover, the but-for test yields to the substantial-factor test only "where proof of but for causation is not practically possible . . . ." Yet, AMS has provided no facts as to why the but-for test is not practically possible in this case.

Second, even if AMS had attempted to provide a rationale for using the substantial-factor test instead of the but-for test, this Court must still abide by the law of the case. The Federal Circuit held that the primary reason AMS lost its contract with Apple was Renesas's use of plastic packaging. Once AMS switched back to plastic packaging, it regained Apple's business. *Tex. Advanced Optoelectronic Sols., Inc*, 895 F.3d at 1321.

Not to mention, the Federal Circuit reviewed all the evidence from the lower court proceeding and concluded that there was no evidence to support an argument that AMS "would have won the [iPhone 3G] contract had Renesas not used [AMS's] photodiode array structure." *Id.* So the photodiode array structure could not be a substantial factor in AMS losing the contract with Apple. *See* (Dkt. #682 at pp. 25–27).

tortious interference with an existing or prospective contract requires evidence of . . . a reasonable probability that an enforceable contract would have been entered into *but for* the interference.") (emphasis added); *Alliantgroup, L.P. v. Feingold*, 803 F. Supp. 2d 610, 629 (S.D. Tex. 2011) (Rosenthal, J.) ("Under Texas law, the 'prevented the relationship from occurring' element of a claim for tortious interference with prospective business relations requires, at minimum, that the tortious conduct constitute a *cause in fact* that prevented the prospective business relationship from coming to fruition in the form of a contractual agreement; the test for cause in fact, or '*but for causation*,' is whether the act or omission was a substantial factor in causing the injury without which the harm would not have occurred.") (emphasis added). In this case, AMS would not have lost the contract with Apple but for the plastic packaging used by Renesas. *Tex. Advanced Optoelectronic Sols., Inc*, 895 F.3d at 1321. Thus, as concluded by necessary implication, the photodiode array structure could not have been the but-for cause.

Even if the Court were to apply the substantial-factor test, AMS's argument would still be unsuccessful. AMS's photodiode array structure had already lost its trade secret status by the time Renesas was entering into talks with Apple (Dkt. #682 at pp. 26–27). "Accessibility [to a trade secret] by proper means render[s] the [trade secret] no longer a protected secret." *Tex. Advanced Optoelectronic Sols., Inc*, 895 F.3d at 1317; *see also E.I. duPont deNemours & Co. v. Christopher*, 431 F.2d 1012, 1015 (5th Cir. 1970) ("[T]he Texas rule is clear" that "[o]ne may use his competitor's secret process if he discovers the process by reverse engineering applied to the finished product.").

The "[s]ecrecy protection [afforded to AMS] terminated at the end of the period of time it would have taken [Renesas,] after [Renesas'] permissible discovery of the photodiode structure, to recreate that structure in its own products." *Tex. Advanced Optoelectronic Sols., Inc*, 895 F.3d

at 1317. By 2006, the only trade secret that AMS can use as an underlying tort was no longer a trade secret. *Id.* Renesas did not win the iPhone 3G contract with Apple until 2008 (Dkt. #682 at pp. 26–27). When Renesas won the contract, the photodiode technology *was not* a trade secret. It is simply logical, then, that the photodiode array structure cannot be an underlying tort in AMS's tortious interference claim.

For the foregoing reasons, the Court finds that the Court's Order did not contravene controlling authority regarding the law of the case doctrine. The Court need not reconsider its Order.

## II. The Causation Argument for Tortious Interference Was Not Waived

As a last-ditch effort, AMS contends that the Court must reconsider its Order because Renesas waived any and all arguments on the causation element of AMS's tortious interference claim. Specifically, AMS argues that Renesas only raised the causation argument at the Rule 50(a) stage, but not at the Rule 50(b) stage. AMS hinges this argument on a slight difference in wording between Renesas's two motions. In its 50(a) motion, Renesas argued that AMS "failed to show that there was an independent tortious or unlawful act that was a substantial factor in preventing the contractual or business relationship from occurring . . . ." But in Renesas' Rule 50(b) motion, it argued that "[AMS's] tortious interference claim fails because there is no underlying tort." While AMS may be convinced these arguments are distinct, the Court is not.

*Stotter v. University of Texas at San Antonio* is instructive on how the Court should analyze the differences between a 50(a) motion and 50(b) motion. In *Stotter*, the plaintiff argued that the district court "erred in considering [the defendant's] Rule 50(b) motion because it so differed in content from his earlier Rule 50(a) motion." 369 F. App'x 641, 643 (5th Cir. 2010) (per curiam). The Fifth Circuit disagreed, holding that where a Rule 50(b) motion is sufficiently reflective of the party's Rule 50(a) motion, it avoids waiver. *Id.* This is consistent with Rule 50(b)'s purpose:

"Rule 50(b) is designed to prevent a litigant from ambushing both the district court and opposing counsel after trial." *Puga v. RCX Sols., Inc.*, 922 F.3d 285, 290 (5th Cir. 2019). A slightly varied version of a party's Rule 50(a) argument that is raised in the party's Rule 50(b) motion does not defeat the purpose of Rule 50(b).

Renesas's argument in its Rule 50(b) motion is sufficiently reflective of the argument made in its Rule 50(a) motion. Moreover, allowing Renesas to avoid waiver would not defeat the purpose of Rule 50(b) given neither the Court nor opposing counsel were ambushed by this argument. Even though the Rule 50(b) motion does not specifically say "causation" or "substantial" factor, both motions advance the argument that there is no underlying tort to support AMS's tortious interference claim. Renesas's argument that there is no underlying tort at all must also mean Renesas is arguing there is no underlying tort that *caused* interference with a business relation. One naturally leads to the other. So, Renesas never waived the argument, and the Court does not need to reconsider its Order.[5]

## CONCLUSION

It is therefore **ORDERED** that AMS's Motion to Reconsider Order Denying TAOS' Motion for Entry of Final Judgment (Dkt. #686) is hereby **DENIED**.

**SIGNED this 31st day of July, 2020.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE

---

[5] Once the Federal Circuit vacated the damage awards on AMS's patent infringement and trade secret misappropriation claims, AMS argued—successfully—that the Court should equitably allow AMS to re-elect its remedies so that it could recover on its tortious interference claim (Dkt. #682 at pp. 6–15). But now, AMS would have the Court prevent Renesas from elaborating on its defense against the tortious interference claim by contending that Renesas waived this argument in a post-trial motion? AMS cannot use the Court's equity as both a sword and a shield in this litigation.