# United States District Court

### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| AMS SENSORS USA INC. f/k/a | § | |
| TEXAS ADVANCED OPTOELECTRONIC | § | |
| SOLUTIONS, INC. | § | Civil Action No.  4:08-cv-00451 |
| | § | Judge Mazzant |
| v. | § | |
| | § | |
| RENESAS ELECTRONICS AMERICA | § | |
| INC. f/k/a INTERSIL CORPORATION | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Pending before the Court is Renesas Electronics America, Inc.'s Motion to Exclude Trial Testimony of Plaintiff's Financial Expert Keith Ugone (Dkt. #711).  Having considered the Motion and relevant briefing, the Court finds the Motion should be **GRANTED in part** and **DENIED in part**.

## BACKGROUND

### I.     The First Trial

The parties develop and sell ambient light sensors, which are used in electronic devices to adjust screen brightness in response to incident light.

In the summer of 2004, the parties confidentially shared technical and financial information during negotiations for a potential acquisition.[1]  In August 2004, the parties went their separate ways.  Soon after, Defendant Renesas Electronics America Inc. f/k/a Intersil Corporation ("Renesas" f/k/a "Intersil") released new sensors with the technical design Plaintiff AMS Sensors USA Inc. f/k/a Texas Advanced Optoelectronic Solutions, Inc. ("AMS" f/k/a "TAOS") disclosed in the confidential negotiations.  In January 2005, Plaintiff won a contract from Apple for the first-

---

[1] For simplicity's sake, the Court refers to the parties as "Plaintiff" and "Defendant."  When quoting briefing or prior rulings, the Court does not alter the quotations.  As such, some quotations may refer to the parties by their current names or former names, and sometimes a mix of both.

generation iPhone.  In February 2005, Plaintiff released its product that contained the confidential technology.   In January 2006, Defendant reverse-engineered that product.   In March 2008, Defendant won a contract from Apple for the second-generation iPhone.

On November 25, 2008, Plaintiff sued for patent infringement, breach of contract, trade secret misappropriation, and tortious interference with prospective business relations (Dkt. #1). The trade secret claim asserted one technical trade secret and two financial trade secrets.

After a trial in early 2015, a jury returned a verdict for Plaintiff and awarded damages on all four claims.  The Court ruled on the parties' post-trial motions and entered final judgment. Both parties appealed.

## II.       The Federal Circuit Mandate

The Federal Circuit wrote a lengthy opinion, affirming in part, reversing in part, vacating in part, and remanding the case (Dkt. #614).  Among its rulings, the Federal Circuit affirmed liability for trade misrepresentation, but only on the technical trade secret.  It identified the single "asserted trade secret" ("ATS") as "a structure that includes *both* a 1:1 ratio of shielded to unshielded wells *and* interleaving of the wells in that ratio, *i.e.*, repetition of the 1:1 ratio in an alternating pattern (requiring more than one set of wells)."   *Tex. Advanced Optoelectronic Sols., Inc. v. Renesas Elecs. Am., Inc.*, 895 F.3d 1304, 1313 (Fed. Cir. 2018) (hereinafter "*TAOS*") (emphasis original).  Liability for the two financial trade secrets was vacated.

The misappropriation damages were overturned for two independent reasons: (1) Plaintiff's expert "did not explain which of the trade secrets contributed to what amount of profit to be disgorged" and (2) the ATS "was accessible to Intersil by proper means long before the time of many of the sales included in TAOS's request for monetary relief."  *Id.* at 1317.  The Federal Circuit further explained the second reason:

Such accessibility existed no later than January 2006, when Intersil successfully reverse-engineered the TSL2560, and perhaps as early as February 2005, when TAOS 'released' the TSL2560. . .

. . . Secrecy protection terminated at the end of the period of time it would have taken Intersil, after Intersil's permissible discovery of the photodiode structure, to recreate that structure in its own products. . . .

. . . That limited head-start period, which 'depend[s] upon the facts of each case,' ends TAOS's entitlement to monetary relief.

Here, the jury awarded disgorgement of profits in the exact amount TAOS's expert proposed, based on sales from April 2006 through March 2014. . . . TAOS's evidence supporting its claim to monetary relief for trade secret misappropriation did not limit the covered sales to a head-start period, and that omission cannot be deemed harmless.

*Id.* at 1317-18.  The Federal Circuit concluded:  "On remand, any determination of sales-based monetary relief for trade secret misappropriation requires evidence and a determination of the time at which the trade secret became properly accessible to Intersil and the duration of any head-start period."  *Id.* at 1318.

The Federal Circuit discussed additional errors with Plaintiff's disgorgement award.  In trade secret cases, plaintiffs sometimes use the defendants' gains as evidence of the plaintiffs' losses, or of the reasonable royalty.  But here, Plaintiff sought disgorgement of Defendant's profits without "any evidence or arguments that such profits soundly measured . . . TAOS's losses or a reasonable royalty."  *Id.* at 1320.  Defendant's profits were therefore not "a case-specific proxy for, TAOS's losses or a reasonable royalty."  *Id.*  There was "no evidence" that Defendant's profits from misappropriating Plaintiff's trade secret correlated with Plaintiff's losses.  *Id.* at 1321.  "For example, . . . TAOS has not identified evidence showing that it would have won the [Apple] contract had Intersil not used TAOS's photodiode array structure."  *Id.*

3

### III.    On Remand

On remand, the parties dispute damages.  On August 9, 2019, Judge Schell[2] transferred this case to the undersigned (Dkt. #662).

On November 25, 2019, Plaintiff moved for Entry of Final Judgment (Dkt. #672).  The Court denied the motion on March 27, 2020 (Dkt. #682).  Relevantly, the Court concluded Plaintiff's tortious interference claim was eliminated on appeal (Dkt. #682 at p. 22).  The Federal Circuit found there was no causation between Defendant's trade secret misappropriation and its subsequent iPhone contract (Dkt. #682 at p. 22, n.11).  This Court was unequivocal:

> In light of the Federal Circuit's discussion . . ., there is no evidence to support any link between these underlying acts and Apple's decision to purchase Renesas's ambient light sensors for the iPhone 3G in 2008.
> . . .
> Renesas's other two arguments can be boiled down to one concept: Renesas did not win the Apple iPhone 3G contract using any misappropriated information or by using TAOS's patent subject matter; rather, as the Federal Circuit summarized the evidence at trial, Renesas won the contract "primarily" due to Renesas's "significantly lower bid price, made possible by using the (lower cost) plastic packaging." . . . The Court must agree.
> . . .
> Although the Federal Circuit's discussion was not directed at TAOS's tortious interference claim, the Court struggles to see how it is not the law of the case. [citations omitted].  And as the law of the case, the Court may not reexamine the Federal Circuit's determination that Apple's decision to award Renesas the iPhone 3G contract was driven by Renesas's use of low-price plastic packaging.

(Dkt. #682, pp. 22, 24-25).  Plaintiff moved for reconsideration (Dkt. #686).  The Court denied the motion and reiterated it was bound by the Federal Circuit's opinion (Dkt. #696).

### IV.    The Present Motion

As trial approaches, the parties filed various expert motions.  These motions focus on how to interpret and apply the Federal Circuit's opinion.  On December 1, 2020, Defendant moved to Exclude Trial Testimony of Plaintiff's Financial Expert Keith Ugone ("Dr. Ugone") (Dkt. #711).

---

[2] United States Senior District Judge Richard Schell assumed senior status on March 10, 2015.

On December 15, 2020, Plaintiff responded (Dkt. #717).   On December 22, 2020, Defendant

replied (Dkt. #720).   On January 14, 2021, Defendant filed a Notice of Supplemental Authority,

containing *Contour IP Holding, LLC, v. GoPro, Inc*., 3:17-cv-04738-WHO, 2021 WL 75666 (N.D.

Cal. Jan. 8, 2021) (excluding portions of Dr. Ugone's analysis).

## LEGAL STANDARD

Federal Rule of Evidence 702 provides for the admission of expert testimony that assists

the trier of fact to understand the evidence or to determine a fact in issue.  FED. R. EVID. 702.  In

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court instructed courts to function

as gatekeepers, and determine whether expert testimony should be presented to the jury.  509 U.S.

579, 590-93 (1993).  Courts act as gatekeepers of expert testimony "to make certain that an expert,

whether basing testimony upon professional studies or personal experience, employs in the

courtroom the same level of intellectual rigor that characterizes the practice of an expert in the

relevant field." *Kuhmo Tire Co. Ltd. v. Carmichael,* 526 U.S. 137, 152 (1999).  "This gate-keeping

obligation applies to all types of expert testimony, not just scientific testimony." *Pipitone v.

Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002) (citing *Kuhmo*, 526 U.S. at 147).

The party offering the expert's testimony has the burden to prove by a preponderance of

the evidence that:  (1) the expert is qualified; (2) the testimony is relevant to an issue in the case;

and (3) the testimony is reliable.  *Daubert*, 509 U.S. at 590-91.  A proffered expert witness is

qualified to testify by virtue of his or her "knowledge, skill, experience, training, or education."

FED. R. EVID. 702.

In deciding reliability, the Court considers numerous factors.  *See Daubert*, 509 U.S. at

594.  In *Daubert*, the Supreme Court offered the following, non-exclusive list of factors that courts

may use when evaluating the reliability of expert testimony:  (1) whether the expert's theory or

technique can be or has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error of the challenged method; and (4) whether the theory or technique is generally accepted in the relevant scientific community.  *Id.* at 593-94; *Pipitone*, 288 F.3d at 244.  When evaluating *Daubert* challenges, courts focus "on [the experts'] principles and methodology, not on the conclusions that [the experts] generate." *Daubert*, 509 U.S. at 594.

The *Daubert* factors are not "a definitive checklist or test."  *Daubert*, 509 U.S. at 593.  As the Court has emphasized, the *Daubert* framework is "a flexible one."  *Id.* at 594.  The test for determining reliability can adapt to the particular circumstances underlying the testimony at issue. *Kuhmo*, 526 U.S. at 151.  Accordingly, the decision to allow or exclude experts from testifying under *Daubert* is committed to the sound discretion of the district court.  *St. Martin v. Mobil Exploration & Producing U.S., Inc.*, 224 F.3d 402, 405 (5th Cir. 2000).

Rule 403 dictates that a court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following:  unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  FED. R. EVID. 403.  Furthermore, the Fifth Circuit has consistently held that an expert may not render conclusions of law.  *See Snap-Drape, Inc. v. C.I.R.*, 98 F.3d 194, 198 (5th Cir. 1996); *see also Goodman v. Harris Cnty.*, 571 F.3d 388, 399 (5th Cir. 2009) ("an expert may never render conclusions of law."); *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983) ("allowing an expert to give his opinion on legal conclusions to be drawn from the evidence both invades the court's province and is irrelevant.").

## ANALYSIS

Defendant asks this Court to exclude testimony from Plaintiff's financial expert, Dr. Ugone.  Fundamentally, the parties have different interpretations of the Federal Circuit's decision.  This Court is bound by the Federal Circuit's opinion as it is the law of the case.  *See Terrell v. Household Goods Carriers' Bureau*, 494 F.2d 16, 19 (5th Cir. 1974).  The Court carefully reviewed the lengthy record, its two recent orders, and the parties' briefing.  It now addresses each of the five disputes.

### I.    Dr. Ugone's Definition of the Trade Secret

The parties dispute the scope of the ATS.  The Federal Circuit specified that "[t]he asserted trade secret is a structure that includes *both* a 1:1 ratio of shielded to unshielded wells *and* interleaving of the wells in that ratio, *i.e.*, repetition of the 1:1 ratio in an alternating pattern (requiring more than one set of wells)."  *TAOS*, 895 F.3d at 1313 (emphasis original).  Defendant argues Dr. Ugone goes beyond the scope of the Federal Circuit's definition.

Dr. Ugone defines the ATS in his report and deposition, as "a 1:1 interleaved photodiode array structure *for use in an [ambient light sensor ("ALS")]*." (Dkt. #711, Exhibit 2 at p. 11; Exhibit 3 at 20:22-21:8) (emphasis added).  Dr. Ugone acknowledges that the Federal Circuit's definition does not include this limitation (Dkt. #712, Exhibit 3 at 22:17-23:17).

The Federal Circuit's definition controls.  If Dr. Ugone defines the ATS, he must use the Federal Circuit's definition.  That definition does not contain the limitation "for use in an ALS."

Plaintiff argues the ATS "has always been defined in the context of an ambient light sensor (ALS) device." (Dkt. #717 at p. 13).  In support, Plaintiff cites prior filings that reference ambient light sensors (*See* Dkt. #1 at ¶ 2 (identifying TAOS's introduction of the "first digital ambient light sensor"); Dkt. #505 (referring to "ambient light sensor" nearly 50 times)).  This does not address the mandate.  The Federal Circuit made a factual finding of the ATS and the Court is bound by

that finding.  *See Terrell*, 494 F.2d at 19.  The Federal Circuit's definition leaves no room for interpretation; Dr. Ugone is precluded from modifying it.

## II.   Dr. Ugone's Apportionment Analysis

Defendant objects to Dr. Ugone's apportionment analysis on two grounds.

### i.   Misappropriation Disgorgement Damages

Defendant argues Dr. Ugone failed to properly apportion misappropriation damages. Specifically, Dr. Ugone opines the ATS was "the driver" for sales to Apple and was necessary for Defendant to win the Apple business (Dkt. #711, Exhibit 2 at ¶¶ 41-43, 44-46).  For example, Dr. Ugone testified that "if the trade secret was not incorporated, if there wasn't a misappropriation of the trade secret, then Intersil would not have made sales of the ISL2900s to Apple." (Dkt. #711, Exhibit 3 at 63:2-5).  Based on this, Dr. Ugone opines for a full disgorgement of Defendant's profits.  Dr. Ugone refers to this as a "100% apportionment" analysis (Dkt. #711, Exhibit 3 at 61:24-25).

Dr. Ugone's analysis contradicts the Federal Circuit's mandate.  Dr. Ugone testifies that the ATS was the sole driver of sales to Apple (Dkt. #711, Exhibit 3 at 63:2-4, 67:9-17).  But the Federal Circuit found that it was price—and not the ATS—that drove sales to Apple.  *TAOS*, 894 F.3d at 1321.  Dr. Ugone opines that "Apple would not have bought the product but for having this 1:1 trade secret." (Dkt. #711, Exhibit 3 at 68:7-10).  Again, the Federal Circuit found it was price, not the ATS.  *Id.*  And Dr. Ugone asserts "if Intersil was not offering the . . . product with the 1:1 trade secret, TAOS would have gotten those [Apple] sales." (Dkt. #711, Exhibit 3 at 76:11-15). But the Federal Circuit stated, "TAOS has not identified evidence showing it would have won the contract had Intersil not used TAOS's photodiode array structure."  *Id.* at 1318.

When confronted with the contradictory language, Dr. Ugone muses that the Federal Circuit was discussing lost profits analysis, not disgorgement (Dkt. #711, Exhibit 3 at 88:9-17).

But the Federal Circuit's opinion did not contain any such limitation.  *See TAOS*, 895 F.3d at 1321.

Immediately after finding that the Apple iPhone 3G contract was caused by price, the Federal

Circuit "conclude[d] that in this case there is no basis for viewing the requested *disgorgement* of

all the defendant's profits as a 'proxy' for actual damages in the form of lost profits or a reasonable

royalty."  *Id.* (emphasis added).  The Federal Circuit directly addressed disgorgement.

Indeed, Plaintiff previously argued that the Federal Circuit was addressing disgorgement

(*See* Dkt. #686 at p. 6 (stating Plaintiff's argument)).  There, Plaintiff argued the Federal Circuit's

findings on Apple should be confined to the disgorgement remedy, and not apply to the tortious

interference claim (*See* Dkt. #686 at p. 6).  The Court rejected Plaintiff's attempt to narrow the

Federal Circuit's findings: "Although the Federal Circuit's discussion was not directed at TAOS's

tortious interference claim, the Court struggles to see how it is not the law of the case. . . And as

the law of the case, the Court may not reexamine the Federal Circuit's determination that Apple's

decision to award Renesas the iPhone 3G contract was driven by Renesas's use of low-price plastic

packaging."  (Dkt. #682 at p. 25).  Plaintiff makes a similar argument now about disgorgement

and lost profits.  For similar reasons, the Court remains unpersuaded.  The Federal Circuit's factual

findings still govern this case.

Dr. Ugone is precluded from contradicting prior court rulings.  As such, he cannot opine

that the ATS was "the driver" for the Apple iPhone 3G contract.  *Compare* (Dkt. #711, Exhibit 3

at 76:11-20) *with TAOS*, 895 F.3d at 1321 *and* (Dkt. #682 at p. 22).  He cannot opine Plaintiff

would have made the sales if Defendant had not used the ATS.  *Compare* (Dkt. #711, Exhibit 3 at

81:21-24) *with TAOS*, 895 F.3d at 1321 *and* (Dkt. #682 at p. 22).  And he cannot opine that price

was not a driver of sales.  *Compare* (Dkt. #711, Exhibit 3 at 67:13-17) *with TAOS*, 895 F.3d at

1321 *and* (Dkt. #682 at p. 25).

### ii.    Breach of Contract Reasonable Royalty Damages

Next, Defendant argues Dr. Ugone failed to properly apportion breach of contract reasonable royalty damages.

Defendant objects to Dr. Ugone's opinion attributing the entire value of the products to the ATS.  This is permissible.  *See Versata Software, Inc. v. Internet Brands, Inc.*, 902 F. Supp. 2d 841, 856 (E.D. Tex. 2012) (rejecting argument that expert failed to apportion defendant's profits, where expert testified the trade secret drove demand). The Federal Circuit did not rule on apportionment and there is nothing in the opinion to suggest the ATS could not support the entire award.  *See TAOS*, 395 F.3d at 1317.  As stated above, the Federal Circuit determined that price was the driver for the Apple iPhone 3G contract.  However, it did not make a similar finding for all of Defendant's sales.  Therefore Dr. Ugone may opine that the ATS drove other sales.

Defendant's argument boils down to one of fairness (*See* Dkt. #720 at pp. 5-6).  In 2015, Dr. Ugone testified that all three asserted trade secrets drove demand.  Now, after two of those trade secrets were thrown out on appeal, Dr. Ugone testifies that the lone ATS drove demand and asks for the same damages as before.  But this argument goes to the weight of Dr. Ugone's testimony, not its admissibility.  The jury determines "[w]hether the full amount of the infringer's profits is attributable to the alleged misappropriation of trade secrets." *Quintel Tech. Ltd. v. Huawei Techs. USA, Inc.*, 4:15-CV-307, 2018 WL 626355, at *7 (E.D. Tex. Jan. 30, 2018) (denying motion to strike damages expert for failure to apportion).

Defendant also objects to Dr. Ugone's opinion that the confidential information for the breach of contract claim goes beyond the ATS for the misappropriation claim.  As discussed in this Court's recent order on Defendant's motion to exclude Mr. McAlexander's testimony, this is permissible.  The confidential information and ATS are not coextensive.  This Court already recognized there was "overwhelming evidence" to support the jury's finding that Defendant "used

TAOS's confidential information to revamp Renesas's designs for its ambient light sensor and develop a new line of light sensors to compete with TAOS." (Dkt. #682 at pp. 19-20). This is distinct from the Federal Circuit's definition of the ATS. *See TAOS*, 895 F.3d at 1313. As such, there is no basis to exclude this opinion.

### III.     Dr. Ugone's Application of the Head-Start Period

On remand, misappropriation damages require "a determination of the time at which the trade secret became properly accessible to Intersil and the duration of any head-start period." *TAOS*, 895 F.3d at 1318. Once a trade secret is properly accessible, it is no longer protected. *See id.* at 1317. However, Plaintiff may still recover damages for a limited period after the secret loses protection. *See id.* This "head-start" duration accounts for how the Defendant's misappropriation gave it a leg up on the competition. *See id.* at 1318 (citing *Hyde Corp. v. Huffines*, 158 Tex. 566, 589 (1958). Plaintiff's entitlement to monetary damages ends when the head-start period ends. *See id.* The Federal Circuit found that "TAOS's evidence supporting its claim to monetary relief for trade secret misappropriation did not limit the covered sales to a head-start period, and that omission cannot be deemed harmless." *TAOS*, 895 F.3d at 1318.

Defendant asks this Court to exclude Dr. Ugone's disgorgement analysis because it is not limited to the head-start duration. As context, Dr. Ugone relies on Plaintiff's technical expert, Mr. Joseph McAlexander, for a proper accessibility date of late January 2006, and a head-start duration of 17 months. Seventeen months after January 2006 is June 2007. Defendant objects to Dr. Ugone's inclusion of (1) all non-Apple sales through March 2008 and (2) all sales to Apple, regardless of when they occurred. Defendant asserts that only sales occurring through June 2007

should be included in the damages base.  Plaintiff disagrees, although does not address this issue directly in its response.[3]  The Court addresses each complaint separately:

**(1) Dr. Ugone's inclusion of all non-Apple sales through March 2008**

Dr. Ugone's damages analysis includes sales through March 2008.  He testified that, although the ATS was properly accessible in January 2006, it took Defendant until October 2006 to release a product (Dkt. #711, Exhibit 3 at 156:2-7).  It would therefore be unfair to start the head-start duration on the date of proper accessibility (*See* Dkt. #711, Exhibit 3 at 160:2-8).  Thus, he does not start the 17-month duration in January 2006, at proper accessibility, but in October 2006, with Defendant's product launch (Dkt. #711 Exhibit 3 at 156:8-12).  Seventeen months after October 2006 is March 2008.  Plaintiff asserts it is therefore proper to include damages through March 2008 and that "disagreements about the figures and time periods" are best left for cross-examination (Dkt. #717 at p. 8).

This is incorrect.  The Federal Circuit's opinion contains no such "time shift," as Dr. Ugone calls it.  Instead, the Federal Circuit defines proper accessibility as the time when the ATS is no longer a protected secret.  *TAOS*, 895 F.3d at 1317.  The Federal Circuit then defined the "limited head-start period, which . . . ends TAOS's entitlement to monetary relief." *Id.* at 1318.  Dr. Ugone could not identify any words in the Federal Circuit's opinion that suggests the head-start duration only starts once Defendant releases a product (Dkt. #711, Exhibit 3 at 160:2-8).  Nor does he cite any support in his report for why he begins the 17-month head-start nearly nine months after the ATS was properly accessible (*See* Dkt. #711, Exhibit 2 at ¶ 54 (asserting, without citation, that the 17-month period begins "from the product release date")).  And Plaintiff does not address in its

---

[3] Plaintiff submitted a single filing (Dkt. #717) in response to both of Defendant's *Daubert* motions (Dkt. #711; #712). Plaintiff's response on head-start duration focuses on the arguments raised in the motion to exclude Mr. McAlexander's testimony.  Still, the Court considers arguments raised in Dr. Ugone's deposition and report.

response why Dr. Ugone selectively postpones the head-start duration until only after Defendant produced a product (*See* Dkt. #717 at pp. 7-9 (responding to arguments raised in Defendant's motion to exclude Mr. McAlexander's testimony on head-start duration)).  Plaintiff does not identify any case where a court has permitted an expert to "shift" a head-start duration from the date of proper accessibility to the date of product sales.

Plaintiff cites to *Huawai*, but that case is inapposite.  *See Quintel Tech. Ltd. v. Huawei Techs. USA, Inc*., 4:15-CV-307, 2018 WL 626355, at *8 (E.D. Tex. Jan. 30, 2018).  There, the Court denied a motion to exclude an expert's head-start opinion because the objecting party disagreed with the expert's underlying assumptions and figures.  *Id.*  The Court did not consider whether the head-start duration can be postponed from the date of proper accessibility to the date of product sales.  Unlike *Huawei*, Defendant does not object to underlying figures or assumptions; Defendant objects to Dr. Ugone's application of the law.  As such, *Huawei* does not support Plaintiff's proposition that the head-start can begin whenever Defendant sells a product.

Plaintiff's position is unsound.  Both parties agree that at some date the ATS became properly accessible and lost secrecy protection.  Both parties agree, theoretically, that damages accrue beyond that date until the end of the head-start period.  Under Plaintiff's view, the head-start duration is 17 months.  Yet Plaintiff's damages model accrues for 25-months after the date of proper accessibility.  If Plaintiff wants to assert the head-start period is 25-months, it should do so.  But Plaintiff has provided no authority to suggest it may "shift" the head-start period to exclude some months and include others.

The burden is on Plaintiff to establish by a preponderance of the evidence that its expert meets the minimal standards of admissibility.  *See Daubert*, 509 U.S. at 590-91.  It does not do so.  If Dr. Ugone opines to a 17-month head-start duration, that period must begin with the date of

proper accessibility.  As such, damages are limited to the 17 months following the date of proper accessibility.  Dr. Ugone may not opine to damages beyond this point.

### (2) Dr. Ugone's inclusion of all sales to Apple

On remand, Dr. Ugone includes all sales to Apple in his disgorgement analysis, regardless of when they occurred (Dkt. #711, Exhibit 3 at 169:14-20; Exhibit 2 at p. 36 n.123).  Dr. Ugone acknowledges that he includes Apple sales outside of the head-start period (Dkt. #711, Exhibit 3 at 170:19-171:3).  This contradicts the Federal Circuit's unambiguous holding.  *TAOS*, 895 F.3d at 1318 ("TAOS's evidence supporting its claim to monetary relief for trade secret misappropriation did not limit the covered sales to a head-start period, and that omission cannot be deemed harmless.").  Plaintiff does not respond to this issue (*See* Dkt. #717 at pp. 7-9 (responding to arguments on Mr. McAlexander's opinion on the head-start duration)).

Plaintiff fails to meet its burden of establishing that Dr. Ugone's testimony meets the minimum standards of admissibility.  *See Daubert*, 509 U.S. at 590-91.  As such, Dr. Ugone is precluded from contradicting the Federal Circuit's holding that Plaintiff's trade secret damages are limited to the head-start period.

## IV.     Dr. Ugone's Use of Derivative Products

The parties disagree if products derived from the ATS, that do not practice the ATS directly, may be included in damages.  Specifically, Mr. McAlexander identifies a group of products that "were developed based on or derived from" the ATS (Dkt. #712, Exhibit 3 at ¶ 20).  Mr. McAlexander acknowledges these products do not practice the ATS and refers to them as derivative products.[4]  Still, Mr. McAlexander opines these derivative products are "based upon

---

[4] When asked whether these derivative products "fall outside of the ATS," Mr. McAlexander responded that: "They're not in the primary products that actually practice and implement the Federal Circuit's definition for a trade secret.  But they're derived based upon knowledge of that trade secret." (Dkt. #712, Exhibit 2 at 234:4-15).

knowledge of that trade secret." (Dkt. #712, Exhibit 2 at 234:4-15).  Dr. Ugone relies on Mr. McAlexander's statements to include these derivative products in Plaintiff's damages base.

The Court denied a similar request in Defendant's motion to exclude Mr. McAlexander's testimony (Dkt. #712).  In that Order, the Court explained that the Fifth Circuit, applying Texas law, relied on the Third Restatement of Unfair Competition's definition of trade secret use. *Wellogix, Inc. v. Accenture, L.L.P.*, 716 F.3d 867, 877 (5th Cir. 2013) (quoting RESTATEMENT (THIRD) OF UNFAIR COMPETITION § 40(c) (1995)).  That broad definition asserts that "use of any substantial portion of the secret is sufficient to subject the actor to liability."  RESTATEMENT (THIRD) OF UNFAIR COMPETITION § 40 (1995).  "[A]ny exploitation of the trade secret" constitutes "use," including "employing the trade secret in manufacturing or production" or "relying on the trade secret to assist or accelerate research or development."  *Id.*  But, if the trade secret's contribution "is so slight that [Defendant's] product or process can be said to derive from other sources of information or from independent creation," then the trade secret has not been "used." *Id.*  This may encompass derivative products.

Thus, Dr. Ugone may include derivative products in damages, provided the products "use" the ATS.

### V.   Dr. Ugone's Testimony on Legal Issues or What the Jury Found

Defendant asks this Court to preclude Dr. Ugone from testifying "about legal issues, court rulings, and jury findings or verdicts" (Dkt. #711 at p. 12).

The Court declines to grant a general, blanket exclusion.  Experts may testify to their understanding of the relevant law, provided they do not opine about the meaning of a law. *See Gibson Brands, Inc. v. Armadillio Distribution Enterprises, Inc.*, 4:19-CV-00358, 2021 WL 229463, at *3 (E.D. Tex. Jan. 22, 2021).  And at trial, the jury will be routinely reminded that the

Court provides the applicable law.  Defendant may raise objections at the Pre-Trial Conference or at trial.

With that said, the Court addresses Defendant's specific objections to Dr. Ugone's testimony.  First, Dr. Ugone defines the ATS as "a 1:1 interleaved photodiode array structure *for use in an ALS*" (Dkt. #711, Exhibit 2 at ¶ 18) (emphasis added).  As discussed, this is not the Federal Circuit's definition of the ATS.[5]  *TAOS*, 895 F.3d at 1313.  If Dr. Ugone defines the ATS, he must use the Federal Circuit's definition.

Second, Dr. Ugone includes derivative products in Plaintiff's damage base (Dkt. #711, Exhibit 2 at ¶ 24).  As discussed, products that are derived from the ATS, but that do not directly use the ATS, may be included in damages.

Third, Dr. Ugone relies on deposition testimony during several parts of his report (Dkt. #711, Exhibit 2 at ¶¶ 33-38, 44-46).  There is nothing inherently improper about an expert relying on deposition testimony.  Defendant does not explain why this is inappropriate (Dkt. #711 at p. 12).  Therefore, the Court finds no reason to exclude Dr. Ugone's testimony on this basis.

Finally, Dr. Ugone uses "Intersil's product development hypothesis" (Dkt. #711 at p. 12 (citing Dkt. #711, Exhibit 2 at ¶ 54)).  Defendant provides no argument or explanation.  The Court reviewed the relevant portion of Dr. Ugone's report and is uncertain what "product development hypothesis" references.  However, in that section, the Court notes that Dr. Ugone opines "that Intersil would not have achieved its Apple design wins absent the trade secret misappropriation" (Dkt. #711, Exhibit 2 at ¶ 54).  As discussed, this is incorrect.  The Court found "there is no evidence to support any link between these underlying acts and Apple's decision to purchase

---

[5] The Federal Circuit identified the ATS as: "a structure that includes *both* a 1:1 ratio of shielded to unshielded wells *and* interleaving of the wells in that ratio, *i.e.*, repetition of the 1:1 ratio in an alternating pattern (requiring more than one set of wells)."  *TAOS*, 895 F.3d at 1313.

Renesas's ambient light sensors for the iPhone 3G in 2008." (Dkt. #682 at p. 22).  Dr. Ugone may not contradict this ruling.

## CONCLUSION

It is therefore **ORDERED** that Renesas Electronics America, Inc.'s Motion to Exclude Trial Testimony of Plaintiff's Financial Expert Keith Ugone (Dkt. #711) is hereby **GRANTED in part** and **DENIED in part**.

**SIGNED this 26th day of February, 2021.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE