# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| AMS SENSORS USA INC. f/k/a § <br> TEXAS ADVANCED OPTOELECTRONIC § <br> SOLUTIONS, INC. § <br> § <br> v. § <br> § <br> RENESAS ELECTRONICS AMERICA § <br> INC. f/k/a INTERSIL CORPORATION § | Civil Action No. 4:08-cv-00451 <br> Judge Mazzant |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is TAOS's Motion to Strike Untimely Produced Documents (Dkt. #713). Having considered the Motion, the Court finds it should be **GRANTED**.

### BACKGROUND

**I.     The First Trial**

The parties develop and sell ambient light sensors, which are used in electronic devices to adjust screen brightness in response to incident light.

In the summer of 2004, the parties confidentially shared technical and financial information during negotiations for a potential acquisition.[1]  In August 2004, the parties went their separate ways.  Soon after, Defendant Renesas Electronics America Inc. f/k/a Intersil Corporation ("Renesas" f/k/a "Intersil") released new sensors with the technical design Plaintiff AMS Sensors USA Inc. f/k/a Texas Advanced Optoelectronic Solutions, Inc. ("AMS" f/k/a "TAOS") disclosed in the confidential negotiations.  In January 2005, Plaintiff won a contract from Apple for the first-generation iPhone.  In February 2005, Plaintiff released its product that contained the confidential

---

[1] For simplicity's sake, the Court refers to the parties as "Plaintiff" and "Defendant."  When quoting briefing or prior rulings, the Court does not alter the quotations.  As such, some quotations may refer to the parties by their current names or former names, and sometimes a mix of both.

technology. In January 2006, Defendant reverse-engineered that product. In March 2008, Defendant won a contract from Apple for the second-generation iPhone.

On November 25, 2008, Plaintiff sued for patent infringement, breach of contract, trade secret misappropriation, and tortious interference with prospective business relations (Dkt. #1). The trade secret claim asserted one technical trade secret and two financial trade secrets.

After a trial in early 2015, a jury returned a verdict for Plaintiff and awarded damages on all four claims. The Court ruled on the parties' post-trial motions and entered final judgment. Both parties appealed.

## II.        The Federal Circuit Mandate

The Federal Circuit wrote a lengthy opinion, affirming in part, reversing in part, vacating in part, and remanding the case (Dkt. #614). Among its rulings, the Federal Circuit affirmed liability for trade misrepresentation, but only on the technical trade secret. It identified the single "asserted trade secret" ("ATS") as "a structure that includes *both* a 1:1 ratio of shielded to unshielded wells *and* interleaving of the wells in that ratio, *i.e.*, repetition of the 1:1 ratio in an alternating pattern (requiring more than one set of wells)." *Tex. Advanced Optoelectronic Sols., Inc. v. Renesas Elecs. Am., Inc.*, 895 F.3d 1304, 1313 (Fed. Cir. 2018) (hereinafter "*TAOS*") (emphasis original). Liability for the two financial trade secrets was vacated.

The misappropriation damages were overturned for two independent reasons: (1) Plaintiff's expert "did not explain which of the trade secrets contributed to what amount of profit to be disgorged" and (2) the ATS "was accessible to Intersil by proper means long before the time of many of the sales included in TAOS's request for monetary relief." *Id.* at 1317. "On remand, any determination of sales-based monetary relief for trade secret misappropriation requires

evidence and a determination of the time at which the trade secret became properly accessible to Intersil and the duration of any head-start period." *Id.* at 1318.

**III.     On Remand**

On remand, the parties dispute damages. On August 9, 2019, Judge Schell[2] transferred this case to the undersigned (Dkt. #662).

On November 25, 2019, Plaintiff moved for Entry of Final Judgment (Dkt. #672). The Court denied the motion on March 27, 2020 (Dkt. #682). Relevantly, the Court concluded Plaintiff's tortious interference claim was eliminated on appeal (Dkt. #682 at p. 22). Plaintiff moved for reconsideration (Dkt. #686). The Court denied the motion and reiterated it was bound by the Federal Circuit's opinion (Dkt. #696).

**IV.     The Present Motion**

As trial approaches, the parties filed various motions focused on how to interpret and apply the Federal Circuit's opinion. On December 1, 2020, Plaintiff moved to Strike Untimely Produced Documents (Dkt. #713). On December 15, 2020, Defendant responded (Dkt. #716). On December 22, 2020, Plaintiff replied (Dkt. #718).

## LEGAL STANDARD

Rule 37(c) allows evidence that was not properly or timely disclosed to be excluded if a party, "without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), . . . unless such failure is harmless." FED. R. CIV. P. 37(c). In determining the propriety of excluding evidence under Rule 37(c)(1), the Court considers four factors: (1) the party's explanation for its failure to disclose evidence; (2) the prejudice, if any, to the party opposing the

---

[2] United States Senior District Judge Richard Schell assumed senior status on March 10, 2015.

admission of the evidence; (3) the possibility of curing any prejudice with a continuance; and (4) the importance of the evidence.  *Barrett v. Atlantic Richfield Co.*, 95 F.3d 375, 380 (5th Cir. 1996).

## ANALYSIS

Plaintiff asks this Court to strike documents that Defendant produced in June 2020, over a decade after fact discovery closed.  Plaintiff argues this is untimely and there is no good cause to justify the late disclosure.  Defendant counters the disclosure was timely given the Federal Circuit's 2018 mandate which focused the case on narrow issues.

At the threshold, the Court discusses the nature of the at-issue documents, many of which seem to go to arguments precluded by the Federal Circuit's mandate.  The Court then finds the disclosure untimely.  Finally, the Court applies the *Barrett* factors and finds no good cause for the untimely disclosure.  The Court therefore grants the Motion to Strike.

### I.     What are the At-Issue Documents?

On June 1, 2020, Defendant produced documents regarding the design and development of the ISL29001, EL6315, and Photodiode IC (Dkt. #713 at p. 5).  These documents go back to 2002 and 2003 and were authored by engineer Brian North (Dkt. #713 at p. 5).

Defendant intends to use these documents to prove (1) the ATS was properly accessible before the time of misappropriation and (2) none of the accused products used the ATS (Dkt. #716 at p. 8).  As discussed in a recent Order, these arguments contradict the Federal Circuit's mandate. The Federal Circuit found the trade secret was secret at the time of misappropriation and thus was not properly accessible.  It also found the EL7903/ISL29001 used the ATS.  As such, the bulk of Defendant's justification for using the at-issue documents is improper.  The Court continues the analysis considering only proper purposes for using the evidence, such as identifying which of the other accused products used the ATS.

## II. Was the Disclosure Timely?

Defendant's disclosure was untimely. The documents could have been disclosed in 2009, before the close of fact discovery. Then, during discovery, Plaintiff served numerous discovery requests for documents relating to:

- The "conception, reduction to practice, creation, design, development, formulation, testing, manufacturing, engineering and/or modification of the Products (or any alternative variation(s) or prototype(s) of the products) . . ."
- The "conception, reduction to practice, creation, design, development, formulation, testing, manufacturing, engineering and/or modification of Intersil's IR cancellation technique (or any alternative variation(s) or prototype(s) of Intersil's IR cancellation technique)"
- "[Defendant's] contention that Intersil has not misappropriated, used or disclosed TAOS's confidential information or trade secrets"
- "[Defendant's] contention that TAOS did not disclose any trade secrets to Intersil or that Intersil otherwise acquired any trade secrets from TAOS"
- The "conception, reduction to practice, creation, design, development, formulation, testing, manufacturing, engineering and/or modification of the Products"

(Dkt. #713 at p. 9). These requests encompass the at-issue documents, which concern the design and development of the accused products. These documents therefore should have been produced back in 2009. They were not.

Defendant does not explain why the documents were not produced in 2009. Still, Defendant asserts the documents were timely disclosed in 2020. Defendant argues the documents only became relevant after the Federal Circuit's opinion. But the Federal Circuit did not create a

5

brand-new issue in the case by remanding for determination of the head-start duration. The parties were always required to identify the head-start duration. The documents were therefore always relevant.

Nor did the Federal Circuit create a "mandate for evidence," as Defendant asserts (Dkt. #716 at p. 8). The Federal Circuit held that, on remand, damages "requires evidence and a determination" of when "the trade secret became properly accessible" and "the duration of any head-start period." *TAOS*, 895 F.3d at 1318. This passage emphasizes that the parties must submit evidence in compliance with the Federal Circuit's opinion to support the damages award. This is not mandating new discovery. Nor is this mandating discovery of documents that should have been produced ten years ago. Even if the Federal Circuit narrowed the case on certain aspects, Defendant does not explain why it failed to produce the documents back in 2009.

Defendant also argues the documents were timely disclosed because Plaintiff delayed in defining the ATS until 2015. Defendant's reasoning is that because Plaintiff was slow to disclose the ATS back in 2015, that Defendant is only able to defend against that ATS in 2020. This is unpersuasive. The Court rejected this same argument back in 2015 (Dkt. #716 at p. 13). Six years have passed from that trial. Nearly three years have passed since the Federal Circuit defined the ATS. Defendant has had adequate time to prepare. Again, even if Plaintiff were slow to disclose the ATS in 2015, this does not explain why the documents were not produced in 2009.

The disclosure was untimely. The Court next considers whether the untimely disclosure may be excused for good cause.

### III. Is there Good Cause for the Untimely Disclosure?

Defendant does not address the good cause factors in its briefing, instead arguing its disclosure was timely. As addressed, this is unpersuasive. Still, the Court applies the *Barrett*

factors and finds there is no good cause for the untimely disclosure.  The Court grants the Motion to Strike.

### 1.  The Explanation for the Failure to Timely Disclose

Defendant argues its disclosure was timely because (1) the Federal Circuit's 2018 opinion focused on the head-start duration and (2) Plaintiff was slow to disclose the ATS back in 2015.  As addressed, these arguments overlook the real issue: why the documents were not produced in 2009.  Defendant responds that Plaintiff could have moved to compel these documents back in 2009.  This is true.  But it is unreasonable to ask Plaintiff to move to compel production of documents that even Defendant was unaware of until ten years later.  It is more reasonable to require Defendant to produce relevant documents in its possession in a timely manner.

### 2.  The Importance of the Evidence

Defendant argues these documents are important to show that (1) the ATS was properly accessible before the time of misappropriation and (2) none of the accused products used the ATS (Dkt. #716 at p. 8).  As discussed above, these arguments are improper.

### 3.  The Potential Prejudice to the Opposing Party in Allowing the Documents

Defendant previously argued that untimely document disclosure would result in prejudice, in opposition of its current argument.  In 2014, the parties disputed whether additional documents could be produced several years after the close of discovery.  During a hearing on that issue, Defendant argued "there's no reason, that we're aware of, certainly no reason that would be good cause, to go back and say, 'hey, we know we didn't get that document from you six years ago, but we would like it now."  (Dkt. 245 at 9:23-10:1).  Instead, "there must be some showing of good cause . . . otherwise that's the thin edge of a wedge that you could drive a truck through, literally,

or, in this case, a truckload of documents that relate only to events that were in existence . . . back in 2009." (Dkt. #245 at 8:6-11).

Defendant's earlier statements undercut its current position that its document production does not prejudice Plaintiff.  Whereas Defendant objected to disclosure six years after discovery, now Defendant produces documents eleven years after discovery.  This extremely late disclosure prejudices Plaintiff.

### 4.  The Possibility of a Continuance to Cure Such Prejudice

A continuance would only deepen Plaintiff's prejudice.  Back in 2010, when Plaintiff deposed the witnesses associated with these at-issue documents, the witnesses could not recall or identify these documents (Dkt. #713 at p. 18).  After eleven additional years, their memory has surely not improved.  Because so much time has passed, Plaintiff is unable to meaningfully question these witnesses on the documents.

### CONCLUSION

The Court finds that Defendant has not demonstrated good cause.  It is therefore **ORDERED** that TAOS's Motion to Strike Untimely Produced Documents (Dkt. #713) is hereby **GRANTED.**

SIGNED this 4th day of March, 2021.

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE