# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| **AMS SENSORS USA INC. f/k/a TEXAS ADVANCED OPTOELECTRONIC SOLUTIONS, INC.,** | § § § § | |
| **Plaintiff,** | § § | **CIVIL ACTION NO. 4:08-cv-451-ALM** |
| **v.** | § § § | **JURY TRIAL REQUESTED** |
| **RENESAS ELECTRONICS AMERICA INC. f/k/a INTERSIL CORPORATION,** | § § § § | |
| **Defendant.** | § § | |

## JOINT FINAL PRETRIAL ORDER

This cause came before the Court at a pre-trial management conference held on March 22, 2021, pursuant to Local Rule CV-16 and Rule 16 of the Federal Rules of Civil Procedure.

## I.     COUNSEL FOR THE PARTIES

Plaintiff ams Sensors USA Inc. f/k/a Texas Advanced Optoelectronic Solutions Inc. ("Plaintiff" or "TAOS"):

> Michael A. McCabe
> Michael C. Wilson
> Robert D. McCutcheon
> William A. Munck
> Jordan C. Strauss
> Chase A. Cobern
> **MUNCK WILSON MANDALA, LLP**
> 600 Banner Place
> 12270 Coit Road
> Dallas, Texas 75251

Defendant Renesas Electronics America Inc. f/k/a Intersil Corporation ("Defendant" or "Renesas"):

> William J. Robinson
> Justin M. Sobaje
> **FOLEY & LARDNER LLP**
> 555 South Flower Street, Suite 3300
> Los Angeles, CA 90071-2411

Pavan K. Agarwal
**FOLEY & LARDNER LLP**
3000 K Street, N.W., Suite 600
Washington, D.C. 20007-5109

Jeffrey R. Bragalone
**BRAGALONE OLEJKO SAAD, PC**
Chase Tower
2200 Ross Avenue
Suite 4500 W
Dallas, Texas 75201-7924

**SIEBMAN FORREST, LLP**
300 N. Travis Street
Sherman, Texas 75090

## II.      STATEMENT OF JURISDICTION

This Court has subject matter jurisdiction over this action and Plaintiff's claims for breach of contract and trade secret misappropriation pursuant to 28 U.S.C. § 1367.[1] The Court further has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332.  In addition, the Federal Circuit remanded the case to this Court for further proceedings. *Texas Advanced Optoelectronic Solutions, Inc. v. Renesas Elecs. Am., Inc.* ("*TAOS I*"), 895 F.3d 1304, 1308, 1332 (Fed. Cir. 2018).  The parties do not contest jurisdiction or venue with respect to TAOS's claims and Renesas' defenses thereto.

## III.      NATURE OF ACTION

### A.      TAOS's[2] Description:

In 2015, a unanimous jury awarded TAOS disgorgement of Intersil's profits resulting from Intersil's trade secret misappropriation and a reasonable royalty for Intersil's breach of a Confidentiality Agreement with TAOS.  (Dkt. #511 at 1–2). The jury also awarded exemplary

---

**1**   In addition to TAOS's breach of contract and misappropriation of trade secrets claims, TAOS originally brought a claim of patent infringement against Intersil, and this Court has subject matter jurisdiction over that claim pursuant to 28 U.S.C. §§ 1331 and 1338.

**2**   Given that the correct corporate name of the Plaintiff is AMS Sensors USA Inc., Renesas objects to Plaintiff's use of "TAOS" to describe the Plaintiff, Plaintiff's contentions, and/or any current description of the action.

damages after finding that Intersil's trade secret misappropriation resulted from fraud, malice, or gross negligence. (Dkt. #511 at 3). The Federal Circuit affirmed Intersil's liability for misappropriating TAOS's trade secret—specifically, "a structure that includes *both* a 1:1 ratio of shielded to unshielded wells *and* interleaving of the wells in that ratio, *i.e.*, repetition of the 1:1 ratio in an alternating pattern (requiring more than one set of wells)" ("TAOS's trade secret").[3] The Federal Circuit held that Intersil used TAOS's trade secret to revamp Intersil's designs for its first ambient light sensor and develop a new line of light sensors to compete with TAOS. *TAOS I*, 895 F.3d at 1317. The Federal Circuit remanded for a new trial on disgorgement of Intersil's profits. *Id.* at 1317–19. On appeal, Intersil "d[id] not dispute the sufficiency of the evidence regarding the act of misappropriation." *Id.* at 1313. Nor did Intersil appeal the jury's factual finding that the misappropriation resulted from Intersil's fraud, malice, or gross negligence. *See id.* at 1311. On remand, this Court found that Intersil remains liable for breach of contract and that a new trial was necessary to determine the damages to which TAOS is entitled on its breach of contract claim. (Dkt. #682). TAOS seeks disgorgement on its trade secret misappropriation claim and a reasonable royalty on its breach of contract claim. TAOS further seeks exemplary damages on its trade secret misappropriation claim, pre-judgment and post-judgment interests, costs, and attorneys' fees.

**B.**     **Renesas' Description:**

AMS originally filed a complaint with four causes of action: (a) trade secret misappropriation, (b) breach of contract, (c) patent infringement of U.S. Patent No. 6,596,981, and (d) tortious interference with prospective business relations.  A jury trial was held in February 2015, in which AMS presented several theories of trade secret/confidential information and alleged infringement of several '981 patent claims, all centered around one set of facts.  Following a jury verdict in favor of AMS, AMS did not seek to enter final judgment on the breach of contract

---

**3**    TAOS contends that in the context of the Federal Circuit's Opinion and the parties' contentions in the first trial and on appeal, TAOS's trade secret is limited to use in an ambient light sensor.  However, the Court on remand entered an order precluding TAOS's experts from testifying that TAOS's trade secret "is limited to an ambient light sensor." (Dkt. #737 at 17–18; Dkt. #736 at 7–8). To preserve TAOS's contention that the trade secret is limited to an ambient light sensor, TAOS recites it here, but hereinafter refers to "TAOS's trade secret" to incorporate the definition adopted by the Court.

damages (acknowledging that it was duplicative of its misappropriation monetary remedy) and Judge Schell found that the tortious interference damages were duplicative of the misappropriation monetary remedy.   Final judgment was entered on trade secret misappropriation and patent infringement.

The case was then appealed to the CAFC on the trade secret misappropriation and patent infringement claims.   Renesas appealed liability and damages for each claim, and AMS appealed a decision on summary judgment by Judge Schell excluding foreign sales from patent infringement of the '981 patent.   In July 2018, the CAFC issued its decision.   In that decision, the CAFC: (a) extinguished two of three alleged trade secrets and left intact a single trade secret relating to a particular photodiode array structure, (b) limited patent infringement to only certain '981 patent claims, (c) vacated all damages for misappropriation and infringement, including vacating the jury verdict on exemplary damages for misappropriation, and (d) affirmed that foreign sales are not subject to patent infringement of the '981 patent.   The CAFC further found that AMS' request for monetary relief for disgorgement of profits for misappropriation is an equitable issue to be tried to the Court.   The CAFC made several determinations (including as outlined herein) that define the pathway for determining the remaining monetary remedy/damages issues.   The CAFC remanded the case.

On remand from that appeal, this Court denied AMS' motion for a permanent injunction, extinguished AMS' tortious interference claim, and vacated damages for AMS' breach of contract claim (other than the $1 nominal damages for breach of contract that was not appealed).   AMS has also dropped pursuing patent infringement damages.   Therefore, all that remains is AMS' claims for monetary remedy on its trade secret misappropriation and breach of contract claim damages. AMS' only theory for misappropriation monetary remedy is disgorgement of certain Intersil profits.   For its disgorgement monetary relief, AMS must limit the covered sales to those occurring before the end of a "head start" period.   AMS has indicated that it intends to seek a reasonable royalty as the measure of damages for its breach of contact claim.   Lastly, the CAFC made a ruling preventing double recoveries, which applies to the upcoming trial.

IV.     **CONTENTIONS OF THE PARTIES**

A.      **TAOS's Contentions:**

By providing these contentions, TAOS does not concede that all of these issues are appropriate for trial. In addition, TAOS does not waive any of its motions *in limine*, evidentiary objections or other pending motions, which, if granted, may limit the relevancy of some of the evidence or render some issues moot. TAOS's contentions in this case are detailed in part in its pleadings, discovery responses, the expert reports, and TAOS's pending and anticipated motions, which are all incorporated by reference herein. TAOS disagrees with Renesas's contentions unless expressly stated herein and reserves the right to challenge the admissibility of any contentions not previously disclosed. TAOS contends the following:

1.      TAOS's trade secret is a trade secret within the meaning of Texas common law. The Federal Circuit has affirmed the jury's verdict that TAOS's trade secret is, in fact, a trade secret, and Intersil cannot challenge that finding on remand.

2.      TAOS's trade secret is limited to use in an ALS.

3.      Intersil misappropriated TAOS's trade secret. The Federal Circuit has affirmed the jury's verdict that Intersil misappropriated TAOS's trade secret by putting it to commercial use in Intersil's own ALS products, and Intersil cannot challenge that finding on remand.

4.      Intersil used TAOS's trade secret to revamp Intersil's designs for its ambient light sensor and develop a new line of ambient light sensors to compete with TAOS. The Federal Circuit has affirmed the jury's verdict that Intersil used TAOS's trade secret to revamp the designs for Intersil's first digital ALS product and develop a new line of ALS products, including Intersil's ISL29001, ISL29002, ISL29003, ISL29004, ISL29006, ISL29007, ISL29008, ISL29009, ISL29010, ISL29011, ISL29012, ISL29013, ISL29015, ISL29018, ISL29020, ISL29023, ISL29101, ISL29102, and ISL76683 products (collectively, the "At-Issue Products"), and Intersil cannot challenge that finding on remand.

5.      Intersil has forfeited any challenge to the extent of its liability for trade secret misappropriation that Intersil did not raise on appeal, including, but not limited to, any alleged

non-use of TAOS's trade secret to develop any At-Issue Products, or that TAOS's trade secret was developed for use in any application other than an ALS.

6.     The prior rulings in this case by the Federal Circuit and this Court do not limit TAOS's ability to present evidence related to disgorgement of Intersil's profits or unjust enrichment as a remedy for trade secret misappropriation, including but not limited to evidence related to Intersil's profits arising from sales of the ISL29003 product.

7.     The Federal Circuit affirmed the jury's finding that TAOS's trade secret was not properly accessible to Intersil at any time before Intersil's trade secret misappropriation in August 2004, and Intersil cannot challenge that finding on remand.

8.     TAOS's trade secret was not properly accessible to Intersil and did not lose secrecy protection at any time before January 30, 2006.

9.     Intersil breached its Confidentiality Agreement with TAOS when Intersil "used TAOS's confidential information to revamp [Intersil's] designs for its ambient light sensor and develop a new line of light sensors to compete with TAOS"[4] in the ALS market, and Intersil cannot challenge that finding on remand.

10.     The confidential information provided to or used by Intersil in breach of the Confidentiality Agreement is not limited to TAOS's trade secret.

11.     Intersil cannot raise issues on remand that it appealed and lost, or could have appealed but did not, are inconsistent with the CACF decision issued in this case, under the doctrines of law of the case, mandate rule, collateral estoppel, res judicata, issue preclusion, claim preclusion, forfeiture, and/or waiver.

12.     Intersil acted with fraud, malice, or gross negligence in misappropriating TAOS's trade secret.

13.     Intersil has forfeited any challenge to any basis for, or amount of, any exemplary damages awarded by the jury on remand, including but not limited to: the jury's finding of Intersil's

---

**4**   Order (Dkt. #682) at 19–20.

fraudulent, malicious, or grossly negligent conduct in support of exemplary damages liability and/or the constitutionality of any amount of exemplary damages awarded on remand.

14.     Intersil bears the burden of showing that any discretionary limitation on trade secret disgorgement should apply, including but not limited to discretionary limitations related to proper accessibility, loss of secrecy, head start, and/or apportionment.[5]

15.     Intersil bears the burden of showing that awarding disgorgement (i.e. unjust enrichment) for trade secret misappropriation for any period less than perpetual will be adequate to protect the rights of TAOS.

16.     Under Texas law, apart from actual reverse engineering, the mere public sale of any TAOS product embodying TAOS's trade secret could not terminate secrecy protection and/or render the trade secret properly accessible to Intersil unless the trade secret was "ascertainable at a glance" from the product.

17.     Intersil did not, and could not have, properly accessed TAOS's trade secret until, at the very earliest, Intersil actually completed its reverse engineering of TAOS's TSL2560 product on January 30, 2006.[6]

18.     Intersil's misappropriation of TAOS's trade secret provided Intersil with an improper head start or unfair competitive advantage in its ability to develop, market, launch or sell competitive products capable of competing with TAOS's ALS products, including the TSL2560/61 products.

---

**5**   To the extent the Federal Circuit's decision in *TAOS I* is construed to impose any burden on TAOS to establish the applicability of any discretionary limitation on trade secret disgorgement, including but not limited to discretionary limitations related to proper accessibility, loss of secrecy, head start, and/or apportionment, TAOS reserves the right to challenge such a decision in any subsequent appeal. *See Hudson v. Principi*, 260 F.3d 1357, 1363 (Fed. Cir. 2001) ("It is well-accepted that the application of the law of the case doctrine is discretionary[,] …. is a rule of practice and not a limit on a court's power, … and … should not be applied woodenly in a way inconsistent with substantial justice.").

**6**   TAOS reserves the right to challenge the Federal Circuit's decision in *TAOS I* in any subsequent appeal, including but not limited to the Federal Circuit's finding that TAOS's trade secret became properly accessible to Intersil after Intersil's misappropriation. *See Hudson v. Principi*, 260 F.3d 1357, 1363 (Fed. Cir. 2001) ("It is well-accepted that the application of the law of the case doctrine is discretionary[,] …. is a rule of practice and not a limit on a court's power, … and … should not be applied woodenly in a way inconsistent with substantial justice.").

19.     Intersil's breach of the Confidentiality Agreement provided Intersil with an unfair competitive advantage and permitted Intersil to develop, market, launch, or sell competitive products capable of competing with TAOS's ALS products including the TSL2560/61 products.

20.     Under Texas law, the duration of any discretionary limitation on trade-secret disgorgement (i.e. unjust enrichment) related to Intersil's head start must continue for the time period necessary to put Intersil in the same position as good-faith ALS competitors who did not misappropriate TAOS's trade secret, including at least the time it would have taken Intersil without misappropriation to develop a competitive ALS product for sale to customers of TAOS.

21.     The time it would have taken Intersil without misappropriation to merely implement TAOS's trade secret into a single, non-competitive ALS product is not the proper head start endpoint as a matter of Texas law.

22.     Intersil's misappropriation of TAOS's trade secret in August 2004 provided Intersil with at least a 26-month head start (in designing, developing, marketing and selling the ISL29003) over the competition (including TAOS) in the ALS market, running from the date of Intersil's alleged proper accessibility in January 2006 through March 2008.

23.     Absent the head start Intersil gained from its misappropriation of TAOS's trade secret, Intersil would not have manufactured and sold production quantities of a competitive ALS product until, at the very earliest, April 1, 2008.

24.     Absent the head start Intersil gained from its misappropriation of TAOS's trade secret, Intersil would not have been awarded in September 2006 a contract with Apple to supply the ISL29003 for use in Apple's iPod Touch products.

25.     Absent the head start Intersil gained from its misappropriation of TAOS's trade secret, Intersil would not have achieved any of the design wins or supply contracts necessary to manufacture and sell production quantities of its ISL29003 product to Apple for use in the iPod Touch and iPhone 3G.

26.     To recover disgorgement of Intersil's profit for misappropriation of TAOS's trade secret, TAOS need only show that its trade secret had value and was put to commercial use by Intersil.

27.     To recover disgorgement of Intersil's profit on sales attributable to TAOS's trade secret, TAOS need not show that TAOS's trade secret caused or was a "driver" of such sales.

28.     TAOS is entitled to recover disgorgement of Intersil's profits attributable to supply contracts or design wins secured by Intersil during the head start period, even if such profits were not actually received or realized by Intersil until after the head-start period.

29.     TAOS seeks the following relief:

a.   disgorgement of Intersil's profits attributable to its use of TAOS's trade secret in an amount sufficient to equitably and adequately protect TAOS's rights and/or prevent Intersil from unjustly benefitting from its misappropriation;

b.   a reasonable royalty pursuant to the *Georgia Pacific* framework adequate to compensate TAOS for Intersil's breach of the Confidentiality Agreement;

c.   exemplary damages for Intersil's fraudulent, malicious, or grossly negligent conduct in misappropriating TAOS's trade secret;

d.   attorneys' fees incurred by TAOS for breach of the Confidentiality Agreement;

e.   pre-judgment and post-judgment interest at the maximum rate permitted by law; and

f.   costs incurred by TAOS.

**B.     Renesas' Contentions:**

By providing these contentions, Renesas does not concede that all of these issues are appropriate for trial.  In addition, Renesas does not waive any of its motions *in limine*, evidentiary objections or other pending motions, which, if granted, may limit the relevancy of some of the evidence or render some issues moot.  Renesas's contentions in this case are detailed in part in its pleadings, discovery responses, the expert reports, and Renesas's pending and anticipated motions, which are all incorporated by reference herein.  Renesas disagrees with AMS' contentions unless expressly stated herein and reserves the right to challenge the admissibility of any contentions not

previously disclosed.  Many of those contentions represent defiance of the Court's *Daubert* rulings and present an alternate reality that should be stricken.  Renesas contends the following:

1. As the CAFC stated (consistent with AMS' argument to the CAFC), and this Court has further confirmed, the asserted trade secret ("ATS") is a structure that includes both a 1:1 ratio of shielded to unshielded wells and interleaving of the wells in that ratio, i.e., repetition of the 1:1 ratio in an alternating pattern (requiring more than one set of wells).  AMS cannot contest this statement of the ATS on remand.  This is the single trade secret remaining and monetary relief for disgorgement must be limited accordingly.   There is no "TAOS trade secret" other than the ATS.

2. The ATS is purely a structure.  The ATS: (a) is not limited to any specific application (such as an ALS); (b) concerns only the structure of a semiconductor device, and not how it works, why it works, the materials used to implement it, the actual or relative sizes and spacings of the wells, the speed of operation, its dynamic transient response or its steady state behavior; (c) is not limited to any specific type of incident light; (d) does not require infrared cancellation; and, (e) is not required to replicate human eye response.

3. The CAFC rejected AMS' allegations at the 2015 trial that Renesas was liable for misappropriation relative to the plastic packaging or Build v. Buy analysis alleged trade secrets. As such, AMS cannot rely on such items for supporting its disgorgement monetary relief, and monetary relief must be apportioned for their relative value to the ATS when addressing disgorgement monetary relief.  In addition, AMS cannot rely on evidence related to Build v. Buy for any other purpose in the remand trial, such as reliance for any purpose (such as punitive damages) on the fact that the Intersil legal department kept a copy of TAOS documents, for which $1 was awarded in damages and which was not appealed.

4. AMS has only asserted misappropriation monetary relief based on the ISL29003. AMS bears the burden of showing that the ISL29003 incorporates the ATS and that the use of the ATS was the proximate cause for any monetary relief from the sales of the ISL29003.  The ISL29003 does not use the ATS including because it has color filters that cover the photodiodes, and multiple AMS witnesses have testified that using filters is not AMS' technology.

5.      AMS cannot meet its burden to show that there is a proximate causal link between any alleged use of the ATS in the ISL29003 (the only product at issue for the misappropriation claim) and any customer's decision (including Apple's) to purchase the ISL29003 for incorporation into any product.  Indeed, the Federal Circuit and this Court have repeatedly ruled that price was the driver for Apple's purchase for the iPhone 3G, not the ATS. AMS is bound by these rulings, and AMS is precluded from now contending that Renesas would not have been awarded the September 2006 contract by Apple to supply the ISL29003 for use in Apple's iPod Touch products but for the alleged use of the ATS in the ISL29003.

6.      AMS bears the burden of demonstrating all aspects of its alleged entitlement to monetary relief for disgorgement caused by the trade secret misappropriation, including all related issues such as the head start period (date of proper accessibility and duration), the amount of net profits, if any, and apportionment.

7.      The Court's *Daubert* rulings preclude all of AMS' experts' opinions because they are based on an incorrect definition of the ATS as being limited to an ALS.  Further, the Court's *Daubert* rulings reject Mr. McAlexander's opinions regarding proper accessibility, head start duration, and any causal link between the ATS and Apple's decision to purchase ALS products from Intersil for the iPhone 3G.  There is no causal link between the ATS and Apple's decision to purchase the ISL29003 for any other product such as the iPod. This Court's *Daubert* rulings further thereby rejected Dr. Ugone's reliance on such inputs for his disgorgement calculations.  The Court's *Daubert* rulings further rejected Dr. Ugone's inclusion of sales that occurred after the end of the head start period, as well as his attempt to shift the head start duration to start on the date of first sale of the ISL29003 (instead of the date of proper accessibility).  Given these rulings, AMS cannot meet its burden of proof on any issue relating to damages for misappropriation.

8.      All of AMS' claims for monetary relief relating to disgorgement for trade secret misappropriation, including compensatory relief and/or exemplary damages, are to be decided by the Court in accordance with Federal Rule of Civil Procedure 52.  Given the equitable nature of such monetary relief, Renesas believes that there should be a separate Court trial on such issues

and without submission to the jury for an advisory verdict. Evidence that goes to the issues of fraudulent, malicious, grossly negligent, or willful conduct relates only to exemplary damages for misappropriation; allowing such evidence to be presented to the jury will be designed to enflame the jury and will undoubtedly cause jury confusion, as evidence of alleged fraudulent, malicious, grossly negligent, or willful conduct is wholly irrelevant to damages for breach of contract.

9.      The CAFC, based on consideration of Texas law, has defined the head-start period for this case as follows: "Secrecy protection terminated at the end of the period of time it would have taken Intersil, after Intersil's permissible discovery of the photodiode structure, to recreate that structure in its own products." *Texas Advanced Optoelectronic Solutions, Inc. v. Renesas Elecs. Am., Inc.* ("*TAOS I*"), 895 F.3d 1304, 1317 (Fed. Cir. 2018). The CAFC held that (a) the ATS was properly accessible to Intersil "long before" many of the sales that Dr. Ugone included in his presentation of damages at the first trial (*see id.*); and (b) "[AMS'] evidence supporting its claim to monetary relief for trade secret misappropriation did not limit the covered sales to a head-start period, and that omission cannot be deemed harmless" (*id.* at 1318). The CAFC did not decide the head-start period, and instead remanded for "evidence and a determination of the time at which the trade secret became properly accessible to Intersil and the duration of any head-start period." *Id.* AMS cannot challenge these determinations on remand, as confirmed by this Court in its *Daubert* rulings. To be clear, as the CAFC determined, AMS bears the burden to show the applicable head-start period on remand, including the date the ATS was properly accessible to Intersil and the head start duration.

10.     The ATS was properly accessible to Intersil by Fall 2004, and no later than Spring 2005, by virtue of AMS' public release of the TSL2560 chip and its sales of TSL2560/TSL2561 chips. Based on AMS' own witness testimony, it would have taken one month (or less) to obtain and reverse engineer an ALS to learn its photodiode array structure. Intersil actually reverse engineered an AMS ALS within one week.

11.     Reverse engineering is commonplace and entirely acceptable to learn the structure of a device. Such reverse engineering would render the ALS properly accessible to Renesas (and

anyone else), and Texas law does not require otherwise.  There is no requirement that Renesas itself actually have reversed engineered the ALS in order for it to become properly accessible.  To the contrary, the ATS was properly accessible soon after it was made available for sale.

12.     Under the scenario where proper accessibility is based on the AMS' release/sales of products (e.g., TSL2560/TSL2561), it would have taken Renesas one to three months to recreate the ATS in its then-existing ALS product (EL7900), including testing the product.  This duration is added to the date of proper accessibility stated above, and the end of the duration ends the head-start period under the CAFC definition.  As the CAFC determined, monetary relief for trade secret misappropriation is limited to covered sales within the head start period.  AMS cannot challenge this determination on remand and, as this Court has already ruled, any attempt to include sales beyond the head-start period is contrary to the CAFC decision.  Even using AMS' contended January 2006 reverse engineering date as the date of proper accessibility, the head-start period ends no later than April 2006.

13.     The CAFC held that, at the 2015 trial, AMS' expert Dr. Keith Ugone failed to value the ATS relative to the alleged (but rejected) Build v. Buy and plastic packaging trade secrets: "[Dr. Ugone] did not explain which of the trade secrets contributed to what amount of profit to be disgorged; he assigned all profits to the misappropriation of all trade secrets." *Id.* at 1317.  AMS cannot refute on remand that net profits must be apportioned accordingly.

14.     The CAFC further noted that it was not addressing proper apportionment of the ATS used in devices containing other features and that, if similar issues arise on remand, this Court should consider the issues at that time. *Id.* at 1317, n. 7.  The ISL29003 includes numerous features beyond any alleged ATS, and therefore, AMS cannot refute on remand that apportionment for the ATS relative to other product features is necessary.

15.     The ATS is no more important than any other aspect of an ALS such as the A/D converter and I2C digital interface and the apportioned value of the ATS is less than 10% of the product.

16.     The CAFC determined that AMS identified no evidence showing that it would have won the iPhone 3G ALS sales had Renesas not used the ATS.  The CAFC found that, at the first trial, AMS itself contended that Renesas won the iPhone 3G sales due to Renesas's significantly lower bid price, made possible by using lower cost plastic packaging.  *Id.* at 1321.  On remand, in extinguishing AMS' claim for tortious interference based on the CAFC decision, this Court held that there is no linkage between trade secret misappropriation and Apple's decision to purchase Renesas's ambient light sensors for the iPhone 3G in 2008.  Memorandum and Order, March 27, 2020, Dkt. #682 at 21.  This Court further held that "as law of the case, the Court may not reexamine the Federal Circuit's determination that Apple's decision to award Renesas the iPhone 3G contract was driven by Renesas's use of low-price plastic packaging." *Id.* at 25.  In its *Daubert* rulings, this Court has noted that "The Federal Circuit found no causation between Defendants' trade secret misappropriation and its subsequent iPhone contract."  Dkt #737 at 4.  AMS cannot challenge these determinations in the remand trial.

17.     AMS bears the burden for demonstrating by clear and convincing evidence that exemplary damages should be awarded and any associated amount.  There is no evidence demonstrating any copying, fraudulent, malicious, grossly negligent, or willful conduct by Intersil relative to the ISL29003.  TAOS disclosed no design details in the June 2004 meeting other than a crude sketch showing 1:1 interleaving, a concept already in use in Intersil's PDIC products.  Intersil's ALS products were developed based on its prior PDIC designs, which used the ATS, and upon its internally developed color filter technology.  Intersil was not even aware of exactly how TAOS constructed its photodiode array until it reverse-engineered a TAOS device in January 2006.  And, after becoming aware, Intersil rejected the use of such a diode design.   As such, there is no basis for any punitive damage award or other enhancement.

18.     AMS has the burden (but has failed to meet it) to show that Intersil committed fraudulent, malicious, or grossly negligent conduct in misappropriating the single remaining asserted trade secret (the ATS), and therefore is not entitled to any exemplary damages.  And, even if AMS does meet its burden (which Renesas disputes), Renesas disputes that AMS would be

entitled to any more than nominal exemplary damages (if any at all).  Renesas has forfeited nothing relative thereto.  And, no aspect of the prior record relative to the trade secrets that were found invalid by the CAFC (packaging and build v. buy) or that relates to breach of contract is relevant to determination of exemplary damages on remand.  AMS must prove its entitlement to punitive damages, if any, but this time based on the ATS alone.

19.     AMS bears the burden to show the amount of any reasonable royalty damages based on breach of contract.

20.     Damages for breach of contract are decided under California law, which requires reasonable foreseeability of the damages to the breach, and AMS cannot demonstrate that was reasonably foreseeable by Intersil that harm would occur to Plaintiff by virtue of use of the ATS in its products.

21.     Confidentiality, and thus damages for breach, terminated when the ATS became known to the public, including Intersil, by virtue of Plaintiff's sales of its products or by reverse-engineering.

22.     To the extent that the Court permits proof as to any confidential information different from the ATS, there are no reasonable royalty damages in the scenario where such information was publicly known or used by Intersil before June 2004 or otherwise not confidential under the Confidentiality Agreement, not presented or shown at the first trial to have been misused by Intersil for the current basis of breach of contract, or subject to an otherwise permissible use under the Confidentiality Agreement.  Nor can AMS' experts testify on damages based on theories not presented at the first trial.  For example, the CAFC has expressly determined that a "theory of use of detailed financial information in the actual building of products was not TAOS's theory of liability at trial." *Tex. Advanced*, 895 F.3d at 1315.  AMS and its expert, Dr. Ugone, have failed to follow the CAFC's determination. This Court's vacation of breach of contract damages also observed that Dr. Ugone at the first trial failed to distinguish between permissible and impermissible grounds for liability.  Dkt #682 at 21.

23.     The only confidential information subject to AMS' breach of contract claim for reasonable royalty damages is the ATS.  No other asserted confidential information has been shown to have been used by Intersil in violation of the Confidentiality Agreement, including because AMS did not present it at the first trial[7] or it did not survive the CAFC's appellate review (plastic packaging and Build v. Buy).[8]   Further, based on AMS own witnesses, any other alleged confidential information beyond the ATS is worth either nothing or less than 1% of any argued value.

24.     Reasonable royalty damages for breach of contract only covers the accused Intersil products that AMS demonstrates incorporate the ATS or were derived from (i.e., substantially copied from) the ATS and were sold during the period of any hypothetical license, which ends at the date the ATS became publicly known.  AMS is not entitled to reasonable royalty damages on any ambient light sensors that do not incorporate the ATS, and particularly upon so-called "derivative" products as to which AMS has admitted do not use the ATS.  AMS has failed to carry its burden that such products "use" the ATS. "Derived from" means substantially copied from.  Nor would any hypothetical party to a hypothetical negotiation be willing to pay royalties on products not incorporating the ATS (or other confidential information that AMS is permitted to present).

25.     AMS cannot carry its burden to include the so-called derivative products because they were derived not from TAOS' technology but instead from Intersil's own photodetector integrated circuit ("PDIC") products, which had used the ATS, and information in patent documents and various other public information.  The so-called "derivative" products also do not use the ATS and indeed moved away from it because those products used Intersil's internally

---

[7]   AMS presented a three-item trade secret list to the Court on the first day of the 2015 trial, telling the Court that it was a narrowed list from a ten-page interrogatory response.  At trial, AMS did not present categories of confidential information for its breach of contract claim separate and apart from its asserted trade secrets.

[8]   For plastic packaging, the CAFC stated that "The same evidence shows that Intersil's use of plastic packaging is permitted by the Confidentiality Agreement regardless of TAOS's disclosure of its glass packaging roadmap."  *Id.* at 1313 n. 3.  For Build v. Buy, the CAFC determined that Intersil's use of "TAOS's information for the 'Build vs. Buy' analysis … was contractually permitted."  *Id.* at 1314.

developed and patented color filter technology, which TAOS and AMS have stated is different from TAOS' technology.   Certain of the so-called derivative products do not even have a 1:1 interleaved structure.

26.     Reasonable royalty damages are also unavailable on so-called "derivative" products in view of AMS' admission that such products do not use the ATS.  Those products use what is akin to "non-infringing" alternatives to AMS' asserted structural trade secret.  As outlined above, such products further rejected the use of the ATS and any argued associated confidential information (to the extent permitted to be presented by AMS).

27.     Reasonable royalty damages also require apportionment, and the term of any hypothetical license would be no more than three years (and likely as little as a few months).

28.     AMS is not entitled to any double recovery of damages for its misappropriation and breach of contract claims.  AMS previously elected not to proceed to judgment on its breach of contract claim and is bound by that.

29.     AMS is not entitled, under California law or otherwise, to attorneys' fees for any of its claims, including trade secret misappropriation or breach of contract.

30.     AMS cannot raise issues on remand that it appealed and lost, or could have appealed but did not, are inconsistent with the CAFC decision issued in this case, under the doctrines of law of the case, mandate rule, collateral estoppel, res judicata, issue preclusion, claim preclusion, forfeiture, and/or waiver.

31.     AMS cannot raise patent infringement at the remand trial as it has told the Court that it is not pursuing patent infringement damages and it did not include patent infringement in its Identification of Claims for Trial (Dkt #687).  It also cannot raise tortious interference in view of the rulings against it on that claim.

32.     Renesas requests that this Court deny AMS the relief it seeks, and requests that the Court award Renesas all relief to which it is justly entitled.[9]

---

**9**   [9] Any statement made herein relating to certain rulings are made with the understanding that Renesas preserves its rights to appeal any rulings.

## V.     STIPULATIONS AND UNCONTESTED FACTS

The parties agree to the following stipulations and uncontested facts. The parties agree that the inclusion of these facts shall not preclude or limit any party from presenting evidence relating to these stipulations and uncontested facts at trial. The exclusion of other facts from these stipulations and uncontested facts, including a party's decision not to propose such stipulated facts, shall not be deemed an admission by either party that such facts are not already established as a matter of law.

### A.     Background of the Plaintiff

1.      Around 1998, Texas Instruments (TI) decided to shut down or sell its optoelectronics business (optoelectronics product group). As the manager of this optoelectronics product group, Kirk Laney formed a new company Texas Advanced Optoelectronics Solutions ("TAOS") to acquire and continue this business under license from TI.

2.      Plaintiff's current corporate name is AMS Sensors USA Inc.

### B.     Background of the Defendant

3.      Defendant Renesas Electronics America Inc. ("Renesas") was formerly known as Intersil Corporation..

4.      Intersil was acquired by Renesas in 2017.

### C.     TAOS's ALS Products.

5.      In early 2001, TAOS began developing the TSL2550 ambient light sensor.[10]

6.      TAOS released the TSL2550 in 2002.[11]

7.      In late 2002, TAOS began development of its second generation TSL2560 ALS with digital output.[12]

---

[10] *TAOS I*, 895 F.3d at 1309.

[11] *TAOS I*, 895 F.3d at 1309.

[12] *TAOS I*, 895 F.3d at 1309.

**D.**     **The TAOS/Intersil 2004 Meetings**

8.     TAOS and Intersil engaged in due diligence meetings throughout June 2004.[13]

9.     Intersil offered to buy TAOS in June 2004.[14]

10.     Negotiations between Intersil and TAOS ended in August 2004 after a series of offers and counteroffers that failed to result in an agreement.[15]

**E.**     **Intersil's ALS Products**

**1.**     **The EL7900**

11.     The EL7900 was an analog output product and not a digital output product.  The "EL" designation stood for Elantec, a company that Intersil had acquired in 2003 and for whom Intersil engineer Brian North had previously worked.

12.     The EL7900 included a single, large light-sensing photodiode, analog amplifiers, and output a single analog current.  The EL7900 did not include an inter-integrated circuit (I2C) interface, was not programmable, did not have an analog-to-digital (A/D) converter

13.     The EL7900 was released on June 30, 2005.

**2.**     **The EL7903/ISL29001**

14.     Intersil released the ISL29001 on December 23, 2005.

**3.**     **The ISL29003**

15.     Intersil released the ISL29003 on October 23, 2006.

**4.**     **Intersil's Reverse Engineering of the TSL2560**

16.     Intersil obtained and analyzed the TSL2560 on January 30, 2006.

17.     Intersil's analysis of the TSL2560 on January 30, 2006 included reverse-engineering the product and using scanning electron microscopy (SEM) techniques to determine the structure of various components in the product.

---

**13** *TAOS I*, 895 F.3d at 1310.

**14** *TAOS I*, 895 F.3d at 1310.

**15** *TAOS I*, 895 F.3d at 1310.

## VI.   CONTESTED ISSUES OF FACT AND LAW

The parties identify the following issues of fact and law that remain to be litigated. The parties reserve the right to identify additional factual or legal issues that may arise.

### A.   TAOS's Statement of Contested Issues of Fact and Law:

By providing this statement, TAOS does not concede that all of these issues are appropriate for trial. TAOS also does not waive any of its pending or future filed motions or evidentiary objections, which, if granted, would render some or all of these issues moot.

1.   The date in which TAOS's trade secret became properly accessible to Intersil after the date of Intersil's misappropriation.

2.   The duration of any head start limitation applicable to the remedy of disgorgement (i.e. unjust enrichment) for trade secret misappropriation.

3.   The dollar amount of Intersil's profits that should be disgorged as a result of Intersil's trade secret misappropriation.

4.   The dollar amount of exemplary damages that should be awarded as a result of Intersil's trade secret misappropriation.

5.   The dollar amount of reasonable royalty damages under the *Georgia Pacific* framework adequate to compensate TAOS for Intersil's breach of the Confidentiality Agreement.

6.   The dollar amount of attorneys' fees to which TAOS is entitled pursuant to the terms of its Confidentiality Agreement with Intersil under California law.

7.   The dollar amount of TAOS's costs.

8.   The dollar amount of pre-judgment and post-judgment interest.

### B.   Renesas Statement of Contested Issues of Fact and Law:

By providing this statement, Renesas does not concede that all of these issues are appropriate for trial.  Renesas also does not waive any of its pending or future filed motions or evidentiary objections, which, if granted, would render some or all of these issues moot.

1.   Which, if any, of the Accused Intersil ALS Products implemented the ATS other than the ISL29001.

2.      The date at which the ATS became properly accessible to Intersil.

3.      The duration of any head start period to recreate the ATS in a product, which duration begins at the date of proper accessibility.

4.      The apportioned value of the ATS.

5.      Whether AMS has demonstrated that any asserted monetary relief was proximately caused by Intersil's use of the ATS.

6.      Apportionment of any argued monetary relief for the ATS misappropriation relative to the previously asserted trade secrets (plastic packaging and Build v. Buy) and/or relative to other product features other than the ATS.

7.      If the ISL29003 ALS is found to use the ATS, and causation is shown, the monetary remedy for disgorgement is limited at least by Intersil's apportioned net profits of the covered sales of the ISL29003 ALS that occurred within the head start period.

8.      Whether AMS has demonstrated entitlement to exemplary damages for trade secret misappropriation, and if so, the amount of any such exemplary damages.

9.      The date the ATS became publicly known under the Confidentiality Agreement by virtue of Plaintiff's release or sale of its products or the date or known to Intersil by virtue of its reverse engineering of Plaintiff's products.

10.     Whether any breach of contract damages to Plaintiff resulting from use of the ATS were reasonably foreseeable.

11.     The amount of reasonably foreseeable breach of contract damages based on a reasonable royalty for a bare license to the ATS (or additional confidential information if AMS is permitted to present it) for those Intersil Products sold prior to the date that the ATS became publicly known that implemented the ATS or were derived from (i.e., substantially copied from) the ATS.

12.     Whether there is any duplicative recovery for any misappropriation and breach damages awarded.

13.     Whether any party is entitled to attorneys' fees, costs and/or pre-judgment and post-judgment interest, and if so, the amount.

## VII.   LIST OF WITNESSES

TAOS's witness list is attached as **Exhibit A**. TAOS's deposition designations and prior trial testimony designations are attached as **Exhibit B**.  Renesas reserves the right to file objections to those designations in view of their service on March 9, 2021 at 4 p.m.  Renesas' objections to Plaintiff's witnesses were filed as part of Dkt. 750.

Renesas' witness list is attached as **Exhibit C**. Renesas' deposition designations and prior trial testimony designations are attached as **Exhibit D**. TAOS's objections are attached as **Exhibit G**.

## VIII.   LIST OF EXHIBITS

TAOS's exhibit list is attached as **Exhibit E**. Renesas's objections were filed as part of Dkt. #750.

Renesas's exhibit list is attached as **Exhibit F**.  TAOS's objections are attached as **Exhibit H**.

The parties reserve the right to use any exhibits identified by other parties as potential exhibits. The parties reserve the right to use demonstrative exhibits at trial, which do not appear on their respective exhibit lists. The parties reserve the right to use additional exhibits for impeachment, irrespective of whether they appear on their respective exhibit lists.

## IX.   LIST OF ANY PENDING MOTIONS

- Plaintiff's Motions in Limine (Dkt. #730)
- Defendant's Motions in Limine (Dkt. #732)

## X.   PROBABLE LENGTH OF TRIAL

Currently, the parties estimate that the probable length of trial is five to seven business days.

### XI.    MANAGEMENT CONFERENCE LIMITATIONS

None.

### XII.   PROPOSALS FOR CONDUCT OF TRIAL

#### A.    TAOS's Proposal:

TAOS seeks a trial on the amount of monetary relief to which it is entitled on its claims for trade secret misappropriation and breach of contract. TAOS requests an advisory jury on the amount of disgorgement for trade secret misappropriation,[16] with findings of fact and conclusions of law to be entered by the Court.[17] TAOS requests a jury trial on all remaining questions pertaining to monetary relief that were decided by a jury in the first trial without objection from Renesas, including: the amount of exemplary damages to be awarded for trade secret misappropriation,[18] and the amount of a reasonable royalty to be awarded for Renesas's breach of contract.[19] Attorneys' fees, costs, and pre-judgment and post-judgment interest will be decided by the Court upon post-trial motions.[20]

#### B.    Renesas's Proposal:

Renesas seeks a bench trial on the amount (if any) of disgorgement monetary relief to which AMS is entitled on its claim for trade secret misappropriation, with findings of fact and

---

**16**   *See* Fed. R. Civ. P. 39(c)(1) ("In an action not triable of right by a jury, the court, on motion or on its own: may try any issue with an advisory jury[.]"); *see also TAOS I*, 895 F.3d at 1326 ("We conclude, therefore, that TAOS has no right to a jury decision on its request for disgorgement of Intersil's profits as a remedy for trade secret misappropriation.").

**17**   *See* Fed. R. Civ. P. 52(a)(1) ("In an action tried on the facts … with an advisory jury, the court must find the facts specially and state its conclusions of law separately." *TAOS I*, 895 F.3d at 1319 (remanding for "decision on disgorgement by the trial court, with findings of fact **and** conclusions of law duly entered in accordance with Rule 52").

**18**   *See* Dkt. #511 at 3; *see also* Fed. R. Civ. P. 38(a). Notwithstanding Intersil's waiver of any objection to a jury's determination of exemplary damages, the Seventh Amendment guarantees TAOS's right to such a jury determination. *See, e.g.*, *Pacific Mutual Life Ins. Co. v. Haslip*, 499 U.S. 1, 15 (1991) ("Under the traditional common-law approach, the amount of the punitive award is initially determined by a jury …."); *Defender Indus., Inc. v. Nw. Mut. Life Ins.*, 938 F.2d 502, 507 (4th Cir. 1991) ("An assessment by a jury of the amount of punitive damages is an inherent and fundamental element of the common-law right to trial by jury. Therefore, we hold that the [S]eventh [A]mendment guarantees the right to a jury determination of the amount of punitive damages[.]").

**19**   *See* Dkt. #511 at 2; *see also* Fed. R. Civ. P. 38(a).

**20**   *See* Fed. R. Civ. P. 54(d)(2).

conclusions of law to be entered by the Court.  This includes any form of monetary relief, including compensatory or exemplary damages.  Renesas believes that presenting these to a jury will be prejudicial to Renesas.  Renesas does not object to having a jury decide the amount (if any) of a reasonable royalty relating to AMS' breach of contract claim, although it believes that use of a jury for that will be unnecessarily time-consuming.  All requests for attorneys' fees, costs, and pre-judgment and post-judgment interest will be decided by the Court upon post-trial motions.

## XIII.  <u>CERTIFICATIONS</u>

The undersigned counsel for each of the parties in this action do hereby certify and acknowledge the following:

(1) Full and complete disclosure has been made in accordance with the Federal Rules of Civil Procedure and the Court's orders;

(2) Discovery limitations set forth in the Federal Rules of Civil Procedure, the Local Rules, and the Court's orders have been complied with;

(3) Each exhibit in the List of Exhibits herein:

    (a)    is in existence;

    (b)    is numbered; and

    (c)    has been disclosed and shown to opposing counsel.

Approved as to form and substance:

Attorneys for Plaintiff(s):       _/s/ Michael A. McCabe_____

Attorneys for Defendant(s):     _/s/ William J. Robinson (with permission)_____

(Note: An attorney of record may sign and certify this order on behalf of opposing counsel with permission.")

This Joint Pre-Trial Order is hereby approved this 24th day of March, 2021.

**SIGNED this 24th day of March, 2021.**


_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE

**Exhibits to Joint Pretrial Order**

| Exhibit | Description |
|---------|-------------|
| A | Plaintiff's Witness List |
| B | Plaintiff's List of Deposition and Prior Trial Testimony Designations |
| C | Defendant's Witness List |
| D | Defendant's List of Deposition and Prior Trial Testimony Designations |
| E | Plaintiff's Exhibit List |
| F | Defendant's Exhibit List |
| G | Plaintiff's Objections to Defendant's List of Deposition and Prior Trial Testimony Designations |
| H | Plaintiff's Objections to Defendant's Exhibit List |

Respectfully submitted,

| | |
|---|---|
| */s/ Michael A. McCabe* | */s/ William J. Robinson (with permission)* |
| Michael A. McCabe | William J. Robinson |
| Texas Bar No. 24007628 | Justin M. Sobaje |
| mmccabe@munckwilson.com | **FOLEY & LARDNER LLP** |
| Robert D. McCutcheon | 555 South Flower Street, Suite 3300 |
| Texas Bar No. 00789480 | Los Angeles, CA 90071-2411 |
| rmccutcheon@munckwilson.com | Tel: 213.972.4500 |
| William A. Munck | Fax: 213.486.0065 |
| Texas Bar No. 00786127 | email: wrobinson@foley.com |
| wmunck@munckwilson.com | email: jsobaje@foley.com |
| Michael C. Wilson | |
| Texas Bar No. 21704590 | Pavan K. Agarwal |
| mwilson@munckwilson.com | **FOLEY & LARDNER LLP** |
| Jordan C. Strauss | 3000 K Street, N.W., Suite 600 |
| Texas Bar No. 24088480 | Washington, D.C. 20007-5109 |
| jstrauss@munckwilson.com | Tel: 202.672.5300 |
| Chase A. Cobern | Fax: 202.672.5399 |
| Texas Bar No. 24101633 | email: pagarwal@foley.com |
| ccobern@munckwilson.com | |
| **MUNCK WILSON MANDALA, LLP** | **SIEBMAN FORREST** |
| 600 Banner Place | 300 N. Travis Street |
| 12770 Coit Road | Sherman, Texas 75090 |
| Dallas, Texas 75251 | (903) 870-0070 |
| Telephone: 972.628.3600 | email: clydesiebman@siebman.com |
| Telecopier:  972.628.3616 | **ATTORNEYS FOR RENESAS** |
| **ATTORNEYS FOR** | **ELECTRONIC AMERICA, INC.** |
| **TEXAS ADVANCED** | |
| **OPTOELECTRONIC SOLUTIONS, INC.** | |

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the above and foregoing was served on all counsel

of record via CM/ECF on March 10, 2021

*/s/ Michael A. McCabe*
Michael A. McCabe