# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| AMS SENSORS USA INC. f/k/a TEXAS ADVANCED OPTOELECTRONIC SOLUTIONS, INC.<br><br>v.<br><br>RENESAS ELECTRONICS AMERICA INC. f/k/a INTERSIL CORPORATION | § § § § § § § § § § | Civil Action No. 4:08-cv-00451<br>Judge Mazzant |

## MEMORANDUM OPINION AND ORDER

Several motions are pending before the Court. Plaintiff moved to preclude Defendant from (1) raising the "Green Color Filter defense" (Dkt. #777) and (2) asserting certain prior art as evidence of derivation (Dkt. #776). Defendant moved for a new trial on exemplary damages (Dkt. #782) and to exclude Plaintiff's experts (Dkt. #779, #780).

Having considered the parties' detailed arguments over several letters and hearings, the Court finds that Plaintiff's motions should be **GRANTED** (Dkt. #777, #776) and Defendant's motions should be **DENIED** (Dkt. #782, #779, #780).

### BACKGROUND

**I.    The First Trial**

The parties develop and sell ambient light sensors, which are used in electronic devices to adjust screen brightness in response to incident light.

In the summer of 2004, the parties confidentially shared technical and financial information during negotiations for a potential acquisition.[1] In August 2004, the parties went their separate

---

[1] For simplicity's sake, the Court refers to the parties as "Plaintiff" and "Defendant." When quoting briefing or prior rulings, the Court does not alter the quotations. As such, some quotations may refer to the parties by their current names or former names, and sometimes a mix of both.

ways. Soon after, Defendant Renesas Electronics America Inc. f/k/a Intersil Corporation ("Renesas" f/k/a "Intersil") released new sensors with the technical design Plaintiff AMS Sensors USA Inc. f/k/a Texas Advanced Optoelectronic Solutions, Inc. ("AMS" f/k/a "TAOS") disclosed in the confidential negotiations. In January 2005, Plaintiff won a contract from Apple for the first-generation iPhone. In February 2005, Plaintiff released its product that contained the confidential technology. In January 2006, Defendant reverse-engineered that product. In March 2008, Defendant won a contract from Apple for the second-generation iPhone.

On November 25, 2008, Plaintiff sued for patent infringement, breach of contract, trade secret misappropriation, and tortious interference with prospective business relations (Dkt. #1). The trade secret claim asserted one technical trade secret and two financial trade secrets.

After a trial in early 2015, a jury returned a verdict for Plaintiff and awarded damages on all four claims. The Court ruled on the parties' post-trial motions and entered final judgment. Both parties appealed.

## II. The Federal Circuit Mandate

The Federal Circuit wrote a lengthy opinion, affirming in part, reversing in part, vacating in part, and remanding the case (Dkt. #614). Among its rulings, the Federal Circuit affirmed liability for trade misrepresentation, but only on the technical trade secret. It identified the single "asserted trade secret" ("ATS") as "a structure that includes *both* a 1:1 ratio of shielded to unshielded wells *and* interleaving of the wells in that ratio, *i.e.*, repetition of the 1:1 ratio in an alternating pattern (requiring more than one set of wells)." *Tex. Advanced Optoelectronic Sols., Inc. v. Renesas Elecs. Am., Inc*., 895 F.3d 1304, 1313 (Fed. Cir. 2018) (hereinafter "*TAOS*") (emphasis original). Liability for the two financial trade secrets was vacated.

The misappropriation damages were overturned for two independent reasons: (1) Plaintiff's expert "did not explain which of the trade secrets contributed to what amount of profit to be disgorged" and (2) the ATS "was accessible to Intersil by proper means long before the time of many of the sales included in TAOS's request for monetary relief." *Id.* at 1317. "On remand, any determination of sales-based monetary relief for trade secret misappropriation requires evidence and a determination of the time at which the trade secret became properly accessible to Intersil and the duration of any head-start period." *Id.* at 1318.

### III.     On Remand

On remand, the parties dispute damages. On August 9, 2019, Judge Schell[2] transferred this case to the undersigned (Dkt. #662).

On November 25, 2019, Plaintiff moved for Entry of Final Judgment (Dkt. #672). The Court denied the motion on March 27, 2020 (Dkt. #682). Plaintiff moved for reconsideration (Dkt. #686). The Court denied the motion and reiterated it was bound by the Federal Circuit's opinion (Dkt. #696). In the months before trial, the Court resolved numerous *Daubert* motions (Dkt. #736, #737, #745).

### IV.     The Present Motions

As trial approaches, the parties disagree how to interpret and apply the Federal Circuit's opinion. On March 22, 2021, the Court held a pretrial conference (Dkt. #771). On March 24, 2021, the Court continued the pretrial conference (Dkt. #783). A third continuation is scheduled for March 31, 2021.

Over a few days, the parties filed nine letters with the Court. On March 23, 2021, Plaintiff filed a trial brief on the so-called "green color filter defense" (Dkt. #777) and a supplemental

---

[2] United States Senior District Judge Richard Schell assumed senior status on March 10, 2015.

motion in limine on derivative products (Dkt. #776).  The next day, Defendant opposed those motions (Dkt. #781).  Defendant also moved to exclude Plaintiff's technical expert (Dkt. #780) and financial expert (Dkt. #779), as well as a request for a new trial on exemplary damages (Dkt. #782).  Shortly thereafter, Plaintiff opposed the request for a new trial (Dkt. #787), replied in support of its green color filter argument (Dkt. #788), and opposed the motions to exclude (Dkt. #789).  The Court addresses each dispute in turn.

## LEGAL STANDARD

The law of the case doctrine provides that "an issue of law or fact decided on appeal may not be reexamined either by the district court on remand or by the appellate court on a subsequent appeal." *Vine v. PLS Fin. Servs., Inc.*, No. 4:18-CV-00450, 2019 WL 4257108, at *7 (E.D. Tex. Sept. 9, 2019) (quoting *Fuhrman v. Dretke*, 442 F.3d 893, 896 (5th Cir. 1978)). "The duty of a lower court to follow what has been decided at an earlier stage of the case comprehends things decided by necessary implication as well as those decided explicitly." *Terrell v. Household Goods Carriers' Bureau*, 494 F.2d 16, 19 (5th Cir. 1974).

## ANALYSIS

**I.     Plaintiff's motion to preclude Defendant's "green color filter defense"**

Defendant intends to argue that the accused products do not misappropriate the trade secret because the products contain a green color filter.  The trade secret is a structure including, in part, a 1:1 ratio of shielded to unshielded wells.  *TAOS*, 895 F.3d at 1313.  Defendant asserts that its products do not use "unshielded" diodes because of an overlaying green color filter (*See* Dkt. #777, Exhibit 1 (trial transcript)). Plaintiff asks the Court to preclude this so-called "green color filter defense" because it contradicts the Federal Circuit's opinion.  The Court agrees.

The parties are bound by the Federal Circuit's factual findings on the ISL29001, one of the accused products (*See* Dkt. #745). The Federal Circuit noted Plaintiff presented its ATS at trial as "allegedly used by Intersil in modifying its products (the EL7903/ISL29001)." *Id.* at 1312. After a thorough discussion, the Federal Circuit found "overwhelming evidence that Intersil learned of TAOS's design during the due diligence and changed its design soon after the negotiation fell through" based on "Intersil's lead engineer on the EL7903/ISL29001." *Id.* at 1316. The engineer "confirmed that, before the EL7903, he had never designed a structure with interleaved shielded and exposed diodes," as well as "documents show[ing] that Intersil changed the structure of the EL7903 to incorporate the 1:1 interleaved diode array structure after the end of the due diligence meetings in August 2004." *Id.*

These findings demonstrate that Defendant's EL7903/ISL29001 use the ATS. The Federal Circuit separately defined the ATS as "a structure that includes *both* a 1:1 ratio of shielded to unshielded wells *and* interleaving of the wells in that ratio, *i.e.*, repetition of the 1:1 ratio in an alternating pattern (requiring more than one set of wells)." *Id.* at 1313 (emphasis original). When discussing the EL7903/ISL29001, the Federal Circuit repeated this language, indicating that the product used the ATS. For example, the EL7903/ISL29001 contained "interleaved shielded and exposed diodes" and "incorporate[d] the 1:1 interleaved diode array structure." *Id.* at 1316. The Federal Circuit contextualized these features as being incorporated "after the negotiation fell through" and "after the end of the due diligence meetings in August 2004." *Id.* These statements reference the time of misappropriation. The Federal Circuit therefore found that Defendant's EL7903/ISL29001 used the ATS and Defendant may not contradict this.

The ISL29001 contains a green filter. Even though the ISL29001 has a green filter, the Federal Circuit found the product used the trade secret. As the Federal Circuit found that the

5

ISL29001 used the trade secret, the green filter does not absolve liability. In 2015, Defendant vigorously argued that the accused products do not use the trade secret because of these green color filters. Because the trade secret requires a structure containing both shielded and unshielded cells, if the accused products do not contain unshielded cells then there is no misappropriation. Defendant's argument goes that if a cell contains a color filter, then it is a "shielded" cell. But this argument was rejected by the first jury and the Federal Circuit. The Federal Circuit determined by necessary implication that a green color filter over an otherwise unshielded diode does not "shield" the diode. Defendant therefore cannot argue that a green color filter over an otherwise unshielded diode renders it shielded.

On remand, Defendant raises the same argument about green color filters. Defendant tries to thread the needle by asserting that the ISL29001 does not use the green color filter in the same way as the other accused products:

> The other products at issue don't have, for example, a metallized layer which is part of the ATS. They have stacked red and green filters on top of that. They were highly advanced past the initial 29001. So the fact that a green filter was used in one product that had a 1:1 ratio does not mean other products which used other color filters over different parts of the products that didn't have a 1:1 ratio are bound by it.

(Dkt. #793 at 81:16-25). This muddles the issue. Of course, if an accused product does not have the protected 1:1 structure, then it does not use the trade secret. The trade secret requires a specific repeating structure that is either present or not. Instead, the issue is whether Defendant may contradict the Federal Circuit's narrow finding about green color filters. It may not.

Defendant may not argue that the green color filter renders a diode "shielded." If the Defendant were to do so, the implication would be that the ISL29001 does not use the trade secret. As the Federal Circuit already determined the ISL29001 used the trade secret, green filter and all, this argument is untenable.

Thus, the Court grants Plaintiff's request to preclude the green color filter defense. Defendant may not contradict the Federal Circuit's opinion, which implicitly includes a finding that the "color filter" defense is inadequate.

## II. Plaintiff's motion to preclude certain prior art as evidence of derivation

Plaintiff intends to argue that certain accused products are derived from the trade secret and should therefore be included in damages (Dkt. #712, Exhibit 3 at ¶ 20). Under Texas law, Defendant may argue that these "derivative" products are "derive[d] from other sources of information" and so do not actually use the trade secret (Dkt. #737 at p. 19 (citing RESTATEMENT (THIRD) OF UNFAIR COMPETITION § 40 (1995))). To do so, Defendant will rely on prior art that was used in the first trial. Plaintiff asks the Court to exclude this prior art as contradicting the Federal Circuit's findings on liability and for being confusing to the jury. The Court agrees.

Back in 2015, Defendant used prior art as evidence that the trade secret was not secret. This was unpersuasive to the jury, which found liability. The Federal Circuit affirmed this finding for the ATS and determined "there was no evidence of Intersil's independent design." *TAOS*, 895 F.3d at 1316. To the contrary, the Federal Circuit recognized "overwhelming evidence that Intersil learned of TAOS's design during the due diligence and changed its design soon after negotiations fell through." *Id.*

Because of these findings, Defendant cannot argue that it derived its design from pre-2004 information. If there was "no evidence of Intersil's independent design" because Defendant "learned" of the trade secret from Plaintiff and "changed its design soon after," then Defendant did not derive those designs from the prior art. *See id.*

When the Federal Circuit affirmed liability, it affirmed the jury's factual findings. This includes finding Defendant acquired or discovered the trade secret improperly. Defendant argued

7

at the first trial that the accused products were attributable to this prior art. The jury was not persuaded, and this was implicitly affirmed by the Federal Circuit. As such, Defendant cannot relitigate what was previously decided. This includes a finding that, as of the time of misappropriation, Defendant did not derive the trade secret from an independent source. Accordingly, Defendant cannot argue that it derived the trade secret from an independent source available back in 2004.

In addition to contradicting the Federal Circuit's opinion, Defendant's argument would confuse the jury. *See* FED. R. EVID. 403. If Defendant argues it derived the trade secret from a pre-2004 document, a reasonable juror may wrongly conclude the trade secret was not misappropriated. Afterall, if Defendant derived the protected structure from public documents, then the trade secret was not a secret at the time of misappropriation. Defendant's prior art may confuse the jury into thinking that the trade secret was properly accessible prior to the misappropriation. As the trial requires determination of the date of proper accessibility, this type of confusion would likely necessitate a retrial. The Court therefore finds the disputed pieces of prior art are excluded as evidence of derivation.

### III. Defendant's motion for a new trial on exemplary damages

Defendant asks the Court for a new trial on exemplary damages. Defendant argues it is unclear whether the jury's finding of fraud, malice, or gross negligence, was based on the ATS or the vacated trade secrets. Because it is unclear, it is possible the jury's finding was not based on the ATS. Accordingly, Defendant argues that liability for punitive damages must be retried.

This argument overlooks the unambiguous verdict form. Question Five of the verdict form asked:

8

> Did the Plaintiff prove by clear and convincing evidence that the Defendant's misappropriation of the Plaintiff's trade **secrets** resulted from Defendant's fraud, malice, or gross negligence?

(Dkt. #511 at p. 3) (emphasis added). The jury answered "yes." (Dkt. #511 at p. 3).

The verdict form lumped all three trade secret theories together. It did not ask if *a* trade secret was misappropriated from Defendant's fraud. Nor did it ask if a plurality of Plaintiff's trade secrets were misappropriated from Defendant's fraud. Instead, the verdict form asked if "the" "trade secrets" were misappropriated from fraud. By lumping the three theories together, the jury could only answer "yes" if *all* trade secrets were misappropriated from Defendant's fraud. The jury's finding is therefore applicable to each theory of trade secret, including the ATS.

The Federal Circuit did not disturb the jury's finding of liability to each trade secret. The entirety of the Federal Circuit's opinion on exemplary damages stated: "The parties do not dispute that, if the disgorgement award is vacated, the same disposition is appropriate for the jury's award of exemplary damages. *We therefore vacate that award*." *Id.* at 1318 (emphasis added). The Federal Circuit vacated the exemplary damages *award*, not the underlying finding of liability. On remand, the jury's liability finding stands.

Defendant's arguments fall short. Defendant argues that the Federal Circuit "cannot remand for a new trial solely on punitive damages." (Dkt. #782 at p. 3). But the Federal Circuit remanded for a new trial on the entire damages award, including damages beyond punitive. Defendant also argues that retrying only exemplary damages would "run afoul of the Seventh Amendment" which "guarantees that one jury will never reexamine the findings of another." (Dkt. #782 at p. 3). Again, the Court is not retrying only exemplary damages. And it is precisely because "one jury" should "never reexamine the findings of another" that Defendant is precluded from

9

relitigating the underlying liability finding. The Court denies Defendant's motion for a new trial on trade secret misappropriation (Dkt. #782).

### IV. Defendant's motion to exclude Plaintiff's technical expert (Dkt. #780)

Defendant moves to exclude Joseph McAlexander's Second Supplemental Report (Dkt. #780). Defendant argues that Mr, McAlexander does not comply with this Court's prior *Daubert* ruling (*See* Dkt. #737).

As a threshold, Defendant's supplemental *Daubert* motion is untimely. During a March 16, 2021 hearing, the Court permitted Plaintiff to supplement Mr. McAlexander's report by 12 p.m. on March 19, 2021. "Defendant can raise objections at the pretrial conference on March 22nd." (Dkt. #767 at 7:7-8). Instead, Defendant moved to exclude Mr. McAlexander on March 24, 2021. Two days may seem like a small delay. But the Court specifically chose the supplemental schedule because of the impending trial date and this case's plethora of complex pretrial issues. Still, the Court considers Defendant's arguments.

First, Defendant argues Mr. McAlexander does not explicitly reject prior portions of his report that are problematic. But this is not necessary. As required, Mr. McAlexander confirms he will comply with the Federal Circuit's definition of the ATS. And Plaintiff assures the Court that it "intends to comport with this Court's rulings." (Dkt. #789 at p. 3). This is sufficient.

Second, Defendant argues Mr. McAlexander's opinion on the head-start period should be excluded because he "does not opine on time to recreate the ATS into an existing product." (Dkt. #780 at p. 2). Instead, Mr. McAlexander's "opinions are still based on full development of an entire product." (Dkt. #780 at p. 2). The Court rejected this argument the first time Defendant raised it:

> Texas precedence comports with the Federal Circuit's opinion, which recognized that the "limited head-start period . . . depend[s] upon the facts of each particular case." *TAOS*, 895

10

> F.3d at 1318 (citing *Hyde*, 158 Tex. at 589). The factfinder must determine the time necessary for Defendant to "recreate" the ATS in its own product. This may include additional time beyond strictly implementing the ATS, to account for the unfair "marketing advantage" gained from misappropriation. Plaintiff argues it would take many months to do so; Defendant argues it would be a snap. **Neither argument is wrong as a matter of law.** As such, the motion is denied on this basis.

(Dkt. #737 at p. 12) (emphasis added). Defendant ignores this passage.[3] The Court does not.

## V. Defendant's motion to exclude Plaintiff's financial expert (Dkt. #779)

Finally, Defendant moves to exclude Dr. Keith Ugone's Second Supplemental Report (Dkt. #779). Defendant argues Dr. Ugone does not comply with this Court's prior *Daubert* ruling (*See* Dkt. #736).

As discussed, Defendant's motion is untimely. During a March 16, 2021 hearing, the Court permitted Defendant "to raise objections" to Dr. Ugone's supplemental report "at the pretrial conference on Tuesday the 22nd at that time." (Dkt. #767 at 8:20-22).[4] Defendant moved to exclude Dr. Ugone on March 24, 2021. Still, the Court considers Defendant's arguments.

Defendant argues Dr. Ugone includes sales beyond the head-start period. The parties dispute whether design win and supply contract sales should be included in damages when payment did not occur until after the head-start period. During the March 24, 2021 hearing, the Court resolved this issue:

> I know there's a dispute among the parties whether the design win and the supply contract sale should be included. I'm going to allow that evidence to come in. What I am going to ask the plaintiff to do is segregate all of that in terms of damage calculations so the Court can parse out that if I need to.

(Dkt. #793 at 94:2-8).

---

[3] The Court's Orders are not a rough draft, "subject to revision and reconsideration at a litigant's pleasure." *A&C Constr. & Installation, Co. WLL v. Zurich Am. Ins. Co.*, 963 F.3d 705, 709 (7th Cir. 2020).

[4] At the March 16, 2021, the Court momentarily confused the parties. After correctly addressing the parties, the Court stated "I will allow that any supplemental report by *defendant* can be filed by Friday March 19th, and that will allow the *plaintiff* to raise objections at the pretrial conference on Tuesday the 22nd at that time." (Dkt. #767 at 8:18-22). However, Dr. Ugone is Plaintiff's financial expert. As such, *Plaintiff* would serve the supplemental report and *Defendant* would object. The Court otherwise addressed the parties properly.

As the Court previously held, sales made during the head-start period may be included in damages even if payment was not realized until after the period. The Court understands Defendant views the head-start period as a strict cutoff date. However, the Federal Circuit's opinion does not directly address the issue of design wins and supply contracts. As these sales go to disgorgement, an equitable remedy, the jury's finding is only an advisory opinion. The Court finds these disputed sales should come in to provide the jury, and the Court, the greatest context.

TAOS should clearly distinguish between the undisputed sales and these disputed sales when it puts on its evidence. Depending on the jury's verdict, the Court may need to reach this issue for disgorgement. In the event it does so, the Court may consider whether these disputed sales are legally permissible as a disgorgement remedy. As such, the record must clearly reflect which sales fall outside of the head-start period, under Defendant's view of the law.

## CONCLUSION

It is therefore **ORDERED** that Plaintiff's motion to preclude Defendant from raising the "Green Color Filter defense" (Dkt. #777) is hereby **GRANTED**.

It is further **ORDERED** that Plaintiff's motion to preclude Defendant from asserting certain prior art as evidence of derivation (Dkt. #776) is hereby **GRANTED**.

It is further **ORDERED** that Defendant's motion for a new trial on exemplary damages (Dkt. # 782) is hereby **DENIED**.

It is further **ORDERED** that Defendant's motions to Exclude Plaintiff's Technical Expert (Dkt. #780) and Plaintiff's Financial Expert (Dkt. #779) are hereby **DENIED**.

**SIGNED this 30th day of March, 2021.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE