# United States District Court

**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| AMS SENSORS USA INC. f/k/a | § | |
| TEXAS ADVANCED OPTOELECTRONIC | § | |
| SOLUTIONS, INC. | § | Civil Action No.  4:08-cv-00451 |
| | § | Judge Mazzant |
| v. | § | |
| | § | |
| RENESAS ELECTRONICS AMERICA | § | |
| INC. f/k/a INTERSIL CORPORATION | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Pending before the Court is Defendant's Motion to Strike Plaintiff's Election of Remedies

(Dkt. #843).  Having considered the Motion and the relevant briefing, the Court finds the Motion

should be **GRANTED in part** and **DENIED in part**.

## BACKGROUND

### I.        The First Trial

The parties develop and sell ambient light sensors, which are used in electronic devices to

adjust screen brightness in response to incident light.

In the summer of 2004, the parties confidentially shared technical and financial information

during negotiations for a potential acquisition.[1]  In August 2004, the parties went their separate

ways.   Soon after, Defendant Renesas Electronics America Inc. f/k/a Intersil Corporation

("Renesas" f/k/a "Intersil") released new sensors with the technical design Plaintiff AMS Sensors

USA Inc. f/k/a Texas Advanced Optoelectronic Solutions, Inc. ("AMS" f/k/a "TAOS") disclosed

in the confidential negotiations.  In January 2005, Plaintiff won a contract from Apple for the first-

---

[1] For simplicity's sake, the Court refers to the parties as "Plaintiff" and "Defendant."  When quoting briefing or prior rulings, the Court does not alter the quotations.  As such, some quotations may refer to the parties by their current names or former names, and sometimes a mix of both.

generation iPhone.  In February 2005, Plaintiff released its product that contained the confidential technology.  In January 2006, Defendant reverse-engineered that product.  In March 2008, Defendant won a contract from Apple for the second-generation iPhone.

On November 25, 2008, Plaintiff sued for patent infringement, breach of contract, trade secret misappropriation, and tortious interference with prospective business relations (Dkt. #1). The trade secret claim asserted one technical trade secret and two financial trade secrets.

After a trial in early 2015, a jury returned a verdict for Plaintiff and awarded damages on all four claims.  The Court ruled on the parties' post-trial motions and entered final judgment. Both parties appealed.

## II.        The Federal Circuit Mandate

The Federal Circuit wrote a lengthy opinion, affirming in part, reversing in part, vacating in part, and remanding the case (Dkt. #614).  Among its rulings, the Federal Circuit affirmed liability for trade secret misappropriation, but only on the technical trade secret.  It identified the single "asserted trade secret" ("ATS") as "a structure that includes *both* a 1:1 ratio of shielded to unshielded wells *and* interleaving of the wells in that ratio, *i.e.*, repetition of the 1:1 ratio in an alternating pattern (requiring more than one set of wells)."  *Tex. Advanced Optoelectronic Sols., Inc. v. Renesas Elecs. Am., Inc.*, 895 F.3d 1304, 1313 (Fed. Cir. 2018) (hereinafter "*TAOS*") (emphasis original).  Liability for the two financial trade secrets was vacated.

The misappropriation damages were overturned for two independent reasons: (1) Plaintiff's expert "did not explain which of the trade secrets contributed to what amount of profit to be disgorged" and (2) the ATS "was accessible to Intersil by proper means long before the time of many of the sales included in TAOS's request for monetary relief."  *Id.* at 1317.  The Federal Circuit further explained the second reason:

> Such accessibility existed no later than January 2006, when Intersil successfully reverse-engineered the TSL2560, and perhaps as early as February 2005, when TAOS 'released' the TSL2560. . .
>
> . . . Secrecy protection terminated at the end of the period of time it would have taken Intersil, after Intersil's permissible discovery of the photodiode structure, to recreate that structure in its own products. . .
>
> . . . That limited head-start period, which 'depend[s] upon the facts of each case,' ends TAOS's entitlement to monetary relief.
>
> Here, the jury awarded disgorgement of profits in the exact amount TAOS's expert proposed, based on sales from April 2006 through March 2014. . .  TAOS's evidence supporting its claim to monetary relief for trade secret misappropriation did not limit the covered sales to a head-start period, and that omission cannot be deemed harmless.

*Id.* at 1317-18.  The Federal Circuit concluded:  "On remand, any determination of sales-based monetary relief for trade secret misappropriation requires evidence and a determination of the time at which the trade secret became properly accessible to Intersil and the duration of any head-start period."  *Id.* at 1318.

The Federal Circuit discussed additional errors with Plaintiff's disgorgement award.  In trade secret cases, plaintiffs sometimes use the defendants' gains as evidence of the plaintiffs' losses, or of the reasonable royalty.  But here, Plaintiff sought disgorgement of Defendant's profits without "any evidence or arguments that such profits soundly measured . . . TAOS's losses or a reasonable royalty."  *Id.* at 1320.  Defendant's profits were therefore not "a case-specific proxy for, TAOS's losses or a reasonable royalty."  *Id.*  There was "no evidence" that Defendant's profits from misappropriating Plaintiff's trade secret correlated with Plaintiff's losses.  *Id.* at 1321.  "For example, . . . TAOS has not identified evidence showing that it would have won the [Apple] contract had Intersil not used TAOS's photodiode array structure."  *Id.*

Finally, the Federal Circuit found that the patent infringement award was duplicative of the trade secret misappropriation award.  *Id.* at 1328.  The patent infringement award was based on the sale of four products.  *Id.*  The misappropriation award was based on the sales of these same

four products, as well as ten more.  *Id.*  The patent infringement award "was therefore duplicative of some portion of the disgorgement award for trade secret misappropriation, to the extent the awards cover the same period."  *Id.*  In other words, the patent award "covers sales . . . that are already part of the disgorgement award.  Such overlap is improper."  *Id.* at 1329.

## III.      On Remand

On remand, the parties dispute damages.  On August 9, 2019, Judge Schell[2] transferred this case to the undersigned (Dkt. #662).

On November 25, 2019, Plaintiff moved for Entry of Final Judgment (Dkt. #672).  The Court denied the motion on March 27, 2020 (Dkt. #682).  Relevantly, the Court concluded Plaintiff's tortious interference claim was eliminated on appeal (Dkt. #682 at p. 22).  The Federal Circuit found there was no causation between Defendant's trade secret misappropriation and its subsequent iPhone contract (Dkt. #682 at p. 22, n.11).  This Court was unequivocal:

> In light of the Federal Circuit's discussion . . ., there is no evidence to support any link between these underlying acts and Apple's decision to purchase Renesas's ambient light sensors for the iPhone 3G in 2008.
> . . .
> Renesas's other two arguments can be boiled down to one concept: Renesas did not win the Apple iPhone 3G contract using any misappropriated information or by using TAOS's patent subject matter; rather, as the Federal Circuit summarized the evidence at trial, Renesas won the contract "primarily" due to Renesas's "significantly lower bid price, made possible by using the (lower cost) plastic packaging." . . . The Court must agree.
> . . .
> Although the Federal Circuit's discussion was not directed at TAOS's tortious interference claim, the Court struggles to see how it is not the law of the case. [citations omitted].  And as the law of the case, the Court may not reexamine the Federal Circuit's determination that Apple's decision to award Renesas the iPhone 3G was driven by Renesas's use of low-price plastic packaging.

(Dkt. #682, pp. 22, 24-25).  The Court noted the Federal Circuit determined "that TAOS's only misappropriated trade secret was properly accessible to Renesas no later than January 2006."  (Dkt.

---

[2] United States Senior District Judge Richard Schell assumed senior status on March 10, 2015.

#682 at p. 26).  This "precludes TAOS from claiming that any misappropriated information interfered with any reasonably probable Apple business—Renesas did not even start contracting with Apple until after TAOS's [ATS] lost trade-secret status." (Dkt. #682 at pp. 26-27).

Plaintiff moved for reconsideration (Dkt. #686).  The Court denied the motion and reiterated it was bound by the law of the case as determined by the Federal Circuit (Dkt. #696).

## IV.      The Second Trial

On April 16, 2021, after a contentious two-week trial, the jury returned a verdict (Dkt. #824).  The jury determined Plaintiff should be awarded $21.8 million in monetary relief for its trade secret and contract claims, and $64 million in exemplary damages (Dkt. #824).[3]

## V.       The Present Motion

At the Court's direction, Plaintiff filed its election of remedies (Dkt. #842).  Specifically, Plaintiff asks the Court to award:

1. Disgorgement of profits from sales of the ISL29003 to Apple for use in the iPod Touch and to non-Apple customers through March 2008.

2. Disgorgement of profits from sales of the ISL29003 to Apple for use in the iPhone 3G.

3. Exemplary damages for trade secret misappropriation.

4. Royalty on all sales of Derivative Products.

5. Royalty on residual sales of Primary Products.

In short, Plaintiff asks to recover in part under both claims.  Defendant objects to this nontraditional approach and, on May 6, 2021, filed its Motion to Strike Plaintiff's Election of Remedies (Dkt. #843).  On May 27, 2021, Plaintiff responded (Dkt. #848).  On June 10, 2021, Defendant replied (Dkt. #849).  On June 21, 2021, Plaintiff filed its Sur-Reply (Dkt. #852).

## LEGAL STANDARD

---

[3] Disgorgement is an equitable remedy.  The Court is not bound by the jury's advisory opinion.  The Court will enter its findings of fact and conclusions of law after Plaintiff submits an amended election of remedies.

"A party that tries a case on alternative theories of recovery and obtains jury findings favorable on two or more theories has the right to a judgment on the theory entitling it to the greatest relief." *St. Paul Ins. Co. v. Rakkar*, 838 S.W.2d 622, 630 (Tex. App.—Dallas 1992, writ denied) (citing *Boyce Iron Works, Inc. v. Southwestern Bell Tel. Co.*, 747 S.W.2d 785, 787 (Tex.1988)).

However, a party is entitled "to but one satisfaction for the injuries sustained." *Mundheim v. Lepp*, No. 05-19-01490-CV, 2021 WL 1921122, at *8 (Tex. App.—Dallas May 13, 2021, no pet. h.). Under Texas law, "[a] party is not entitled to a double recovery." *Matter of 3 Star Properties, L.L.C.*, 19-20841, 2021 WL 3163768, at *9 (5th Cir. July 27, 2021). A double recovery exists when a plaintiff obtains more than one recovery for the same injury. *Estate of Lopez*, 10-18-00278-CV, 2021 WL 2252138, at *11 (Tex. App.—Waco May 21, 2021, pet. filed).

If the jury returns favorable findings on alternative theories, the prevailing party may "elect prior to judgment the recovery he wants by waiving the surplus findings with respect to the damages." *Kish v. Van Note*, 692 S.W.2d 463, 466–67 (Tex. 1985). This is called an election of remedies. An election of remedies is the choosing of one or "more inconsistent but coexistent modes of procedure and relief allowed by law on the same state of facts." *Custom Leasing, Inc. v. Texas Bank & Trust Company of Dallas,* 491 S.W.2d 869, 871 (Tex. 1973). The doctrine exists "to prevent a plaintiff from recovering twice for the same wrong, not to prevent a plaintiff from recovering once." *Malvino v. Delluniversita*, 840 F.3d 223, 234 (5th Cir. 2016); *see also Weeks Marine, Inc. v. Salinas*, 225 S.W.3d 311, 322 (Tex. App.—San Antonio 2007, pet. dism'd) ("The sole purpose of the doctrine of election of remedies is to prevent double recovery for a single wrong.").

6

Interpreting this caselaw, the Fifth Circuit holds that a prevailing party may not "pick and choose" damage elements arising under different theories. *Quest Med., Inc. v. Apprill*, 90 F.3d 1080, 1093 (5th Cir. 1996) (citing *Holland v. Hayden*, 901 S.W.2d 763 (Tex.App.—Houston [14th Dist.] 1995, writ denied)). Litigants "cannot cut and paste elements of relief arising from different theories of recovery." *Quest*, 90 F.3d at 1093–94. For example, the prevailing party cannot combine the exemplary damages award from one claim with the actual damages award from another claim. *Id.* ("Thus, Apprill cannot tack any exemplary damages award based on his [statutory fraud theory] or common-law fraud theories onto his [Texas Securities Act] actual damages award."). Similarly, the prevailing party cannot combine attorney's fees based on one claim with lost profits based on another claim. *See Am. Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 335–36 (5th Cir. 2008) (holding that allowing defendant "to receive both an attorney's fees award for contract breach and profits disgorgement under the Lanham Act would constitute impermissible picking and choosing among damage elements arising under different theories of recovery.").

If the prevailing party fails to elect their remedy, the Court "must enter judgment under the theory that affords the party the greatest recovery." *Quest*, 90 F.3d at 1093.

## ANALYSIS

Defendant asks the Court to strike Plaintiff's election of remedies. Defendant's various arguments boil down to: Plaintiff cannot have it all. Under Defendant's view of the law, Plaintiff must elect to recover under *either* trade secret misappropriation *or* breach of contract. Instead, Plaintiff elects portions of each remedy with laser precision (*See* Dkt. #843 at p. 12). Defendant argues this constitutes "picking and choosing" of damage elements. *See Am. Rice*, 518 F.3d 321; *Quest*, 90 F.3d at 1093-94.

7

Plaintiff disagrees.  Under Plaintiff's view of the law, its election artfully crafts a remedy that maximizes recovery—without double recovery—by electing remedies based on individual product sales.  This, Plaintiff argues, is not forbidden by the Fifth Circuit's interpretation of Texas law.

This is a complicated dispute.  To resolve it, the Court first explains what, exactly, Plaintiff requests.  Next the Court addresses the two big-picture disputes the parties have about Texas law on election of remedies.  Once the Court clarifies this law, the Court then applies it to each component of Plaintiff's requested remedy.

## I.        Plaintiff's Election of Remedies

Plaintiff asks the Court to award it *some* damages from *both* the trade secret misappropriation *and* the breach of contract claims, rather than electing *all* damages from *one* claim.  The jury's damages award can be represented visually as:



**Fig. 1.**  An organizational chart showing damages.  Both claims include damages for sales of the ISL29003.

The jury awarded damages for trade secret misappropriation and breach of contract.  Under the misappropriation claim, the jury awarded disgorged profits for ISL29003 sales and exemplary damages.  Under the breach claim, the jury awarded royalties on Derivative Products and on Primary Products.  The ISL29003 is one of the Primary Products.  As such, there are some ISL29003 sales that are included in both the disgorgement award and the Primary Products royalties award.

For the misappropriation claim, Plaintiff asks for the entire disgorgement award and the maximum exemplary damages allowed by law.  Specifically, the jury awarded $8,546,000 in disgorged profits from Defendant's ISL29003 sales through March 2008 and $64,000,000 in exemplary damages.  This is in line with the jury award (Dkt. #824).  Plaintiff also seeks disgorged profits for Defendant's ISL29003 sales made to Apple for the iPhone 3G.  The Court did not permit these iPhone 3G sales to be presented to the jury (*See* Dkt. #785 at p. 2).  Now, the parties dispute what sales constitute a proper disgorgement award and what amount, if any, is proper for exemplary damages.

For the breach claim, Plaintiff asks for royalties on all sales of Derivative and Primary Products--except for those ISL29003 sales already included in the misappropriation award.

As context, the misappropriation award only concerns a specific subset of ISL29003 sales.[4] There are numerous ISL29003 sales that are excluded from the misappropriation award,  like those made after March 2008 to non-Apple customers.   In contrast, the breach claim includes *all* ISL29003 sales, in addition to other product sales.  This means the breach claim includes the same sales as the misappropriation claim, and more.  This creates a double recovery issue.

---

[4] The misappropriation award covers ISL29003 sales made to (1) Apple for use in the iPod Touch and (2) all other customers from January 30, 2006 through March 2008.  It did not cover any other sales.  This award does not include sales to Apple for any other product, or sales made to any other customer after March 2008.

Plaintiff proposes a creative plan to avoid double recovery.  First, Plaintiff asks for all misappropriation damages for the ISL29003.  This includes sales to Apple for the iPod Touch, and sales to all other customers from January 30, 2006 to March 2008, which the jury awarded.  It also includes sales to Apple for the iPhone 3G, which was evidence the Court excluded at trial.

Then, Plaintiff asks for all breach damages that do not overlap with the misappropriation damages.  Specifically, Plaintiff asks for royalties on ISL29003 sales made to non-Apple customers after March 2008, and sales of the other Primary Products.  In this way, Plaintiff patches together two remedies to cover all damages for one product—all sales, from all customers, from January 2006 onwards.

Defendant strenuously objects and argues the jury awarded two alternative remedies; Plaintiff must choose one or the other.

The Court must now determine whether Plaintiff properly elected its remedy.  The Court first addresses whether Plaintiff may elect portions of both remedies, rather than selecting all of one remedy.  The Court then applies this analysis to each requested award.

## II.     Texas Law on Electing Remedies for Different Products and/or Different Harms

The parties have two central disputes on the applicable law. First, can Plaintiff elect different remedies for different products?  And second, can Plaintiff elect different remedies for the same product, sold at different times?  Or is this all "picking and choosing" damage elements, violating Texas law?

The Court finds that Plaintiff may elect different remedies for different products, but may not elect different remedies for the same product.  This means that Plaintiff may elect to recover under the misappropriation claim for the ISL29003 sales and under the breach claim for the other

products.  But Plaintiff may not fuse the two claims together to recover every possible ISL29003 sale.

### A.  Plaintiff May Elect Different Remedies for Different Products.

The Court finds that Plaintiff may elect different remedies for different products because the damages arise from different wrongs.

Texas law limits a single remedy for a single wrong.  *See Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 7 (Tex. 1991) ("The one satisfaction rule applies to prevent a plaintiff from obtaining more than one recovery for the same injury."); *id.* at 8 ("There can be but one recovery for one injury . . .").  But a party is entitled to damages based on both theories "if the theories of liability arise from two separate and distinct injuries, and there has been a separate and distinct finding of damages on both theories of liability."  *Household Credit Servs., Inc.*, 989 S.W.2d at 80. Thus, to determine if an election is proper, "the inquiry focuses on whether the damages issue arose from the same set of operative facts."  *Aero Products Int'l, Inc. v. Intex Recreation Corp.*, 466 F.3d 1000, 1017 (Fed. Cir. 2006).[5]  The Court therefore asks whether Plaintiff's remedies flow from a single wrong.  *See id.*

They do not.  Plaintiff's misappropriation damages for ISL29003 sales are separate wrongs from Plaintiff's breach damages for other product sales.  Plaintiff's disgorgement remedy is based on Defendant's use of the trade secret to develop and sell one product.  Plaintiff's royalty remedy is based on Defendant's misuse of confidential information to develop and sell nineteen products.

---

[5] This is a Federal Circuit case applying Seventh Circuit law.  For questions on the election of remedies, this Court applies Texas law.  Although *Aero* applies Seventh Circuit law, this Court previously noted that *Aero* comports with Texas law (Dkt. #571 at p. 7 (citing *Aero* as Texas law "[s]tated differently")).  The Federal Circuit then relied on *Aero* to find that the misappropriation and patent awards from the first trial were duplicative. *TAOS*, 895 F.3d at 1328. Both parties periodically rely on *Aero* in their present briefing.  The Court thus relies on *Aero* as analogous to Texas law.

In other words, Defendant committed separate wrongs by using the trade secret to develop one product and by using the confidential information to develop others.

Defendant has long portrayed the confidential information as synonymous with the trade secret.  This would suggest the claims are a single wrong.  But this Court has repeatedly rejected this argument (Dkt. #737 at p. 16 ("The breach of contract and trade secret claims are not coextensive.").  The jury also rejected this argument by awarding Plaintiff breach damages for misuse of confidential information.  The claims are not interchangable.

Texas courts permit separate forms of recovery for separate wrongs.  *See, e.g.*, *Beaumont v. Basham*, 205 S.W.3d 608, 615 (Tex. App.—Waco 2006, pet. denied) ("[B]ecause Basham suffered separate and distinct injuries from the invasions of privacy and from the thefts and because the jury made separate and distinct damages findings as to each theory, we hold that there was no double recovery."); *Baribeau v. Gustafson*, 107 S.W.3d 52, 61 (Tex. App.—San Antonio 2003, pet. denied) ("The injuries resulting from Lynn's reliance on Baribeau's misrepresentations are separate and distinct from her injuries arising from Baribeau's unauthorized bodily contact.").  For example, a court in the Western District of Texas found there was no double recovery where defendants breached their employment contracts and misappropriated a trade secret.  *Drummond Am. LLC v. Share Corp.*, A-08-CA-661 RP, 2010 WL 11506916, at *4 (W.D. Tex. June 30, 2010).  The court held that "each of those claims involved different conduct and required proof of disparate elements."  *Id.*  The jury heard separate evidence on damages for the two claims.  *Id.*  And "the jury was asked in separate questions to identify the damages specifically caused by each separate cause of action."  *Id.*

This case is like *Drummond*.  The breach and misappropriation claims "involved different conduct and required proof of disparate elements."  *See id.*  The jury heard separate evidence for

the two claims: the misappropriation evidence concerned ISL29003 sales made to Apple for the iPod Touch and sales made to all other customers between January 30, 2006 and March 2008; whereas the breach evidence concerned sales of nineteen products.   Absent the obviously overlapping sales—which the Court will address—Plaintiff put on different evidence for its claims. *See id.*  And finally, like in *Drummond*, the jury separately identified the damages for each claim. *See id.*  Because the claims are different wrongs, Plaintiff may potentially recover under both.

Defendant disagrees.   First, Defendant argues the Court previously resolved this issue. Defendant points to a footnote in a prior Order musing that Plaintiff will "elect the remedy affording it the greatest relief" (Dkt. #682 at p. 6 n.2).   Because the Court referred to "remedy" in the singular, Defendant asserts Plaintiff cannot receive multiple remedies.   This places too much emphasis on a single word in a footnote; the Court was not faced with the arguments before it today.

Defendant then argues the Court previously recognized the two claims as alternatives.   In 2016, the parties disputed the appropriate final judgment to enter after the first trial (*See* Dkt. #517; Dkt #571).   In its request for judgment, Plaintiff "cho[se] trade secret damages over breach of contract damages." (Dkt. #517 at p. 8 (citing caselaw on double recovery)).   In its Order, the Court stated that "based on the above-referenced case law [about double recovery], and the apparent acknowledgment that its breach of contract damages and trade secret damages represent a double recovery for the same injury, the Plaintiff does not seek the entry of judgment on its breach of contract damages." (Dkt. #571 at p. 7).   The Court went on to find that "Plaintiff's trade secret misappropriation claim and tortious interference claim, as well as the damages flowing therefrom, arise from the same set of operative facts.   As such, the entry of final judgment on both awards would represent an impermissible double recovery of damages." (Dkt. #571 at p. 9).

This does not preclude Plaintiff's current argument.  On remand, the Court determined that Plaintiff "is entitled to re-elect its remedy." (Dkt. #682 at p. 15).  This means that Plaintiff is not bound by its prior election because it "no longer exists." (Dkt. #682 at p. 9).  Likewise, the Court's prior finding that the misappropriation claim and the tortious interference claim arise from the same set of operative facts does not control the current dispute.  At issue are the misappropriation and breach of contract claims—not the tortious interference claim.  The 2016 remedies also differ because those remedies were based on the same product sales, whereas the current remedies split hairs to avoid duplicating product sales (*See* Dkt. #571 at pp. 7-9).  The Court's ruling in 2016 on different remedies for different claims does not control the current dispute.

Next, Defendant argues Texas law requires Plaintiff to recover under just one claim because it is improper to consider remedies based on individual product sales.  As an initial matter, the Court notes that both Defendant and the Federal Circuit have discussed remedies on a product-by-product basis.  Defendant previously advocated for a sale-by-sale type of analysis (Dkt. #524 at p. 4 (Defendant arguing that the first jury's awards were duplicative because they were "based on the same sales," and "flowed from the same operative facts: sales of Intersil products.")).  And the Federal Circuit held that the misappropriation and patent awards were duplicative because the patent award "covers sales . . . that are already part of the disgorgement award." *TAOS*, 895 F.3d 1304 at 1328-29.  In other words, both remedies were based on a "duplicative" "subset of the sales." *TAOS*, 895 F.3d at 1328.  As the Federal Circuit previously considered double recovery on a sale-by-sale basis, it is therefore proper.

Defendant then relies on caselaw prohibiting a prevailing party from "picking and choosing" among damage elements arising under different theories of recovery.  *See Am. Rice*,

518 F.3d at 335–36; *Quest*, 90 F.3d at 1093–94.  Defendant argues this caselaw dictates that Plaintiff may recover under one claim or the other, but not both.

In these cases, the Fifth Circuit held that prevailing parties may not "pick and choose" remedies from different sources in order to maximize relief.  *Am. Rice*, 518 F.3d at 335.  The Court finds these cases distinguishable.

In *American Rice*, the Fifth Circuit held that a prevailing party may not piece together elements from separate remedies.  *See id.* at 335-36.  There, the plaintiff sought lost profits under its trademark infringement claim and attorney's fees under its breach of contract claim.  *Id.* at 335. The district court determined that an election of remedies was warranted since the two claims sought compensation for the same thing: the competitor's use of an infringing mark.  *Id.* Accordingly, the court held the plaintiff must elect between lost profits damages under the infringement theory or attorneys' fees under the breach theory.  *Id.*

The Fifth Circuit upheld the decision, stating: "[w]ere this Court to grant both awards to [plaintiff], we would be picking and choosing from damage elements arising under different theories, which is impermissible under Texas law."  *Id.* at 336. (citing *Quest*, 90 F.3d at 1093–94, n. 21 (under Texas law, "when a party tries a case on alternative theories of recovery and a jury returns favorable findings on two or more theories, the party has a right to a judgment on the theory entitling him to the greatest or most favorable relief . . .[plaintiff] cannot cut and paste elements of relief arising from different theories of recovery.")).

But Plaintiff is not picking and choosing damage elements.  Plaintiff seeks one remedy for a certain harm (using the trade secret to develop and sell the ISL29003) and another remedy for another harm (using the confidential information to develop and sell the other Primary Products). By asking for different remedies for different products, Plaintiff is not parsing individual damage

elements.  For example, Plaintiff does not seek just attorney's fees from the breach claim combined with just the disgorged profits from the misappropriation claim for an individual product.  *See Am. Rice*, 518 at 335.  Instead, Plaintiff seeks an entire remedy for an individual harm and then a separate entire remedy for a different harm.  Defendant cites no cases prohibiting this method. Because Plaintiff is entitled to the greatest relief, the Court finds this permissible.  Plaintiff may recover under different remedies for different products because they are different wrongs.

### B.  Plaintiff Cannot Elect Different Remedies for the Same Product Sold at Different Times.

The next issue is whether Plaintiff may elect different remedies for different sales of the same product.  Specifically, Plaintiff seeks to recover under misappropriation for some ISL29003 sales and under breach for others.  After reviewing the Federal Circuit's mandate and Texas law, the Court finds that Plaintiff cannot splice sales of the ISL29003 into two different remedies. Plaintiff cannot recover twice for one wrong: the development and sale of the ISL29003.

By seeking to recover under different remedies for different sales of the same product, Plaintiff "picks and chooses" damage elements.  As addressed above, Plaintiff's disgorgement remedy is based on Defendant's use of the trade secret to develop and sell the ISL29003; and Plaintiff's royalty remedy is based on Defendant's misuse of confidential information to develop and sell nineteen products.  While these are generally two different wrongs, they overlap as to the ISL29003.  Both remedies are based, in whole or in part, on Defendant's development and sale of the ISL29003.

The Court cannot see how different sales of the ISL29003 can be different wrongs.  The wrongs both originate from the parties' failed negotiations in the summer of 2004.  The wrongs have different elements—one is for misappropriation of a trade secret and the other is for misuse of confidential information—but even Plaintiff recognizes there is significant overlap between the

16

two.  And the wrongs result in the same injury: the development and sale of the ISL29003.  There is so much overlap between the damages of the same product that the Court cannot split hairs between them.

Plaintiff may not "cut and paste elements of relief arising from different theories" by recovering under one claim for certain ISL29003 sales and under the other claim for remaining ISL29003 sales. *See Quest*, 90 F.3d at 1094; *see also Am. Rice*, 518 F.3d at 335-36.  In *American Rice*, the Fifth Circuit denied the requested remedy because the prevailing party was "not granted *both* a monetary award *and* attorney's fees on *either* claim."  *See Am. Rice*, 518 F.3d at 336 (emphasis original).  This language suggests the Fifth Circuit wanted to avoid combining damage elements to create a super remedy that circumvents recovery limitations for individual claims.  *See id.*  The same policy concern applies here, where Plaintiff was extremely limited by Court rulings on what sales it could include in its trade secret misappropriation claim.  Plaintiff attempts to circumvent those restrictions by requesting recovery on a sale-by-sale basis for the same product. If the Court awarded Plaintiff all sales for the ISL29003, those restrictions would be moot.

Like the prevailing party in *American Rice*, Plaintiff seeks to maximize recovery by combining pieces of two remedies to recover for a single harm.  This is impermissible.  While Plaintiff may recover different remedies for different harms, Plaintiff may not recover different remedies for the same harm.

With the law clarified, the Court applies this law to each component of Plaintiff's election.

### III.   Trade Secret Misappropriation Damages

For its trade secret misappropriation claim, the jury awarded Plaintiff $8,546,000 in disgorged profits from sales of the ISL29003 and $64,000,000 in exemplary damages.  Plaintiff

17

asks the Court to award the maximum amount of these damages allowed by law, as well as $3,090,000 in disgorged profits from the iPhone 3G.

The Court finds that Plaintiff may properly elect the $8,546,000 in disgorged profits and $17,092,000 in exemplary damages.  In accordance with the Federal Circuit's mandate, Plaintiff may not elect the iPhone 3G profits.

### A.  Disgorgement

As addressed above, Plaintiff may elect to recover the ISL29003 sales under the misappropriation claim and recover royalties on the other products under the breach claim.

The parties dispute which sales may be included in this award.  The Court finds that Plaintiff may elect to recover the disgorged profits for the ISL29003 that were awarded by the jury.  This includes sales to Apple for use in the iPod Touch and to non-Apple customers through March 2008.

Defendant suggests the award should exclude any product sales where payment was made after March 2008.  For example, if Apple made an agreement during the head start period to purchase ISL29003 units, but did not pay until after March 2008, Defendant argues these sales should be excluded.  This issue was previously briefed and the Court found that because "these sales go to disgorgement, an equitable remedy, . . . these disputed sales should come in to provide the jury, and the Court, the greatest context."  (Dkt. #800 at p. 12).  It is therefore proper for Plaintiff to elect these sales.

However, Plaintiff may not elect the disgorged profits for the iPhone 3G.  The Court has repeatedly rejected these sales:

> As the Court held in its Order denying Plaintiff's Motion for Final Judgment (Dkt. #682) and its Order denying Plaintiff's Motion for Reconsideration (Dkt. #696): there is no evidence to support any link between these underlying acts and the iPhone 3G contract. There is no leeway in this finding.

18

(Dkt. #737 at p. 8).  The Court sees no need to revise these findings.  Thus, Plaintiff may properly elect the $8,546,000 in disgorged profits awarded by the jury, but not for the iPhone 3G sales.

### B.  Exemplary Damages

The Court finds that Plaintiff may elect to recover the maximum amount of exemplary damages permitted by law, $17,092,000.  Although the jury awarded $64,000,000 in exemplary damages, Texas law limits such awards.  The parties dispute how much, if any, Plaintiff may recover.

Initially, Defendant argues Plaintiff is not entitled to any exemplary damages.  Defendant argues the prior jury's finding of liability for exemplary damages cannot support exemplary damages.  The Court previously rejected this argument, finding that "[t]he Federal Circuit vacated the exemplary damages award, not the underlying finding of liability.  On remand, the jury's liability finding stands." (Dkt. #800 at p. 9).  Therefore, Defendant is bound by the first jury's finding of fraud, malice, or gross negligence.

Next, Defendant argues that Plaintiff cannot recover exemplary damages because there are no actual damages.  This argument hinges on the premise that profit disgorgement is not actual damage and therefore cannot serve as a basis for an exemplary award.  This is incorrect.  "Texas courts . . . will not deny exemplary damages simply because an action is equitable, rather than legal."  *Nabours v. Longview Sav. & Loan Ass'n*, 700 S.W.2d 901, 905 (Tex. 1985) (citing *Mack v. Newton*, 737 F.2d 1343, 1363 (5th Cir. 1984)).  "It is consistent with equitable principles for equity to exact [a wrongdoer] not only the profits rightfully belonging to the [wronged party] but an additional exaction for unconscionable conduct.  There should be a deterrent to conduct which equity condemns and for which it will grant relief."  *Int'l Bankers Life Ins. Co. v. Holloway*, 368 S.W.2d 567, 584 (Tex. 1963).  The Texas Uniform Trade Secret Act expressly recognizes the right

to recover exemplary damages with unjust enrichment," which the statute defines as a form of "damages for misappropriation."  TEX. CIV. PRAC. & REM. CODE § 134A.004(a)-(b).[6]  And the Federal Circuit recognized disgorgement as an equitable remedy  and stated that "monetary relief in the form of disgorgement, like other monetary relief, has been labeled a form of 'compensation' where awarded to a wronged plaintiff for an injury."  *TAOS*, 895 F.3d at 1321.  Plaintiff may therefore request exemplary damages based on the disgorged profits.

Although Plaintiff is entitled to exemplary damages, Texas law limits that recovery.  The relevant statute provides:

> LIMITATION ON AMOUNT OF RECOVERY.
> (a) In an action in which a claimant seeks recovery of damages, the trier of fact shall determine the amount of economic damages separately from the amount of other compensatory damages.
>
> (b) Exemplary damages awarded against a defendant may not exceed an amount equal to the greater of:
>   1. (A) two times the amount of economic damages; plus
>      (B) an amount equal to any noneconomic damages found by the jury, not to exceed $750,000; or
>   2. $200,000.

TEX. CIV. PRAC. & REM. CODE ANN. § 41.008.  The parties dispute how Texas law limits that award.  Plaintiff argues disgorged profits are economic damages and asks for twice the amount of disgorgement damages, which would be $17,092,000.  Defendant argues that disgorged profits are noneconomic damages and therefore Plaintiff is entitled to no more than $750,000.  The Court thus considers whether disgorgement damages are economic or noneconomic damages.

Defendant's argument hinges on the statutory definition of economic damages.  The Texas Civil Practice and Remedies Code defines "economic damages" as "*compensatory damages intended to compensate a claimant for actual economic or pecuniary loss*; the term does not include

---

[6] The Court previously found "the Texas Uniform Trade Secrets Act to be instructive, even if the Act does not govern the case." (Dkt. #737 at p. 13).

exemplary damages or *noneconomic damages*." TEX. CIV. PRAC. & REM. CODE ANN. § 41.001(4) (Defendant's emphasis in Dkt. #843 at p. 16).  Defendant argues that Plaintiff's disgorgement damages are not compensatory or actual damages, and are instead noneconomic damages.

This is unpersuasive.  First, the statute defines both economic and noneconomic damages as "compensatory."  *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 41.001(4) (defining economic damages as "damages intended to compensate"); (8) (defining "compensatory damages" as "economic and noneconomic damages"); (12) (defining "noneconomic damages" as "damages awarded for the purpose of compensating").  Second, the Court previously addressed that Plaintiff's disgorgement damages are actual damages.  And third, noneconomic damages are those "for physical pain and suffering, mental or emotional pain or anguish, loss of consortium, disfigurement . . ." TEX. CIV. PRAC. & REM. CODE ANN. §§ 41.001(12).  No one will confuse Plaintiff's disgorgement damages for trade secret misappropriation with "loss of consortium" or "disfigurement."  The disgorgement damages are thus economic damages under this statute.

With this resolved, the Court returns to the statute to determine the appropriate exemplary damages election.  As discussed, Plaintiff's disgorgement damages are economic damages.  Plaintiff does not have any noneconomic damages.  Thus, the maximum Plaintiff may elect is "two times the amount of economic damages." TEX. CIV. PRAC. & REM. CODE ANN. § 41.008(b)(1)(A).  As Plaintiff may elect to recover $8,546,000 for disgorgement, the maximum amount of exemplary damages is therefore $17,092,000.

## IV.   Breach of Contract Damages

For its breach of contract claim, the jury awarded Plaintiff $6,637,693 in damages for Derivative Products and $6,6701,743 in damages for Primary Products.  Plaintiff asks the Court to

award all damages for the Derivative Products and Primary Products, except for those ISL29003 sales already recovered in the disgorgement award.

The Court finds that Plaintiff may elect the entire Derivative Products award and all damages for the Primary Products, except for the ISL29003.  Plaintiff may not recover under two remedies for the single wrong of developing and selling the ISL29003.

### A.  Royalty on Derivative Products

The Court finds that Plaintiff may elect to recover the entire royalty award for the Derivative Products.  The Court resolved Defendant's only relevant argument by finding that Plaintiff may recover different remedies based on different wrongs.  Here, that is the sale of the ISL29003 and separately the sale of the Derivative Products.  These are separate wrongs and therefore Plaintiff may elect separate remedies.

### B.  Royalty on Primary Products

The Court finds that Plaintiff may elect to recover the royalty award for the Primary Products, except for the ISL29003.  As addressed above, Plaintiff may not recover under different remedies for sales of the ISL29003 because there is only one wrong.  However, Plaintiff may recover a royalty award for all other Primary Products.

### CONCLUSION

It is therefore **ORDERED** Defendant's Motion to Strike Plaintiff's Election of Remedies (Dkt. #843) is **GRANTED in part** and **DENIED in part**.

It is hereby **ORDERED** that Plaintiff shall file an amended election of remedies that complies with this Order within **fourteen (14) days** from this Order.

**SIGNED this 12th day of August, 2021.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE