# United States District Court

### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| AMS SENSORS USA INC. f/k/a TEXAS | § | |
| ADVANCED OPTOELECTRONIC | § | |
| SOLUTIONS, INC., | § | Civil Action No. 4:08-cv-00451 |
| *Plaintiff,* | § | Judge Mazzant |
| | § | |
| v. | § | |
| | § | |
| RENESAS ELECTRONICS AMERICA | § | |
| INC. f/k/a INTERSIL CORPORATION, | § | |
| *Defendant.* | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Pending before the Court is Plaintiff's Motion for Entry of Final Judgment (Dkt. #861).

Having reviewed the motion and relevant pleadings, the Court finds it should be **GRANTED**.

## BACKGROUND

### I.      The First Trial

On June 3, 2004, the parties entered into a letter "Confidentiality Agreement" to explore a

possible business relationship.  Pursuant to the terms of the letter "Confidentiality Agreement,"

the parties exchanged confidential information.  However, the parties were ultimately unable to

agree on the terms of a business relationship and discussions regarding Defendant Renesas

Electronics America Inc. f/k/a Intersil Corporation's ("Renesas" f/k/a "Intersil") acquisition of

Plaintiff AMS Sensors USA Inc. f/k/a Texas Advanced Optoelectronic Solutions, Inc. ("AMS"

f/k/a "TAOS") ended.[1]  AMS subsequently reached the conclusion that Renesas unfairly used

AMS's confidential information to create a line of digital ambient light sensors that compete with

AMS's ambient light sensors.  As such, on November 25, 2008, AMS sued Renesas for patent

---

[1] On September 11, 2018, the Court granted Renesas' Motion to Change Name of Defendant (Dkt. #633).  On May 14, 2020, the Court granted the parties' Unopposed Motion to Change Name of Plaintiff and Style of Case (Dkt. #691).  As such, the Court will refer to the parties using their current names.

infringement, breach of contract, trade secret misappropriation, and tortious interference with prospective business relations.

On October 13, 2009, Renesas filed its original answer and counterclaims, asserting fourteen affirmative defenses and five counterclaims.  After extensive summary judgment briefing, the case proceeded to a jury trial on February 9, 2015.  At the conclusion of the trial on March 6, 2015, the jury found that (1) Renesas breached the Confidentiality Agreement with AMS, (2) Renesas misappropriated AMS's trade secrets, (3) Renesas' misappropriation of AMS's trade secrets resulted from Renesas' fraud, malice, or gross negligence, (4) Renesas did not prove that AMS must have known or must have been reasonably able to discover that Renesas used AMS's proprietary information to create competing products before November 25, 2005, (5) AMS proved that Renesas fraudulently concealed the facts upon which AMS's misappropriation of trade secrets claim was based, (6) Renesas intentionally interfered with AMS's prospective business relations with Apple, (7) Renesas' tortious interference was the result of fraud, malice, or gross negligence, (8) Renesas willfully infringed the '981 patent, (9) Renesas did not prove that any of the claims of the '981 patent were invalid due to obviousness, for failing to satisfy the written description requirement, or for failing to contain a sufficiently full and clear description of how to make and use the full scope of the claimed invention, (10) Renesas did not prove that its conduct was excused because of laches, and (11) Renesas did not prove that AMS had unclean hands (Dkt. #511).

The jury awarded AMS the following:

(a) $1.00 in nominal damages for Renesas' retention of AMS's confidential information under the Confidentiality Agreement;

(b) $12,000,000.00 as a reasonable royalty for Renesas' breach of the Confidentiality Agreement;

(c) $48,783,007.00 as disgorgement of Renesas' profits for the misappropriation of AMS's trade secrets;

(d) $10,000,000.00 in exemplary damages for Renesas' trade secret misappropriation;

(e) $8,000,000.00 in lost profit damages arising from Renesas' intentional interference with AMS's prospective relations with Apple;

(f) $10,000,000.00 in exemplary damages for Renesas' tortious interference; and

(g) $73,653.51 as a reasonable royalty for Renesas' infringement of the '981 patent.

(Dkt. #511).  Final judgment was entered on June 9, 2016 (Dkt. #596).

## II.     Appeal, Federal Circuit Mandate, Remand, Second Trial

Renesas appealed the final judgment to the United States Court of Appeals for the Federal Circuit on June 10, 2016 (Dkt. #598).  The Federal Circuit affirmed in part, reversed in part, and vacated in part the final judgment and remanded the case.  *Texas Advanced Optoelectronic Sols., Inc. v. Renesas Elecs. Am., Inc.*, 895 F.3d 1304 (Fed. Cir. 2018) (hereinafter "*TAOS*").  The Federal Circuit affirmed liability for trade secret misappropriation, but only on the technical trade secret. Liability for the two financial trade secrets was vacated.  The misappropriation damages were overturned.  *Id.* at 1317.  Finally, the Federal Circuit found that the patent infringement award was duplicative of the trade secret misappropriation award.  *Id.* at 1328.

On August 9, 2019, Judge Schell[2] transferred this case to the undersigned (Dkt. #662).

On November 25, 2019, AMS moved for Entry of Final Judgment (Dkt. #672).  The Court denied the motion on March 27, 2020 (Dkt. #682).  AMS moved for reconsideration (Dkt. #686). The Court denied the motion and reiterated it was bound by the law of the case as determined by the Federal Circuit (Dkt. #696).

---

[2] United States Senior District Judge Richard Schell assumed senior status on March 10, 2015.

On April 5, 2021, AMS and Renesas appeared before the Court for a jury trial on damages. On April 16, 2021, the jury returned a verdict (Dkt. #824).  The jury provided an advisory opinion on the issue of disgorgement for trade secret misappropriation.

### III.   Election of Remedies, Findings of Fact and Conclusions of Law, Current Motion

At the Court's request, on April 30, 2021, AMS filed its election of remedies (Dkt. #842). AMS requested the Court award:

1. Disgorgement of profits from sales of the ISL29003 to Apple for use in the iPod Touch and to non-Apple customers through March 2008 in the amount of $8,546,000.00;

2. Disgorgement of profits from sales of the ISL29003 to Apple for use in the iPhone 3G in the amount of $3,090,000.00;

3. Exemplary damages for trade secret misappropriation in the amount of $23,272,000.00;

4. Royalty on all sales of Derivative Products in the amount of $6,637,693.00; and

5. Royalty on residual sales of Primary Products in the amount of $1,457,693.00

(Dkt. #842).   Essentially, AMS sought to recover in part under both the trade secret misappropriation and breach of contract claims, which Renesas objected to in its Motion to Strike Plaintiff's Election of Remedies (Dkt. #843).  The Court granted Renesas' motion in part, denied in part, and ordered AMS to file an amended election of remedies in compliance with the Court's decision (Dkt. #853).

Accordingly, on August 24, 2021, AMS filed its amended election of remedies (Dkt. #854). AMS asked the Court to award:

1. Disgorgement of profits from sales of the ISL29003 to Apple for use in the iPod Touch and to non-Apple customers through March 2008 in the amount of $8,546,000.00;

2. Exemplary damages for trade secret misappropriation in the amount of $17,092,000.00;

4

3.  Royalty on all sales of Derivative Products in the amount of $6,637,693.00; and

4.  Royalty on residual sales of Primary Products (excluding ISL29003) in the amount of $613,014.00

(Dkt. #854).

On December 14, 2021, the Court entered its Findings of Fact and Conclusions of Law (Dkt. #855). The Court agreed with the jury's advisory findings that the ISL29003 used AMS's trade secret, such trade secret became properly accessible in January of 2006, and that there was a 26-month head start period (Dkt. #855). The Court also found AMS was entitled to recover disgorgement of Renesas' profits in the amount of $8,546,000 (Dkt. #855 at p. 43). The Court ordered the parties to file a proposed final judgment.

On December 22, 2021, AMS moved for entry of final judgment (Dkt. #861). Renesas responded on January 12, 2022 (Dkt. #864). AMS filed its reply on January 21, 2022 (Dkt. #867). Renesas filed its sur-reply on January 28, 2022 (Dkt. #868).

## LEGAL STANDARD

Federal Rule of Civil Procedure 58 governs the entry of final judgment. While Rule 58(b)(1) details the circumstances under which the clerk of the court must enter judgment "without awaiting the court's direction," Rule 58(b)(2) outlines those circumstances under which the Court must approve final judgment before such can be entered by the clerk. Specifically, Rule 58(b)(2) provides that:

> [T]he court must promptly approve the form of judgment, which the clerk must promptly enter, when:
>
> (A) the jury returns a special verdict or a general verdict with answers to written questions; or
>
> (B) the court grants other relief not described in this subdivision (b).

FED. R. CIV. P. 58(b)(2).

## ANALYSIS

In its request for entry of final judgment, AMS requests the Court award:

1. Damages for equitable disgorgement in the amount of $8,546,000.00;

2. Exemplary damages for trade secret misappropriation in the amount of $17,092,000.00;

3. Pre-judgment interest on the disgorgement award in the amount of $5,592,361.92;[3]

4. Post-judgment interest on the trade-secret disgorgement award;

5. Costs incurred through June 20, 2016, in the amount of $299,239.86 pursuant to the parties' Agreed Bill of Costs (Dkt. #603);

6. Reasonable royalty damages for breach of contract related to the Derivative Products in the amount of $6,637,693.00;

7. Royalty on residual sales of Primary Products (excluding ISL29003) in the amount of $613,014.00;

8. Pre-judgment interest on the breach-of-contract award in the amount of $9,489,486.94;[4] and

9. Post-judgment interest on the breach of contract award

(Dkt. #861). AMS also requests the Court reserve ruling on attorneys' fees until AMS submits its motion for attorneys' fees pursuant to Federal Rule of Civil Procedure 54(d)(2) (Dkt. #861 at p. 7).

---

[3] Using a 10% annual interest rate, AMS asserts from November 25, 2008, through December 24, 2021, prejudgment interest on the disgorgement award is $5,592,361.92.

[4] Using a 5% annual interest rate, AMS asserts from November 25, 2008, through December 24, 2021, prejudgment interest on the breach-of-contract award is $9,489,486.94.

Renesas does not contest AMS's request for damages for equitable disgorgement, post-judgment interest, or costs (Dkt. #864).  However, Renesas argues AMS is not entitled to pre-judgment interest, attorneys' fees, or exemplary damages (Dkt. #864 at pp. 2–12).  Renesas also argues it is entitled to judgment and costs on the patent claim (Dkt. #864 at p. 12).

Having reviewed the briefing regarding attorneys' fees, the Court finds those arguments are best saved for AMS's Rule 54 motion for attorneys' fees.  Accordingly, the Court will not address attorneys' fees—either entitlement or amount—at this time.  The Court therefore grants AMS's request that the Court reserve ruling on attorneys' fees.  The Court will now turn to the issue of pre-judgment interest.

## I.      Pre-judgment interest

AMS seeks pre-judgment interest on the disgorgement award in the amount of $5,592,361.92 and pre-judgment interest on the breach-of-contract award in the amount of $9,489,486.94.  Renesas argues AMS is not entitled to pre-judgment interest at all (Dkt. #864 at pp. 2–6).  The Court first determines whether AMS is entitled to pre-judgment interest on the disgorgement award, and if so, in what amount.

### A.  Disgorgement Award

Pre-judgment interest on state-law claims in federal court is "governed by applicable state law." *Hall v. White, Getgey, Meyer Co., LP*, 465 F.3d 587, 595 (5th Cir. 2006).  The disgorgement award was for trade secret misappropriation, a state law claim.  Thus, Texas law governs.

AMS argues the Texas Finance Code mandates an award of annual simple interest of at least 5% on the disgorgement award, accruing since the date suit was filed (Dkt. #861 at p. 2). Renesas argues entitlement to pre-judgment interest is not automatic, and AMS is not entitled to it (Dkt. #864 at p. 6).

Contrary to Renesas' argument, "Texas law on trade secret claims mandates the award of prejudgment interest." *In re AmeriSciences, L.P.*, 781 F. App'x 298, 306 (5th Cir. 2019) (quoting *Retractable Techs., Inc. v. Occupational & Med. Innovations, LTD.*, No. 6:08-CV-120, 2010 WL 3199624, at *4 (E.D. Tex. Aug. 11, 2010) (citing TEX. FIN. CODE §§ 304.102, 304.103)); *see also Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 529 (Tex. 1998), *superseded by statute on other grounds*, TEX. FIN. CODE § 304.1045.  As such, AMS is entitled to an award of pre-judgment interest on its trade secret misappropriation damages.

Even if awarding pre-judgment interest was not mandatory, AMS is still entitled to pre-judgment interest.  The Texas Supreme Court has held that there are "two legal sources for an award of prejudgment interest: (1) general principles of equity and (2) an enabling statute." *Kenneco Energy*, 962 S.W.2d at 528.  Under Texas law, "an equitable award of prejudgment interest should be granted to a prevailing plaintiff in all but exceptional circumstances." *Am. Intern. Trading Corp. v. Petroleos Mexicanos*, 835 F.2d 536, 541 (5th Cir. 1987).  Here, Renesas has not articulated any exceptional circumstances.  Moreover, Texas courts have awarded pre-judgment interest in equity in misappropriation cases.  *See Harper v. Wellbeing Genomics Pty Ltd.*, No. 03-17-00035-CV, WL 6318876, at *1 (Tex. App.—Austin Dec. 4, 2018, pet. filed).  Therefore, whether mandatory or discretionary, AMS is entitled to pre-judgment interest on the disgorgement award.

Pre-judgment interest is computed as simple interest and does not compound.  TEX. FIN. CODE § 304.104.  The current pre-judgment interest rate is 5%.  AMS filed this lawsuit on November 25, 2008.  Therefore, AMS is entitled to pre-judgment interest on the award of $8,546,000.00 for the misappropriation of AMS's trade secrets.  From November 25, 2008, up to

8

December 14, 2021, pre-judgment interest is $5,580,655.07.[5]  For each day thereafter until the judgment is signed, the daily pre-judgment interest amount is $1,170.68.  The Court next turns to whether AMS is entitled to pre-judgment interest on the breach of contract award, and if so, in what amount.

### B.  Breach of Contract Award

AMS requests pre-judgment interest on the breach of contract award from the date the suit was filed at a rate of 10%, pursuant to California Civil Code Section 3287(b).  Renesas, referencing § 3287(a), argues AMS is not entitled to pre-judgment interest because the damages were uncertain prior to the jury's return of its verdict (Dkt. #864).  Because AMS requests pre-judgment interest pursuant to § 3287(b), Renesas' arguments about uncertainty are irrelevant.  However, Renesas also contends California courts routinely deny pre-judgment interest under § 3287(b) (Dkt. #868).

Section 3287 authorizes the recovery of pre-judgment interest on damage awards.  *Hewlett-Packard Co. v. Oracle Corp.*, 65 Cal. App. 5th 506, 574 (2021).  The original statutory scheme, prior to the enactment of § 3287(b), "provided for the recovery of prejudgment interest only where damages were '[]certain, or capable of being made certain by calculation[.]'"  *A & M Produce Co. v. FMC Corp.*, 135 Cal. App. 3d 473, 496 (1982) (quoting § 3287(a)).  The original prohibition against interest on unliquidated damages is based upon the rationale that it is unreasonable to expect a defendant to pay a debt before he or she becomes aware of it or is able to compute its amount.  *Stein v. S. Cal. Edison Co.*, 7 Cal. App. 4th 565, 571–572 (1992).

The 1967 amendment adding subdivision (b) to § 3287 "created a limited exception to the prevailing general rule that prejudgment interest is not allowed on unliquidated obligations."

---

[5] The Court's award of pre-judgment interest is not the same figure AMS requested because the Court elects to compute pre-judgment interest based on a period ending on December 14, 2021, the date the Court entered its Findings of Fact and Conclusions of Law, rather than the end date AMS selected, December 24, 2021.

*Lewis C. Nelson & Sons, Inc. v. Clovis Unified Sch. Dist.*, 90 Cal. App. 4th 64, 69 (2001).

Subdivision (b) states:

> Every person who is entitled under any judgment to receive damages based upon a cause of action in contract where the claim was unliquidated, may also recover interest thereon from a date prior to the entry of judgment as the court may, in its discretion, fix, but in no event earlier than the date the action was filed.

CAL. CIV. CODE § 3287(b).  By allowing an award of pre-judgment interest, but only for a limited time period and only if the trial court finds it reasonable in light of the factual circumstances of a particular case, § 3287(b) seeks to balance the concern for fairness to the debtor against the concern for full compensation to the wronged party.  *See Wisper Corp. v. Cal. Com. Bank*, 49 Cal. App. 4th 948, 960 (1996).

When determining whether to award discretionary pre-judgment interest, the trial court must consider several factors: (1) the time between the lawsuit's filing and the judgment; (2) whether awarding interest will penalize the defendant for "litigating a bona fide dispute" or recognize that the plaintiff incurred "an additional amount of damage" as a result of the breach; and, (3) whether the plaintiff made settlement offers such that the defendant's refusal could be construed as "placing the prejudgment interest amount at risk."  *Segler Holdings, LLC v. Miller*, No. CV 15–4335, 2017 WL 2269424, at *1 (C.D. Cal. Jan. 11, 2017) (citing *A&M Produce*, 135 Cal. App. 3d at 498).

The first factor supports awarding pre-judgment interest.  Thirteen years have passed between the date this suit was filed and the date this Court now enters judgment.  Courts in California have awarded pre-judgment interest in cases with shorter time frames than the one here.  *See e.g., id.* (16 months between filing of suit and entry of judgment); *see also A&M Produce*, 135 Cal. App. 3d at 498 (7 years between filing of suit and entry of judgment).  Furthermore, an award of interest to AMS does not penalize Renesas for litigating a bona fide dispute.  Rather, it is a

10

recognition of the additional amount of damages incurred by AMS as a result of Renesas' breach of contract. *A & M Produce*, 135 Cal. App. 3d at 498. The verdict reflects the determination that Renesas was liable for the reasonable royalty AMS should have received from Renesas in August of 2004 (Dkts. #822 at p. 14, #824 at p. 6). Neither party acknowledges whether AMS ever made a settlement offer which Renesas refused, thus the Court is unable to evaluate the third factor in its consideration. Even so, the Court finds the factors weigh in favor of AMS's entitlement to pre-judgment interest on the breach of contract award.

However, Renesas argues calculating such interest from the date suit was filed would be improper (Dkt. #864). Renesas suggests the Court apportion interest based on "the varying dates that accused products were sold," or from the date of remand (Dkt. #864 at p. 5). "[T]he language of subdivision (b) confers discretion to fix any date subsequent to filing of the action as that from which prejudgment interest should be awarded[.]" *George v. Double D Foods*, 155 Cal. App. 3d 36, 47 (1984). Because the release dates for the accused products—the ISL29001 and the ISL29003—were before the date of filing, the Court may not exercise its discretion to use Renesas' proposal to apportion interest based on when the accused products were sold. Further, the rationale in selecting an apparently random sales date over the date suit was filed is unclear to the Court. Finally, this case was remanded in 2018, roughly a decade after this case was filed. An award of pre-judgment interest on the breach of contract claim for only a small fraction of the time this case has remained pending would undercut § 3287(b)'s concern for full compensation to the wronged party. Thus, the Court exercises its discretion to award pre-judgment interest on the breach of contract claim from the date suit was filed.

Pre-judgment interest is computed as simple interest. *See Westbrook v. Fairchild*, 7 Cal. App. 4th 889, 894 (1992) ("The general rule is that interest may not be computed on accrued

interest unless by special statutory provision or by stipulation of the parties. . . .").  The applicable
pre-judgment interest rate is 10%.  CAL. CIV. CODE § 3289.  AMS filed this lawsuit on November
25, 2008.  Therefore, AMS is entitled to pre-judgment interest on the award of $7,250,707.00 for
Renesas' breach of contract.  From November 25, 2008, through December 14, 2021, pre-
judgment interest is $9,469,621.99.[6]  For each day thereafter until the judgment is signed, the daily
prejudgment interest amount is $1,986.50.

## II.    Exemplary Damages

On remand, the jury awarded AMS $64,000,000 in exemplary damages (Dkt. #824 at p.
5).  The Court adjusted that figure to $17,092,000 under Texas Civil Practice and Remedies Code
§ 41.008(b)(1)(A) (Dkt. #853).  Accordingly, AMS requests entry of final judgment awarding it
$17,092,000 (Dkt. #861).

However, Renesas opposes an award of exemplary damages.  Renesas argues a common
factfinder should have determined liability for trade secret misappropriation and punitive damages.
Because that did not happen here, Renesas contends the Court's inclusion of exemplary damages
in the final judgment "violates [its] due process rights" because "the jury's prior findings of
liability for exemplary damages should have been rejected in favor of a new trial" (Dkt. #864 at
pp. 10–11).  Renesas also contends there are no findings that would justify AMS's request for
exemplary damages (Dkt. #864 at p. 12).

As a starting point, the Court finds little support for Renesas' argument that a common
factfinder should have determined liability for trade secret misappropriation and the resulting
exemplary damages.  Renesas buttresses its common-factfinder argument with the following

---

[6] The Court's award of pre-judgment interest is not the same figure AMS requested because the Court elects to
compute pre-judgment interest based on a period ending on December 14, 2021, the date the Court entered its Findings
of Fact and Conclusions of Law, rather than the end date AMS selected, December 24, 2021.

caselaw: *Smith v. Texaco, Inc.*, 263 F.3d 394 (5th Cir. 2001), *opinion withdrawn after settlement*, 281 F.3d 477 (5th Cir. 2002); *Hardin v. Caterpillar, Inc.*, 227 F.3d 268 (5th Cir. 2000); *Lanier v. Sallas*, 777 F.2d 321 (5th Cir. 1985); and *In re Bradle*, 83 S.W.3d 923 (Tex. App.—Austin 2002, no pet.).  *In re Bradle* is not binding on this Court, if applicable at all.  The opinion in *Smith v. Texaco* was withdrawn.  *Hardin* involved an appeal from a trial court's refusal to submit punitive damages to the jury for lack of evidence.  227 F.3d at 269.  The Fifth Circuit remanded, finding the evidence was "sufficiently close" and warranted reconsideration of whether to submit punitive damages to a jury.  *Id.* at 272.  None of these decisions are persuasive here.

That said, a statement in *Lanier* gives the Court pause: "the punitive-damage claim is dependent on establishing liability for compensatory damages and, in addition, establishing malice or some other aggravating circumstance.  It cannot be tried in isolation, and remand of that claim would necessitate retrial of the entire case."  777 F.2d at 325–26.  However, in *Lanier*, a plaintiff won a $100,000 verdict on a medical malpractice claim, but accepted a remittitur reducing the award to $50,000 rather than undergo a new trial.  *Id.* at 322.  Acceptance of remittitur may bar appeal.  However, the Fifth Circuit ruled that "the acceptance of a remittitur on one count of a complaint does not bar an appeal from an adverse judgment with respect to an entirely separate and distinct cause of action."  *Id.* at 325.  That ruling thus necessitated a determination of whether the underlying claim for compensatory damages as a result of the medical malpractice liability was separate from the punitive damages cause of action.  Due to the narrow circumstances in which the Fifth Circuit made the statement Renesas now relies upon, the Court does not believe *Lanier* supports Renesas' argument that a common factfinder had to decide both underlying liability and the amount of exemplary damages.

Furthermore, Renesas already argued before the Court that the separate findings regarding liability and damages warranted a new trial for violation of its due process right (Dkt. #782), which the Court rejected (Dkt. #800).  Further, the Federal Circuit affirmed liability, and held "the jury came to its decision using only correct legal theories," the inclusion of other trade secrets "was harmless," and that Renesas "has not shown that the liability verdict should be set aside." *TAOS*, 895 F.3d at 1315–16.  Accordingly, the Federal Circuit only vacated the award of exemplary damages, not the liability finding.  *Id*. at 1318.

Finally, without citing any caselaw, Renesas asserts: "[O]nce the Court undertook the analysis of the facts underlying the trade secret misappropriation liability, the Court was obligated as a matter of law to examine the facts underlying punitive damages" (Dkt. #867 at p. 5).  As a result, Renesas contends the Court's failure to examine the exemplary damages award in its Findings of Fact and Conclusions of Law means there is no finding to justify an award of exemplary damages.

First, the Court's Findings of Fact and Conclusions of Law analyzed facts underlying liability for trade secret misappropriation only to the extent necessary to determine the appropriate equitable disgorgement award.  For example, Renesas points to a section in the Court's Findings of Fact regarding "Defendant's Use of Plaintiff's Trade Secret Design" (Dkt. #855 § F).  But the facts discussed in that subsection were relevant to the Court's determination of whether proper accessibility existed at any time before January 2006 (Dkt. #855 ¶¶25–32).  Proper accessibility was key in fashioning AMS's disgorgement remedy.  Consequently, the Court did not "obligate" itself to examine the facts underlying exemplary damages.

Second, the Court never made any findings regarding liability or exemplary damages because those legal issues were within the purview of the jury.  The first jury found that Renesas

acted with "fraud, malice, or gross negligence," (Dkt. #511 at p.3), and the jury on remand found that AMS is entitled to recover $64,000,000 in exemplary damages (Dkt. #824 at p. 5).  However, in Texas, exemplary damages may not exceed an amount equal to the greater of: (1) two times the amount of economic damages plus an amount equal to any noneconomic damages found by the jury, not to exceed $750,000; or (2) $200,000.   TEX. CIV. PRAC. & REM. CODE § 41.008(b).  Accordingly, the Court found AMS could properly elect $17,092,000 in exemplary damages, rather than the amount the jury awarded (Dkt. #853 at p. 18).  Otherwise, exemplary damages are a legal remedy.  *Curtis v. Loether*, 415 U.S. 189, 198 (1974).  Thus, the decision to award exemplary damages was for the jury, not the Court.  *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 423 (5th Cir. 1998).[7]  It would be improper for the Court to disturb the jury's finding, other than to reduce the award as Texas law requires.  Therefore, the Court will enter a final judgment awarding $17,092,000 in exemplary damages.

## III.   Prevailing Party

Renesas argues it was the prevailing party on the patent claim because post-remand AMS "abandoned" its patent claim, and thus it is entitled to costs on such claim (Dkt. #864 at p. 12).[8]  AMS responds that under Renesas' theory, any party that elects one claim over another due to overlapping damages could never be the prevailing party (Dkt. #867 p. 5 n.11).  Moreover, AMS asserts the affirmed judgment of willful infringement makes AMS the prevailing party (Dkt. #867 at p. 5).

---

[7] Renesas makes much ado about the Court's statement in a prior order that "the Court is not bound by the jury's advisory opinion" (Dkt. #867 at p. 4).  However, the full statement makes clear the Court understood its discretion to disregard the jury's finding only related to the disgorgement award: "Disgorgement is an equitable remedy.  The Court is not bound by the jury's advisory opinion.  The Court will enter its findings of fact and conclusions of law after Plaintiff submits an amended election of remedies" (Dkt. #853 at p. 5 n.3).

[8] Although a request for judgment and costs should have been brought by separate motion, *see* E.D. TEX. CIV. R. 7(a), for the sake of judicial efficiency, the Court will nevertheless consider Renesas' request.

In *Hensley v. Eckerhart*, the Supreme Court held that a prevailing party must "succeed on any significant issue in litigation which achieves some of the benefit the party sought in bringing suit." 461 U.S. 424, 433 (1983) (citation omitted).  The Court noted that this standard is "generally applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party.'" *Id.* at n.7.  More recently, the Supreme Court set forth the requirements for earning status as a prevailing party in *Buckhannon Board and Care Home, Inc. v. West Virginia Department of Health and Human Resources*, 532 U.S. 598, 604 (2001).  In *Buckhannon*, the Supreme Court held that a prevailing party "must achieve some judicially sanctioned relief that either creates or materially alters a legal relationship between the parties." *Id*.

Following *Buckhannon* and *Hensley*, the Fifth Circuit established three requirements to determine whether a party is a prevailing party: "(1) the plaintiff must achieve judicially-sanctioned relief, (2) the relief must materially alter the legal relationship between the parties, and (3) the relief must modify the defendant's behavior in a way that directly benefits the plaintiff at the time the relief is entered." *Petteway v. Henry*, 738 F.3d 132, 137 (5th Cir. 2013).  Renesas relies on *Petteway* and its progeny to argue it is the prevailing party on AMS's patent claim (Dkt. #864).

However, Federal Circuit law defines "prevailing party" for the purposes of patent litigation.  *Manildra Milling Corp. v. Ogilvie Mills, Inc*., 76 F.3d 1178, 1182 (Fed. Cir. 1996).  To be a "prevailing party," Federal Circuit precedent requires that the must party have received at least some relief on the merits.  *Shum v. Intel Corp.*, 629 F.3d 1360, 1366, 1367 (Fed. Cir. 2010). That relief must materially alter the legal relationship between the parties by modifying one party's behavior in a way that "directly benefits" the opposing party.  *Id.*  (citing *Farrar v. Hobby*, 506 U.S. 103, 111–13 (1992)).  Additionally, Rule 54(d)(1) awards costs to "*the* prevailing party."

16

FED. R. CIV. P. 54(d)(1) (emphasis added).  The Federal Circuit has construed Rule 54's language to "unambiguously limit[] the number of prevailing parties in a given case to one because the operative term, 'prevailing party,' is singular."  *Shum*, 629 F.3d at 1367.  AMS relies on Federal Circuit precedent and asserts there can only be one prevailing party, and here, that is AMS (Dkt. #867).  The Court agrees Federal Circuit precedent is controlling here.  The Court also finds that AMS is the prevailing party.

On appeal, the Federal Circuit affirmed the finding of liability for trade secret misappropriation and one of AMS's infringement claims.  *See TAOS*, 895 F.3d at 1308.  A judgment of infringement satisfies the prevailing party test because such victory constitutes "relief on the merits which alters . . . the legal relationship of the parties."  *Shum*, 629 F.3d at 1369 (citations omitted).  Even a judgment on only one of several patent infringement claims may satisfy the prevailing party test. *See Kemin Foods, L.C. v. Pigmentos Vegetales Del Centro S.A. De C.V.*, 464 F.3d 1339, 1348 (Fed. Cir. 2006) (affirming trial court's determination of prevailing party status regarding a plaintiff who won one of its two patent infringement claims).  Moreover, "[a] party is not required . . . to prevail on all claims in order to qualify as a prevailing party under Rule 54."  *Shum*, 629 F.3d at 1367–68 (citing *Kemin Foods*, 464 F.3d at 1347–48); *see also Manildra Milling*, 76 F.3d at 1183 (determining party who has a competitor's patent declared invalid satisfies the prevailing party test, despite not receiving any of the monetary damages claimed).  Thus, AMS is the prevailing party.

The Court acknowledges AMS elected not to pursue damages for any patent infringement claim on remand, which is surely a victory for Renesas.  However, "just because a party can be said to have 'prevailed' on a claim does not necessarily make him a 'prevailing party' as the term is used in Rule 54." *Id.* at 1367.  Further, "the plain language of Rule 54 unambiguously limits

the number of prevailing parties in a given case to one[.]"  *Id.*  Accordingly, AMS, and only AMS,

is the prevailing party entitled to costs.[9]  Therefore, Renesas is not entitled to costs.

## CONCLUSION

It is therefore **ORDERED** Plaintiff's Motion for Entry of Final Judgment (Dkt. #861) is

hereby **GRANTED**.  The Court will enter Final Judgment in accordance with this Order.

**IT IS SO ORDERED.**

 **SIGNED this 7th day of March, 2022.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE

---

[9] Renesas urges the Court to consider the *Shum* court's affirmation of costs to both the plaintiff and defendants (Dkt. #868).  However, the Federal Circuit affirmed the trial court's decision on the alternative holding that the defendants were the prevailing party.  *Shum*, 629 F.3d at 1363–64.  As such, the Court is not persuaded to award Renesas costs.