# United States District Court

### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| AMS SENSORS USA INC. f/k/a | § | |
| TEXAS ADVANCED OPTOELECTRONIC | § | |
| SOLUTIONS, INC., | § | Civil Action No.  4:08-cv-00451 |
| *Plaintiff,* | § | Judge Mazzant |
| | § | |
| v. | § | |
| | § | |
| RENESAS ELECTRONICS AMERICA | § | |
| INC. f/k/a INTERSIL CORPORATION, | § | |
| *Defendant.* | | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiff's Motion for Attorneys' Fees (Dkt. #887).  Having considered the motion and relevant pleadings, the Court finds it should be **GRANTED in part** and **DENIED in part.**

## BACKGROUND

On June 3, 2004, the parties entered into a letter "Confidentiality Agreement" to explore a possible business relationship.  Pursuant to the terms of the Confidentiality Agreement, the parties exchanged confidential information.  Relevant here, the Confidentiality Agreement contains an indemnity clause, which provides:

> Each of us will indemnify and hold harmless the other against any and all damage, losses or liability (including reasonable attorneys' fees) suffered by the other as a result of any breach of the representations, warranties, and agreements set forth herein

(the "Clause") (Dkt. #907, Exhibit 1).

The parties were ultimately unable to agree on the terms of a business relationship and discussions regarding Defendant Renesas Electronics America Inc. f/k/a Intersil Corporation's ("Renesas") acquisition of Plaintiff AMS Sensors USA Inc. f/k/a Texas Advanced Optoelectronic

Solutions, Inc. ("AMS") ended.   AMS subsequently discovered that Renesas used AMS's confidential information to create a competing line of digital ambient light sensors ("ALS").   As such, on November 25, 2008, AMS filed suit against Renesas alleging claims for patent infringement, breach of contract, trade secret misappropriation, and tortious interference with prospective business relations (Dkt. #1).

After extensive discovery, the case proceeded to a jury trial on February 9, 2015 (the "First Trial").   The First Trial lasted almost four weeks.   During the course of those four weeks, twenty witnesses testified and the Court admitted over 650 exhibits.   On March 6, 2015, the jury returned its verdict, finding for AMS on all of its claims and awarding damages accordingly (Dkt. #511). Final judgment was entered on June 9, 2016 (Dkt. #596). Renesas appealed.

On appeal, the Federal Circuit affirmed in part, reversed in part, and vacated in part the final judgment and remanded the case.   *Texas Advanced Optoelectronic Sols., Inc. v. Renesas Elecs. Am., Inc.*, 895 F.3d 1304 (Fed. Cir. 2018) (hereinafter "*TAOS*").   The Federal Circuit remanded for recalculation of monetary relief and "resolution of all issues, both substantive and procedural, that bear on the proper treatment of the jury verdicts on breach of contract and tortious interference."   *Id.* at 1332.   Despite Renesas' argument on remand that AMS could no longer pursue damages for Renesas' breach of the Confidentiality Agreement, the Court found that "[t]he jury's finding of liability against [Defendant] for breach" is "final and supported" (Dkt. #682 at p. 20).

On April 5, 2021, AMS and Renesas appeared before the Court for a jury trial on damages (the "Second Trial").   At the Second Trial, eighteen witnesses testified, and the Court admitted roughly two-hundred exhibits.   On April 16, 2021, the jury returned a verdict, finding Renesas liable for $13.3 million in monetary relief for breach of the Confidentiality Agreement (Dkt. #824).

The jury also provided an advisory opinion on the issue of disgorgement for trade secret misappropriation.

On December 14, 2021, the Court entered its Findings of Fact and Conclusions of Law (Dkt. #855).  The Court agreed with the jury's advisory findings that the ISL29003 used AMS's trade secret, such trade secret became properly accessible in January of 2006, and that there was a 26-month head start period (Dkt. #855).  The Court also found AMS was entitled to recover disgorgement of Renesas' profits in the amount of $8,546,000 (Dkt. #855 at p. 43).  The Court entered Final Judgment on March 7, 2022 (Dkt. #870).

In its motion for entry of final judgment, AMS requested the Court reserve ruling on attorney's fees until AMS submitted its motion for fees pursuant to Federal Rule of Civil Procedure 54(d)(2) (Dkt. #861 at p. 7).  In its response, Renesas briefed arguments against AMS's potential award of attorney's fees (Dkt. #864 at pp. 12–14).  However, the Court found those arguments "best saved" for AMS's Rule 54 motion for attorney's fees, granting AMS's request that the Court reserve ruling on the matter (Dkt. #869 at p. 7).

On April 25, 2022, AMS filed its motion for attorney's fees (Dkt. #887).  On May 9, 2022, Renesas filed its response (Dkt. #896).  On May 16, 2022, AMS filed its reply (Dkt. #900).  On May 23, 2022, Renesas filed its sur-reply (Dkt. #908).

## LEGAL STANDARD[1]

California state law allows an award of attorney's fees when a contract provides for the

---

[1] California law governs the Court's analysis of the amount of AMS's attorney's fee award.  "A fee award is governed by the same law that serves as the rule of decision for the substantive issues in the case."  *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002) (citing *Kona Tech. Corp. v. S. Pac. Transp. Co.*, 225 F.3d 595, 614 (5th Cir. 2000)).  As the Court will discuss, *infra*, California law applies to the Court's resolution of whether AMS is entitled to attorney's fees.  Moreover, where there was once confusion on whether state or federal law governed whether an attorney's fee award is reasonable, the Fifth Circuit has clarified that state law "controls both the award of and the reasonableness of fees awarded where state law supplies the rule of decision."  *Id.*  Because California law controls the award, California law also controls on the reasonableness of the award.  Further, both sides agree California law controls (Dkt. #887 at p. 7; Dkt. #896 at p. 1).

award of attorney's fees for a party that prevails on all contract claims in a contract dispute. *Scott Co. of Cal. v. Blount, Inc.*, 20 Cal. 4th 1103, 1109 (Cal. 1999); CAL. CIV. CODE § 1717.  Attorney's fee awards are calculated with the lodestar method.  *Ketchum v. Moses*, 24 Cal. 4th 1122, 1133–35 (Cal. 2001).  The lodestar amounts to "the number of hours reasonably expended multiplied by the reasonable hourly rate."  *PLCM Grp. v. Drexler*, 22 Cal. 4th 1084, 1095 (Cal. 2000).  This "lodestar analysis is generally the same under California law and Federal law."  *Base v. FCA US LLC*, No. 17-cv-01532-JCS, 2020 WL 363006, at *2 (N.D. Cal. Jan. 22, 2020) (quoting *Rodriguez v. Cnty. of Los Angeles*, 96 F. Supp. 3d 1012, 1017 (C.D. Cal. 2014)).

In calculating the lodestar, the trial court first determines the reasonable hours expended on the case and a reasonable hourly rate.  *Ketchum*, 24 Cal. 4th at 1133–35.  The trial court, after excising any unnecessary or duplicative hours, multiplies the reasonable hours expended by the reasonable hourly rate to determine the lodestar amount.  *Id.*  Then the lodestar may be adjusted based on other factors.  *Id.*  The trial court exercises its sound discretion throughout the process. *Id.*

The party seeking fees bears the initial burden of establishing the hours expended litigating the case.  *Corbett v. Hayward Dodge, Inc.*, 119 Cal. App. 4th 915, 926 (Cal. App. 1st Dist. 2004); *Levy v. Toyota Motor Sales, U.S.A., Inc.*, 4 Cal. App. 4th 807, 816 (Cal. App. 2d Dist.1992).  The party must provide sufficient documentation of the tasks completed and the amount of time spent. *See Ketchum*, 24 Cal. 4th at 1132; *Bernardi v. Cnty. of Monterey*, 167 Cal. App. 4th 1379, 1398 (2008).  The requesting party also must show that the "[t]he reasonable hourly rate is that prevailing in the community for similar work."  *PLCM*, 22 Cal. 4th at 1095.  "[T]he awarding of attorney fees is a highly fact-specific matter best left to the trial court's discretion."  *Graciano v. Robinson Ford Sales, Inc.*, 144 Cal. App. 4th 140, 155 (2006).

Fee awards calculated under the lodestar method generally are presumed to be reasonable. *PLCM Grp.*, 22 Cal. 4th 1084 at 1097.  However, the lodestar may be adjusted upwards or downwards based on certain factors in order to "fix a fee at the fair market value for the particular action."  *Ketchum*, 24 Cal. 4th at 1132.  "In effect, the court determines, retrospectively, whether the litigation involved a contingent risk or required extraordinary legal skill justifying augmentation of the unadorned lodestar in order to approximate the fair market rate for such services."  *Id.*

## ANALYSIS

AMS requests $4,332,265 in attorney's fees.  Renesas contends the requested fees are unreasonable.  That said, as a preliminary matter, the parties dispute AMS's entitlement to fees.  Thus, the Court will first address whether AMS is entitled to attorney's fees before determining what amount, if any, is appropriate.

## I.       Entitlement to Attorney's Fees[2]

Section 1717(a) of the California Civil Code provides that the prevailing party in a breach of contract action "shall be awarded" its "reasonable attorney's fees" where the contract "specifically provides for attorney's fees."  CAL. CIV. CODE § 1717(a).  AMS contends the Clause explicitly provides for an award of attorney's fees to the nonbreaching party (Dkt. #887 at p. 4). AMS highlights the Clause's provision for attorneys' fees resulting from "any breach" (Dkt. #887 at p. 4).  AMS argues that, pursuant to this language, § 1717 mandates an award of attorney's fees (Dkt. #887 at pp. 4–5).  Anticipating Renesas' response, AMS also argues the "indemnify and

---

[2] California law also governs the Court's analysis of whether AMS is entitled to attorney's fees.  The Confidentiality Agreement contains the following choice of law clause: "This agreement shall be governed by the laws of California and may not be amended except in writing" (Dkt. #907, Exhibit 1).  The parties have never disputed the validity and applicability of the Confidentiality Agreement's choice of law clause.  Because the request for fees is made pursuant to the Confidentiality Agreement, California law applies.  Both sides agree California law governs the Court's analysis of AMS's entitlement to attorney's fees.

hold harmless" language in the Clause does not cut against its entitlement: "Under California law, the 'general rule' that indemnity relates to third party claims 'does not apply if the parties . . . use the term indemnity' to include direct liability as well as third party liability" (Dkt. #887 at p. 10) (citing *Zalkind v. Ceradyne, Inc.*, 194 Cal. App. 4th 1010, 1024 (Cal. App. 4th Dist. 2011)).

In response, Renesas argues that the contractual text represents "a classic indemnification clause that is directed to *third-party* claims against one of the parties to the contract as a result [of the other's party breach]" (Dkt. #896 at p. 2).  According to Renesas, the Clause does not support an award of attorney's fees:

> Under California law, unless the indemnity clause expressly provides for direct liability between the parties for breach, then the clause does not cover actions between the parties. Because the contract at issue does not do that, it cannot be used as a basis for a fee recovery in this action

(Dkt. #896 at p. 6) (internal citations omitted).

Generally, an indemnity clause "relates to third party claims, not attorney fees incurred in a breach of contract action between the parties to the indemnity agreement itself. *Alki Partners, LP v. DB Fund Servs., LLC*, 4 Cal. App. 5th 574, 600 (Cal. App. 4th Dist. 2016) (citing *Carr Bus. Enters., Inc. v. City of Chowchilla*, 166 Cal. App. 4th 14, 20 (Cal. App. 5th Dist. 2008).  "The court will not infer that the parties intended an indemnification provision to cover attorney fees between the parties if the provision 'does not specifically provide for attorney's fees *in an action on the contract*[.]'"  *Id.* at 600–01 (quoting *Myers Bldg. Indus., Ltd. v. Interface Technology, Inc.*, 13 Cal. App. 4th 949, 970 (Cal. App. 2d Dist. 1993).  Accordingly, courts have refused to hold indemnity clauses that relate to the performance of the work or contractual duties as encompassing attorney's fees for claims between the parties.  *See e.g. Carr*, 155 Cal. App. 4th at 19, 23 (indemnitor promised to indemnify "against all claims, damages, losses and expenses including attorney fees arising out of the performance of the work described herein"); *Myers*, 13 Cal. App.

6

4th at 963–64, 973 (indemnifying "all claims . . . and expenses, including . . . [attorney's] fees, arising out of . . . the performance of the Work"); *Alki Partners*, 4 Cal. App. 5th at 598, 602 (indemnity for any and all damages "resulting in any way from the performance or non-performance of [contracting party's] duties hereunder[.]").

That said, "this general rule does not apply if the parties to a contract use the term 'indemnity' to include direct liability as well as third party liability." *Zalkind*, 194 Cal. App. 4th at 1024 (quoting *Dream Theater, Inc. v. Dream Theater*, 124 Cal. App. 4th 547, 555 (Cal. App. 2d Dist. 2004). Moreover, explicit language is not required to make an indemnity clause cover first-party, direct claims. *Hot Rods, LLC v. Northrop Grumman Sys. Corp.*, 242 Cal. App. 4th 1166, 1179 (Cal. App. 4th Dist. 2015) ("[W]hile Northrop argues there must be 'express language' in an indemnity clause before it is interpreted to encompass first party claims, we disagree. It is the intent of the provision, and the agreement as a whole, that governs."). Indeed, California courts have held that broadly worded indemnity clauses can encompass direct liability claims between the parties. *See Zalkind*, 194 Cal. App. 4th at 1025.

In *Zalkind*, the plaintiffs alleged they incurred damages arising from the defendant's breach of an Asset Purchase Agreement. *Id.* at 1022. There, the indemnity clause read:

> Subject to the limitations in Section 14.4 hereof, the Buyer shall indemnify, hold harmless and defend the Selling Parties and their respective successors and assigns . . . from and against any and all Damages that arise from or are in connection with: . . . Any breach or default by the Buyer of its covenants or agreements contained in this Agreement.

*Id.* The court in *Zalkind* held that the clause "does not limit indemnification to third party claims and extends indemnification to 'any and all' damages incurred by the [plaintiffs] arising out of [defendant's] breach. *Id.* at 1027. Accordingly, the court concluded that the indemnity clause was "[w]ritten [b]roadly to [i]nclude [d]irect [c]laims and [d]oes [n]ot [e]xpressly [e]xclude [t]hem.

*Id.* at 1025.  The court buttressed its broad reading of the indemnity clause by analyzing it in light of other contractual provisions, all of which "support[ed] the conclusion the parties intended the term 'indemnify' in [the indemnity clause] to have the broader meaning and to encompass direct claims for breach of contract."  *Id.* at 1027–29.

Similarly, courts have also found the language "any" in indemnity clauses as pointing to the inclusion of attorney's fees arising from direct liability claims.  *See Cont'l Heller Corp. v. Amtech Mech. Servs., Inc.*, 53 Cal. App. 4th 500, 509 (Cal. Ct. App. 1997).  In *Continental Heller*, the indemnity provision of the parties' agreement stated: "the Subcontractor shall indemnify the Contractor, and save it harmless from any and all loss, damage, costs, expenses and attorney's fees suffered or incurred *on account of any breach of the aforesaid obligations and covenants, and any other provision or covenant of this Subcontract*."  *Id.* at 508–09 (emphasis added).  The court held that the trial court properly awarded the plaintiff attorney's fees incurred in litigating the case because "the quoted language is intended to entitle [plaintiff] to attorney fees in any action it brings against [defendant] for breach of any provision of the contract."  *Id.* at 509.

The Clause here is similar to the indemnity clauses in *Zalkind* and *Continental Heller*.  Like the indemnity clause in *Zalkind*, which covered "[a]ny breach or default by the Buyer of its covenants or agreements contained in this Agreement," 194 Cal. App. 4th at 1022, the Clause covers "any breach of the representations, warranties, and agreements set forth herein" (Dkt. #908 ¶ 7).  Moreover, like the indemnity provision in *Continental Heller*, which covered "*any breach of the aforesaid obligations and covenants, and any other provision or covenant of this Subcontract*," 53 Cal. App. 4th at 509 (emphasis in original), the Clause covers "any breach of the representations, warranties, and agreements set forth herein" (Dkt. #908 ¶ 7).  Thus, the Clause does not limit indemnification to third party claims.

Renesas argues the Clause does not expressly provide for direct liability between the parties for breach, and thus does not cover actions between the parties on the contract (Dkt. #896 at p. 4). While it is true the Clause does not expressly state that it covers direct liability claims between the parties, that is not what California law requires. *See Hot Rods.*, 242 Cal. App. 4th 1166 at 1179 ("[W]hile Northrop argues there must be 'express language' in an indemnity clause before it is interpreted to encompass first party claims, we disagree. It is the intent of the provision, and the agreement as a whole, that governs.").

The Confidentiality Agreement provides for fees resulting from any breach committed by either party (Dkt. #908 at ¶ 7). The jury already found Renesas breached the Confidentiality Agreement, and the Court has found the Clause does not limit indemnification to third party claims. Therefore, the Confidentiality Agreement provides for attorney's fees. As the prevailing party in a claim for breach of the Confidentiality Agreement, AMS, therefore, is entitled to attorney's fees under § 1717. The Court will now turn to a determination of the reasonableness of AMS's request for attorney's fees.

## II.     Reasonableness of AMS's Attorney's Fees

Determining that AMS is entitled to attorney's fees is not the end of the analysis. The Court must now consider the proper fee amount. *Graciano*, 144 Cal. App. 4th at 153 ("Whether an [attorney's fee] award is justified and what amount the award should be are two distinct questions, and the factors relating to each must not be intertwined or merged.") (quoting *Flannery v. Cal. Highway Patrol*, 61 Cal. App. 4th 629, 647 (Cal. App. 1st Dist. 1998)).

AMS seeks $4,332,265 in attorney's fees. In support of its motion for attorney's fees, AMS provides the Declaration of Michael C. Wilson ("Wilson") (Dkt. #887, Exhibit 1), the Declaration of lead trial counsel Michael McCabe ("McCabe") (Dkt. #887, Exhibit 4), along with

itemized billing records detailing the attorneys' and paralegals' hourly rates and time spent on each task performed (Dkt. #887, Exhibit 2). Renesas contests the reasonableness of AMS's rates for failure to "provide an accurate determination of the hours spent on the breach claim in both trials or even common issues" (Dkt. #896 at p. 9). Renesas also argues the lodestar enhancement AMS seeks is not appropriate. The Court will examine these arguments in turn.

"It is well established that the determination of what constitutes reasonable attorney fees is committed to the discretion of the trial court[.]" *Melnyk v. Robledo,* 64 Cal. App. 3d 618, 623 (Cal. App. 2d Dist. 1976). "The value of legal services performed in a case is a matter in which the trial court has its own expertise." *Id.* In determining a fee, the Court "is governed by equitable principals." *PLCM,* 22 Cal. 4th at 1095 (quoting *Montgomery v. Bio-Med Specialties, Inc.,* 183 Cal. App. 3d 1292, 1297 (Cal. App. 4th Dist. 1986)). Ultimately, the Court should use its discretion to "fix the fee at the fair market value for the legal services provided." *Id.* California courts generally begin this inquiry with a lodestar calculation. *PLCM,* 22 Cal. 4th at 1095. The lodestar calculation is generally based on hours reasonably expended and a reasonable hourly rate. *Gisbrecht v. Barnhart,* 535 U.S. 789, 802 (2002). Bearing these principals in mind, the Court will begin its analysis with the reasonable hourly rate.

**A. Reasonable Hourly Rate**

Courts must consider "the hourly amount to which attorneys of like skill in the area would typically be entitled." *Ketchum,* 24 Cal. 4th at 1133. "The rates of comparable attorneys in the forum district are usually used." *Heritage Pac. Fin., LLC v. Monroy,* 215 Cal. App. 4th 972, 1009 (Cal. App. 1st Dist. 2013); *see also Syers Properties III, Inc. v. Rankin,* 226 Cal. App. 4th 691, 700 ((Cal. App. 1st Dist. 2014) ("The determination of the 'market rate' is generally based on the rates prevalent in the community where the court is located." The movant may prove the prevailing

market rate through its own affidavits, without additional evidence.  *Davis v. City of San Diego*, 106 Cal. App. 4th 893, 903 (Cal. App. 4th Dist. 2003).

Here, AMS submitted that the reasonable hourly rate for partners is $475, and $275 for associates.  The law firm representing AMS, Munck Wilson Mandala, LLP ("Munck Wilson"), is based in Dallas, Texas.  AMS maintains that these rates are consistent with the rates of similarly situated attorneys in the area.  Renesas does not appear to contest these rates.[3]  In any event, considering the nature of this case, the rates are consistent with the prevailing market rate for either the Sherman or the Dallas-Fort Worth legal community.[4]  *See e.g. Advanced Physicians, S.C. v. Conn. Gen. Life Ins. Co.*, No. 3:16-CV-02355-G-BT, 2021 WL 6428370, at *6 (N.D. Tex. Dec. 17, 2021) (finding a range from $537.00 to $862.00 per hour to be a reasonable rate to charge); *see also Tech Pharm. Servs., LLC v. Alixa Rx LLC*, 298 F. Supp. 3d 892, 906–07 (E.D. Tex. 2017) (finding a range from $450.00 to $860.00 per hour to be a reasonable rate to charge for attorneys, and a range of $150.00 to $250.00 to be a reasonable rate to charge for staff).  Moreover, through the Declarations of Wilson and McCabe, AMS submitted sufficient evidence of the prevailing market rate.  *Davis*, 106 Cal. App. 4th at 903.  Consequently, the Court finds the hourly rates AMS requests—$475 for partners and $275 for associates—are reasonable.  The Court now turns to the second step in the lodestar analysis, hours reasonably expended by counsel.

---

[3] Rather, Renesas takes issue with inconsistencies between the hours expended and timekeepers AMS lists in the motion that conflict with prior disclosures to Renesas.  The Court will address these arguments in the analysis on the reasonableness of the hours expended, *supra*.

[4] The Sherman Division covers some parts of the city of Dallas.  For example, a small portion of Dallas is included in Collin County, a county in the Sherman Division.  *See* https://www.collincountytx.gov/living/Documents/CollinArea .pdf (last visited Nov. 19, 2021).  Further, the Office of Personnel Management designates the Sherman Division (located in Grayson County) to be in the Dallas-Fort Worth locality pay area.  Thus, the Sherman Division's pay scale for court employees is based on the Dallas-Fort Worth area.  *See* OPM, *Policy, Data, Oversight*, https: //www.opm.gov/policy-data-oversight/pay-leave/salaries-wages/2021/locality-pay-area-definitions/#TX-OK   (last visited Feb. 7, 2022).  Accordingly, this Court has previously found that the Dallas-Fort Worth legal market can be an appropriate guide for determining the reasonableness of rates.  *See Solferini v. Corradi USA, Inc.*, No. 4:18-cv-293-ALM, 2021 WL 5415293, at *5 (E.D. Tex. Nov. 19, 2021) (collecting cases).

### B. Reasonable Hours Expended

Next, the court "must carefully review attorney documentation of hours expended." *Ketchum*, 24 Cal. 4th at 1132. Prevailing counsel is entitled to compensation for all hours "reasonably spent unless special circumstances would render an award unjust." *Vo v. Las Virgenes Municipal Water Dist.*, 79 Cal. App. 4th 440, 446 (Cal. App. 2d Dist. 2000) (citing *Serrano v. Unruh*, 32 Cal. 3d 621, 639 (Cal. 1982)). Time is compensable if it was reasonably expended and is the type of work that would be billed to a client. *See Hensley v. Eckerhart*, 461 U.S. 424, 434 (1933). "'Reasonably spent' means that time spent 'in the form of inefficient or duplicative efforts is not subject to compensation.'" *Horsford v. Bd. of Trs. Of Cal. State Univ.*, 132 Cal. App. 4th 359, 394 (Cal. App. 5th Dist. 2005) (quoting *Ketchum*, 24 Cal. 4th at 1132)).

AMS argues counsel expended a total of 15,758 hours on litigation of the First Trial. However, AMS apportioned the amount of hours attributable to the breach claim to only one-third of the total hours spent. AMS further applied a 10% reduction to further segregate work unrelated to the breach of contract claim. For the work post-remand, including the Second Trial, AMS claims to have expended 8,737 hours total. However, AMS apportioned the amount of hours attributable to the breach claim to only one-half of the total hours spent. Again, AMS applied a 10% reduction to account for any other work unrelated to the breach of contract claim.

Renesas argues AMS's counsel impermissibly utilized block billing, making it impossible to apportion the hours spent on compensable versus non-compensable claims (Dkt. #896 at p. 9). Further, Renesas contends the amount of time spent on the breach of contract claim at both trials was "far less" then what AMS asserts (Dkt. #896 at p. 10). Renesas argues AMS should be limited to the hours actually billed, as reflected in AMS's Rule 26(a)(2) Expert Disclosure (the "Disclosure"). The Court will address each argument, in turn.

### 1.  Block Billing and Apportionment

Block billing occurs when "a block of time [is assigned] to multiple tasks rather than itemizing the time spent on each task."  *Heritage*, 215 Cal. App. 4th at 1010.  Block billing is "not objectionable per se" but it may obscure "the nature of some of the work claimed[.]"  *Christian Research Inst. v. Alnor*, 165 Cal. App. 4th 1315, 1325 (Cal. App. 4th Dist. 2008).  "Block billing presents a particular problem for a court seeking to allocate between reimbursable and unreimbursable fees[.]"  *In re Marriage of Nassimi*, 3 Cal. App. 5th 667, 695 (Cal. App. 2d Dist. 2016).  That particular problem is present here.

AMS seeks to recover fees under the Confidentiality Agreement.  "Where a cause of action based on a contract providing for attorney's fees is joined with other causes of action beyond the contract, the prevailing party may recover attorney's fees under section 1717 only as they relate to the contract action."  *Reynolds Metals Co. v. Alperson*, 25 Cal. 3d 124, 129 (Cal. 1979).  Accordingly, the hours spent on the breach of contract claim are recoverable, whereas the hours expended on the other claims are not compensable.

While Renesas fails to point out any examples of block billing in AMS's voluminous billing records, the Court's review shows some examples of block billed entries.  However, such review does not reveal egregious or extensive use of block billing.  Accordingly, the discount AMS already applied—33% for work related to the First Trial and 50% for work on the Second Trial—along with the additional 10% reduction, adequately compensates for possible lack of transparency in these entries.  *See Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007) (citing California State Bar's Committee on Mandatory Fee Arbitration's report that block billing may increase time by 10 to 30%).

Moreover, the primary concern with block billing here—the inability to apportion fees—

is less acutely felt because the fees incurred here were for representation on causes of action arising from a common core of operative facts.  California courts typically decline to apportion fees "incurred for representation on an issue common to both a cause of action in which fees are proper and one in which they are not allowed."  *Reynolds*, 25 Cal. 3d at 129–30; *see also Del Cerro Mobile Estates v. Proffer*, 87 Cal. App. 4th 943, 951 (Cal. App. 4th Dist. 2001) ("[S]ince Del Cerro's two causes of action arose from a common core of operative facts, the court was not required to apportion the attorney fees incurred by Proffer between those causes of action.").

AMS originally brought claims for patent infringement, trade secret misappropriation, breach of contract, and tortious interference with prospective relations (Dkt. #1).  First, the breach of contract and tortious interference claims clearly involve common operative facts and issues.  By using the trade secret—a subset of the confidential information disclosed pursuant to the Confidentiality Agreement—Renesas not only breached the Confidentiality Agreement, but was also able to develop a competitive product, thereby interfering with AMS's ability to secure a contract with Apple.   Further, attorney efforts may be jointly attributable to both contract and tort theories.  *Del Cerro*, 87 Cal. App. 4th at 946 (breach of contract and nuisance).  Second, the trade secret misappropriation and breach of contract claims also involve similar issues and arise from the same operative facts.  The misappropriation occurred by acquiring the trade secret through improper means, specifically by breaching the Confidentiality Agreement, and using the trade secret in its product.  Thus, for the breach of contract, trade secret misappropriation, and tortious interference claims, the liability issues were so interrelated that apportionment is impossible, and therefore unnecessary. *See Akins v. Enterprise Rent-A-Car Co.*, 79 Cal. App. 4th 1127, 1133 (Cal. App. 1st Dist. 2000) ("When the liability issues are so interrelated that it would have been impossible to separate them into claims for which attorney fees are properly awarded and claims

for which they are not, then allocation is not required."). The only apparent outlier is the patent infringement claim. But again, the Court finds AMS's 33% reduction for work on the First Trial accounts for the work spent on a claim that was not "so interrelated" with the other three as to make it impossible to apportion the fees. *Id.* And while it is true that, as Renesas points out, the Court has previously held the breach of contract and misappropriation claims required different conduct and different proof of disparate elements (Dkt. #853 at p. 12), such statement was made in the context of the election of remedies. Specifically, the Court was addressing Renesas' oft-repeated argument that the confidential information is synonymous with the trade secret. Thus, the Court has never held that there are no common issues between the claims. The Court will now turn to another argument Renesas puts forth on the reasonableness, or lack thereof, of the hours AMS claims.

### 2. Whether AMS Is Limited to Hours Actually Billed

Relying on the California Supreme Court's decision in *Trope v. Katz*, 11 Cal. 4th 274 (Cal. 1995), Renesas contends AMS should be limited to the hours actually billed, as reflected in the Disclosure. The Court does not find that the holding in *Trope* supports Renesas' position.

In *Trope*, a law firm sued an ex-client for unpaid attorney's fees and sought attorney's fees with regard to the action for recovery of those earlier attorney's fees. 11 Cal. 4th at 278. The action to recover fees was based on § 1717. *Id.* The California Supreme Court stated: "To 'incur' a fee, of course, is to 'become liable' for it, i.e., to become obligated to *pay* it. It follows that an attorney litigating in propria persona cannot be said to 'incur' compensation for his time and his lost business opportunities." *Id.* at 280 (emphasis in original) (internal citations omitted). To allow such recovery would unfairly create two classes of pro se litigants—those who are attorneys and can recover for time and lost opportunity and those who are not attorneys and cannot recover

15

for time and lost opportunity. *Id*. at 285.  Thus, the court in *Trope* held that an attorney litigating *in propria persona* does not pay or become liable to pay consideration in exchange for legal representation, and therefore cannot recover reasonable attorney's fees under § 1717.  *Id.* at 292. The Court does not find *Trope* applicable here.  *Id.* at 284 ("[T]he language of an opinion must be construed with reference to the facts presented by the case; the positive authority of a decision is coextensive only with such facts.").

That said, the Court finds it obvious that AMS would be limited in its recovery to the hours actually expended on litigating this case.  AMS points out that California applies the reasonable hourly rate, regardless of whether the rate claimed is at below-market or discounted rates (Dkt. #900 at p. 4).  It is true that a rate charged may be different from the reasonable hourly rate, or that the hours expended may be different from the hours reasonably expended on litigation of a case.  *Chacon v. Litke*, 181 Cal. App. 4th 1234, 1259 (Cal. App. 1st Dist. 2010).  However, the reasonableness analysis generally involves *reducing* the rate or hours claims to a reasonable rate or number of hours, not the opposite.  Thus, the Court declines to go so far as to say California law does or does not limit counsel to the number of hours actually billed in calculating the lodestar.

In any event, Renesas' argument that AMS is limited to hours "actually billed" is better characterized as an argument that AMS is limited to the number of hours listed in the Disclosures. Renesas takes issue with discrepancies in the hours AMS claims in its current motion as compared to the hours Munck Wilson claimed it expended in the Disclosures.  However, any difference in the hours billed can be attributed to the fact that Munck Wilson prepared the Disclosures in 2020, months before the Second Trial even occurred.  It is more than plausible that counsel accurately listed the hours expended in the Disclosures, and then continued to expend time litigating this case. Renesas' assessment of the hours "actually billed" merely reflects Renesas' position that the fee

award should be based on the hours disclosed in the Disclosures.  The Court disagrees.  The Court follows the timetables AMS presents in its motion and finds the hours expended, when reduced to account for any block billing and apportionment for non-compensable claims, are reasonable.

Having determined the amount of hours and hourly rates AMS claims are reasonable, the Court now turns to AMS's request for a 1.33 multiplier.

### C.  Lodestar

Taking into account all of the above, the Court finds the lodestar is $3,619,270.00.  In determining the lodestar, the Court multiplied the reasonable hourly rate—$475 per hour for partners, and $275 per hour for associates—by the apportioned hours.  However, the Court also applies a 10% reduction, as AMS advances, to account for any other work unrelated to the breach of contract claim.  Applying the 10% reduction to lodestar equals $3,257,343.00.  Having determined the lodestar, the Court will next consider various factors to determine whether an enhancement of the lodestar is appropriate.

### D.  Multiplier

The lodestar calculation does not end the analysis. The Court may also adjust the fee based on the foregoing factors: (1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, (4) the contingent nature of the fee award.  *Ketchum*, 24 Cal. 4th at 1132.

AMS argues "[a] multiplier of 1.33x is [] warranted" (Dkt. #887 at p. 14).  AMS points to the contingent nature of the fee agreement, the complex legal issues involved, and the hours spent litigating this case impeded counsel from working on other matters.  Renesas contends a lodestar enhancement is inappropriate.  Renesas argues the work in this case "required no special skills"

and no complex issues in the case related to the breach of contract claim (Dkt. #896 at pp. 13–14). Considering the factors, the Court finds an enhancement is appropriate. The Court will analyze each factor, in turn.

### 1. Novelty and Difficulty of Issues

The claims for trade secret misappropriation and patent infringement involved specialized areas of the law. While the law may have been experienced counsel in the intellectual property area, the very existence of the trade secret and patent issues necessitated the participation of specialized counsel. *Stilwell Dev., Inc. v. Chen*, No. CV86-4487-GHK, 1989 WL 418783, at *7 (C.D. Cal. April 25, 1989). While Renesas contends the breach of contract claim was not difficult or complex, such argument ignores the multitude of issues related to that claim: whether each of the accused products "used" confidential information; whether confidential information was limited to the trade secret; the availability of recovery for derivative products; and the amount of the royalty. Having presided over the Second Trial, the court concludes that the factual issues were complex due to the interrelationship between the trade secret misappropriation claim and the breach of contract claim. Moreover, the appeal, remand, and two trials spanning over a decade underscores the difficult and complex nature of this case. Thus, this factor weighs in favor of a multiplier.

Though this factor weighs in favor of some enhancement, its weight is limited because it is to some extent reflected in the substantial number of hours reasonably expended in this case. *See Ketchum*, 24 Cal. 4th at 1138 (explaining that "[a] more difficult legal question typically requires more attorney hours"). Nonetheless, the Court concludes that some upward adjustment is supported by this factor. *See Ridgeway v. Wal-Mart Stores, Inc.*, 269 F. Supp. 3d 975, 998 (N.D. Cal. 2017) (acknowledging that "the complexity of this case is part of the reason for plaintiffs'

18

nearly 11,000 hours of billing, which is already accounted for in the lodestar" but still finding that "the numerous novel, difficult, and complex issues . . . weigh[ed] in favor a multiplier").

### 2.  Skill of Counsel and Results Obtained

This factor "can properly be used to enhance a lodestar calculation where an exceptional effort produced an exceptional benefit." *Thayer v. Wells Fargo Bank*, 92 Cal. App. 4th 819, 838 (Cal. App. 1st Dist. 2001).  To reiterate, AMS sued Renesas for patent infringement, trade secret misappropriation, breach of contract, and tortious interference with prospective business relations under Texas state law.  The jury in the First Trial returned a verdict for AMS and awarded damages on all four claims.  At the Second Trial, AMS again received favorable findings on all damages claims.  The Court entered Final judgment awarding AMS almost $50 million in damages, interest, and costs.  Counsel's efforts certainly produced "an exceptional benefit" for AMS.  *Graham*, 34 Cal. 4th at 582.

Moreover, this factor also often takes into account the exceptional skill exhibited by the attorney.  *Id.* (collecting cases).  While the Court did not oversee this case pre-remand, the Court concludes counsel demonstrated exceptional skill at least throughout the course of litigating the Second Trial.  The skill displayed combined with the results achieved, this factor favors a multiplier.

### 3.  Preclusion from Other Employment

This factor considers "the extent to which taking the case on a contingent fee basis has precluded the attorney from taking other fee-generating work."  *Save Our Uniquely Rural Cmty. Env't v. Cnty. of San Bernardino*, 235 Cal. App. 4th 1179, 1188 (Cal. App. 4th Dist. 2015).  AMS argues the demands of this cases impeded counsel on the litigation team from working on other matters.  Renesas does not address this point.

The hours counsel billed on this case strongly support AMS's assertion that litigating this case precluded the trial team's ability to commit to other fee-generating matters.   In his Declaration, Wilson asserted that, from the date suit was filed through March of 2015, counsel worked a total of 15,758 hours (Dkt. #881, Exhibit 1 ¶ 66).   From the time the Federal Circuit remanded this case—August 1, 2018—through January 31, 2022, Wilson asserts counsel worked a total of 4,369 hours.   Given the number of hours counsel expended on this case, it is more than plausible that counsel was precluded from accepting other fee-generating work.   For instance, the First Trial alone lasted almost an entire month.   And of course, in the months leading up to trial, the billing records show an almost singular focus on the preparation of this case, with attorneys spending eight to twelve hours each day on trial-oriented tasks (Dkt. #881, Exhibit 2).   Thus, the Court finds this factor weighs in favor of enhancement.

### 4.   Contingent Risk

On November 13, 2008, Munck Wilson and AMS executed a contingency fee agreement. The agreement provided that Munck Wilson would bill at a reduced hourly rate, but would also be compensated with "a 17.5% contingency fee based on the total [r]ecovery" (Dkt. #887, Exhibit 3 at p. 2).   The parties agreed the contingency fee would increase to twenty-percent upon the commencement of trial, or AMS's filing of a motion for preliminary injunction or a *Markman* motion.   On February 26, 2009, the parties amended the agreement but the rates and contingency fee remained unchanged (Dkt. #887, Exhibit 4).   AMS argues a multiplier is warranted because of the risk counsel undertook in pursuing the claims under a partial contingency fee agreement. Renesas does not address this factor.

"[T]he purpose of a fee enhancement is primarily to compensate the attorney for the prevailing party at a rate reflecting the risk of nonpayment in contingency cases as a class."

*Ketchum*,  24 Cal. 4th at 1138.  In fact, "[a]n enhancement of the lodestar amount to reflect the contingency risk is one of the most common fee enhancers." *Bernardi*, 167 Cal. App. 4th at 1381– 32.  "The fact that a case is partially contingent does not eliminate contingent risk as a factor. It only mitigates the risk." *Sonoma Land Trust v. Thompson*, 63 Cal. App. 5th 978, 987 (Cal. App. 1st Dist. 2021).

Here, counsel vigorously litigated this case for well over a decade, thereby incurring a substantial risk of non-payment.  *See Ridgeway*, 269 F. Supp. 3d at 987 (applying California law; noting nine-year defense on a contingent fee basis supported a multiplier).  Moreover, AMS took this case through to trial not once, but twice, thus increasing the risk of an unfavorable verdict. *Id.*; *see also Horsford*, 132 Cal. App. 4th at 400, n.11 ("[L]itigation is fraught with uncertainty and even the most scrupulous attorney will 'win some and lose some,' as the saying goes"].).  While counsel recovers a substantial fee under the contingency agreement, that result was far from guaranteed.  This factor, therefore, supports a multiplier.

### 5.   Weighing the Factors

In summary, all four factors favor a multiplier.  This result aligns with the general trend in California courts, as "an upward or downward adjustment from the lodestar figure will be far more common under California law than federal law." *Weeks v. Baker & McKenzie*, 63 Cal. App. 4th 1128, 1173 (Cal. App. 1st Dist. 1998).  Thus, the Court finds a multiplier is appropriate.

That said, the Court finds AMS's request for a 1.33 multiplier to be slightly high.  First, the California Supreme Court observed that "for the most part, the difficulty of a legal question and the quality of representation are already encompassed in the lodestar" because "[a] more difficult legal question typically requires more attorney hours, and a more skillful and experienced attorney will command a higher hourly rate." *Ketchum,* 24 Cal. 4th at 1138–39.  Thus, while those

factors support AMS's request for a multiplier, they are, to some extent, already subsumed by the Court's lodestar analysis.  However, it cannot be ignored the significant inherent risk Munck Wilson undertook by accepting this case on a contingent fee basis.  Counsel spent seven years getting this case to the First Trial, and four weeks presenting the case to a jury.  Counsel waited years to find out whether AMS indeed prevailed while the case was on appeal.  On remand, victory was far from assured, and millions of dollars' worth of recovery hung in the balance.

All things considered, the Court finds the factors support a 1.2 multiplier of the lodestar. As noted earlier, the lodestar figure with the further 10% reduction is $3,257,343.  With a 1.2 multiplier, the Court finds $3,908,811.60 to be a reasonable award of attorney's fees.

## CONCLUSION

It is therefore **ORDERED** Plaintiff's Motion for Attorneys' Fees (Dkt. #887) is hereby **GRANTED in part** and **DENIED in part**.

It is further **ORDERED** that Plaintiff be awarded attorney's fees in the amount of $3,908,811.60.

**IT IS SO ORDERED.**

**SIGNED this 10th day of August, 2022.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE